**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DANIEL PLAUT, Individually and on Behalf of All Others Similarly Situated, | |
| Plaintiff, | |
| v. | Case No.: 1:18-cv-12084 |
| THE GOLDMAN SACHS GROUP, INC., LLOYD C. BLANKFEIN, HARVEY M. SCHWARTZ, and R. MARTIN CHAVEZ, | Hon. Vernon Broderick |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF ZUHEIR R. SAFE FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF <u>SELECTION OF COUNSEL</u>**

## <u>TABLE OF CONTENTS</u>

<u>**Page**</u>

I.    FACTUAL BACKGROUND ..................................................................................... 2

II.    PROCEDURAL HISTORY ...................................................................................... 5

III.    ARGUMENT ............................................................................................................ 5

    A.    Movant Should Be Appointed as Lead Plaintiff. ........................................... 5

        1.    Movant Filed a Timely Motion. .......................................................... 6

        2.    Movant Has the Largest Financial Interest ........................................... 7

        3.    Movant Satisfies the Relevant Requirements of Rule 23 ...................... 7

            a.    Movant's Claims Are Typical .................................................. 8

            b.    Movant Is an Adequate Representative. ................................... 9

    B.    The Court Should Approve Lead Plaintiff's Choice of Counsel. .................... 9

IV.    CONCLUSION ....................................................................................................... 10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Adient Plc Sec. Litig.*
Case No 1:18-cv-09116 (S.D.N.Y.)..................................................................... 10

*In re Cendant Corp.*,
264 F.3d 201 (3d Cir. 2001)................................................................................. 9

*City of Monroe Emples.' Ret. Sys. v. Hartford Fin. Servs. Group, Inc.*,
269 F.R.D. 291 (S.D.N.Y. 2010) ...................................................................... 8, 9

*In re eSpeed, Inc. Sec. Litig.*,
232 F.R.D. 95 (S.D.N.Y. 2005) ........................................................................... 8

*Gunderson v. Klondex Mines Ltd.*,
No. 3:18-cv-00256-LRH, 2018 U.S. Dist. LEXIS 213995 (D. Nev. Dec. 18, 2018)............. 10

*In re Helios and Matheson Analytics, Inc. Sec. Litig.*
Case No. 1:18-06965 (S.D.N.Y.) ........................................................................ 10

*Isaacs v. Musk*,
No. 18-cv-04865-EMC, 2018 U.S. Dist. LEXIS 200717 (N.D. Cal. Nov. 27, 2018) ........... 10

*Kuriakose v. Fed. Home Loan Mortg. Co.*,
No. 1:08-cv-7281-JFK, 2008 U.S. Dist. LEXIS 95506 (S.D.N.Y. Nov. 24, 2008) ................ 8

*Micholle v. Ophthotech Corp.*,
No. 17-CV-210 (VSB), 2018 U.S. Dist. LEXIS 41120 (S.D.N.Y. Mar. 13, 2018)................. 6

*In re Tesla, Inc. Sec. Litig.*,
No. 18-cv-04865-EMC, 2018 U.S. Dist. LEXIS 212238 (N.D. Cal. Dec. 17, 2018)............. 10

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
589 F. Supp. 2d 388 (S.D.N.Y. 2008)................................................................ 6, 7

*Waterford Twp. Police & Fire Ret. Sys. v. Smithtown Bancorp, Inc.*,
No. 10-cv-00864-SLT, 2011 U.S. Dist. LEXIS 88552 (E.D.N.Y. May 31, 2011).................. 9

**Statutes**

15 U.S.C. § 78u-4(a)(3)(A)(i) ............................................................................... 6

15 U.S.C. § 78u-4(a)(3)(B) .................................................................................. 5

15 U.S.C. § 78u-4(a)(3)(B)(iii) .......................................................................... 5, 7

15 U.S.C. § 78u-4(a)(3)(B)(iii)(aa)........................................................................ 7

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc) ........................................................................... 8

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) ................................................................................ 6

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa) ........................................................................ 9

15 U.S.C. § 78u-4(a)(3)(B)(v) ..................................................................................... 9

**Rules**

FED. R. CIV. P. 23 ................................................................................................. 1, 6, 8

Zuheir R. Safe ("Movant") respectfully submits this memorandum of law in support of his motion ("Motion") to appoint him as lead plaintiff and approve his selection of Levi & Korsinsky, LLP ("Levi & Korsinsky") as Lead Counsel pursuant to Section 21D of the Securities Exchange Act of 1934, as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), on behalf of a putative class (the "Class") of purchasers of The Goldman Sachs Group, Inc. ("Goldman Sachs" or the "Company") securities from February 28, 2014 through December 17, 2018, inclusive (the "Class" who purchased during the "Class Period").

Pursuant to the PSLRA, the person or group of persons with the largest financial interest in the relief sought by the Class who also satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure are presumed to be the "most adequate" plaintiff—*i.e.*, the plaintiff most capable of adequately representing the interests of Class members. The PSLRA provides that the Court shall appoint the most adequate movant as lead plaintiff. Movant believes that he is the "most adequate" movant, as defined by the PSLRA, and should be appointed lead plaintiff based on the financial losses he suffered as a result of defendants' wrongful conduct as alleged in this litigation. Moreover, Movant satisfies the relevant requirements of Rule 23 of the Federal Rules of Civil Procedure, as his claims are typical of other Class members' claims and he will fairly and adequately represent the interests of the Class. In addition, Movant's selection of Levi & Korsinsky as Lead Counsel should be approved because the firm has substantial expertise in securities class action litigation and the experience and resources to efficiently prosecute this action.

## I.     FACTUAL BACKGROUND[1]

Goldman Sachs is an investment banking, investment management, and securities company headquartered in New York, New York. ¶ 2.  Previously, Goldman Sachs had worked on Malaysian mergers and acquisitions, including raising funds for 1Malaysian Development Bhd. ("1MDB"), a Malaysian state-owned investment fund set up in 2009. ¶ 3. In 2012, Goldman Sachs met with officials from 1MDB in Hong Kong to discuss a bond deal which led to Goldman Sachs raising $6.5 billion for 1MDB and thereby earning approximately $600 million in fees. ¶ 4. Since 2015, 1MDB has been the center of an ever-widening corruption and money laundering scandal, with more than $2.7 billion of the $6.5 billion raised by the Company having been misappropriated and fraudulently diverted from 1MDB. ¶¶ 5-9, 12, 43-45.

Throughout the Class Period, Goldman Sachs engaged in a scheme to deceive the market and a course of conduct that artificially inflated the price of Goldman Sachs securities and operated as a fraud or deceit on Class Period purchasers of Goldman Sachs securities and issued statements that were materially false and misleading because they failed to disclose and misrepresented the following adverse facts which were known to defendants or recklessly disregarded by them: that (i) Goldman Sachs participated in a fraud and money-laundering scheme in collusion with 1MDB; (ii) the foregoing conduct, when revealed, would foreseeably subject Goldman Sachs to heightened regulatory investigation and enforcement; and (iii) as a result, Goldman Sachs's public statements were materially false and misleading at all relevant times. ¶¶11, 48.

On February 28, 2014—the beginning of the Class Period—Goldman Sachs filed its annual report on Form 10-K for the period ended December 31, 2013 (the "2013 10-K"). ¶ 22. In the 2013

---

[1] Citations to "¶ __" are to paragraphs of the Class Action Complaint (the "Complaint") filed in the Action. Unless otherwise defined, capitalized terms shall have the same meaning set forth in the Complaint. The facts set forth in the Complaint are incorporated herein by reference.

10-K, approximately 16% or $5.52 billion of total net revenues, and $1.35 billion, or 17%, of Goldman Sachs's total pre-tax earnings in 2013, was accounted for from Asia. ¶ 37. The 2013 10-K also contained boilerplate representations with respect to Goldman Sachs's risk of regulatory enforcement. ¶ 38.  On February 23, 2015, the Company filed a Form 10-K announcing its financial and operating results for the quarter and year ended December 31, 2014 (the "2014 10-K"). ¶ 40. The 2014 10-K included the same generic boilerplate language included in the 2013 10-K referencing the Company's risk of regulatory enforcement. ¶¶ 38, 41. According to the 2014 10-K, Asia accounted for $5.41 billion, or 16%, of total net revenues, and $1.43 billion, or 17%, of Goldman Sachs's total pre-tax earnings in 2014. ¶ 40.

As news of 1MDB's misconduct began to emerge, Goldman Sachs continually concealed its role in the growing scandal. ¶¶ 43-45. Goldman Sachs continued to state generic boilerplate representations with respect to the Company's risk of regulatory enforcement in its 2015 10-K filed on February 22, 2016 with the SEC. ¶ 45. According to the 2015 10-K, Asia accounted for $5.64 billion, or 17%, of total net revenues, and $1.69 billion, or 27%, of Goldman Sachs's total pre-tax earnings in 2015. *Id*.

The truth began to emerge on March 7, 2016 when *Bloomberg News* published an article reporting that the U.S. Justice Department had subpoenaed Tim Leissner, a Goldman Sachs partner, in late February in connection with a probe linked to 1MDB.  ¶ 49. On this news, Goldman Sachs's stock price fell over 2%, or $3.75 per share, to close at $151.60 on March 8, 2016. ¶ 50.

After the article was published, and multiple news outlets reported on the scandal, Goldman Sachs continued to deny any culpability in connection with the 1MDB scandal, making statements about the Company having "no visibility into whether some of those funds may have been subsequently diverted to other purposes." ¶ 51. On August 4, 2016, Goldman Sachs reported its

financial and operating results on Form 10-Q for the quarter ended June 30, 2016 (the "Q2 2016 10-Q") which included discussion of "Regulatory Investigations and Reviews and Related Litigation" – mentioning 1MDB – but failing to disclose the participation of high-level Goldman Sachs personnel. ¶ 53. The Company's third quarter 10-Q, filed on November 3, 2016, and the 2016 10-K filed on February 27, 2017, also included boilerplate statements, similar to the representations made in the Q2 2016 10-Q. ¶¶ 54-55, 56-58. Throughout 2017 and 2018, Goldman Sachs continually filed quarterly and annual reports with the SEC, all of which included boilerplate statements similar to those set forth in previous filings.  ¶¶ 60-73.

Then on November 1, 2018, U.S. federal prosecutors in the E.D.N.Y. unsealed indictments against Leissner and Roger Ng, another (Former) Goldman Sachs banker, related to the 1MDB probe, explicitly describing them as "agents acting within the scope of their employment on behalf of" the Company "with the intent, at least in part, to benefit" Goldman Sachs. ¶ 75. That same day, the United States Attorney's Office announced that Leissner had pled guilty "a two-count criminal information charging Leissner with conspiring to launder money and conspiring to violate the FCPA [Foreign Corrupt Practices Act] by both paying bribes to various Malaysian and Abu Dhabi officials and circumventing the internal accounting controls of the Financial Institution while he was employed by it." *Id.* Following multiple news reports through November and December surrounding the 1MDB and Goldman Sachs scandal, Goldman Sachs stock fell three times. ¶¶ 76-81.  On November 9, Goldman Sachs's stock dropped $9.00 to close at 222.65. ¶ 77. On November 12, 2018, Goldman Sachs's stock price dropped $16.60 per share to close at $206.05. ¶ 79. And finally, on December 17, 2018, the Company's stock declined $4.76 per share to close at $168.01.

## II.    PROCEDURAL HISTORY

Plaintiff Daniel Plaut ("Plaut") commenced the first filed action against Goldman Sachs on December 20, 2018. That same day, counsel acting on Plaut's behalf published a notice on *Globe Newswire* announcing that a securities class action had been initiated against the above-captioned Defendants. *See* Exhibit C ("Press Release") to the Declaration of Eduard Korsinsky in Support of Movant's Motion ("Korsinsky Decl.").

## III.    ARGUMENT

### A.    Movant Should Be Appointed as Lead Plaintiff.

The PSLRA provides the procedure for selecting a lead plaintiff in class actions brought under the federal securities laws. The PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to a published notice of class action by the later of: (i) 90 days after the date of publication of the notice; or (ii) as soon as practicable after the Court decides any pending motion to consolidate. 15 U.S.C. § 78u-4(a)(3)(B) The PSLRA provides a "rebuttable presumption" that the "most adequate plaintiff" — *i.e.*, the plaintiffs most capable of adequately representing the interests of the Class — is the class member or group of class members that:

> (aa) has either filed the complaint or made a motion in response to a notice. . .
>
> (bb) in the determination of the Court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)

The presumption "may be rebutted only upon proof by a purported member of the plaintiff class that the presumptively most adequate plaintiff—

(aa) will not fairly and adequately protect the interest of the class; or

(bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class."

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

As set forth below, Movant satisfies the forgoing criteria and has complied with all of the PSLRA's requirements to be appointed lead plaintiff. Movant has, to the best of his knowledge, the largest financial interest in this litigation—having lost $51,186.08 as a result of his transactions and meets the relevant requirements of Federal Rule of Civil Procedure 23. *See* Loss Chart, Ex. B to Korsinsky Decl. In addition, Movant is not aware of any unique defenses that Defendants could raise against him that would render him inadequate to represent the Class. Accordingly, Movant respectfully submits that he should be appointed as lead plaintiff. *See Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 397 (S.D.N.Y. 2008).

### 1.    Movant Filed a Timely Motion.

On December 20, 2018, pursuant to 15 U.S.C. § 78u-4(a)(3)(A)(i), counsel for Plaut published the Press Release on *Globe Newswire*—a widely circulated national business-oriented wire service—announcing that a securities class action had been filed against defendants herein and advising purchasers of Goldman Sachs securities that they had 60 days from the publication of the December 20, 2018 notice to file a motion to be appointed as lead plaintiff. *See* Press Release, Ex. C to Korsinsky Decl.; *Micholle v. Ophthotech Corp.*, No. 17-CV-210 (VSB), 2018 U.S. Dist. LEXIS 41120, at *18 (S.D.N.Y. Mar. 13, 2018) (filing a notice on *Globe Newswire* satisfied the PSLRA's notice requirement).

Movant timely filed this motion within the 60-day period following publication of the November 30, 2018 Press Release, submitted herewith a sworn certification attesting that he is willing to serve as a representative of the Class and attaching his transactions in Goldman Sachs

securities. *See* Korsinsky Decl., Ex. A. By making a timely motion in response to a PSLRA notice, Movant satisfies the first PSLRA requirement to be appointed as lead plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(aa).

### 2.    Movant Has the Largest Financial Interest.

The PSLRA requires a court to adopt the rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii). At the time of this filing, Movant believes that he has the largest financial interest among Class members who filed timely applications for appointment as lead plaintiff and, accordingly, is presumed to be the "most adequate plaintiff."

Movant purchased Goldman Sachs securities at prices alleged to have been artificially inflated by way of the Defendants' scheme and/or in reliance upon the materially false and misleading statements issued by the Defendants and was injured thereby. As a result of the alleged fraud against Defendants, Movant suffered an approximate loss of $51,186.08. *See* Korsinsky Decl., Ex. B. Movant is unaware of any other Class member claiming a larger financial interest in this matter that has filed a motion for appointment as lead plaintiff. Consequently, Movant believes that he has the "largest financial interest in the relief sought by the Class." Thus, Movant satisfies the second PSLRA requirement—the largest financial interest—to be appointed as lead plaintiff for the Class. *See Varghese,* 589 F. Supp. 2d at 396.

### 3.    Movant Satisfies the Relevant Requirements of Rule 23.

The PSLRA further provides that in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must "otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure." *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). Rule 23(a) generally provides that a class action may proceed if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interest of the class.

FED. R. CIV. P. 23(a).

In making its determination that a lead plaintiff candidate otherwise satisfies the requirements of Rule 23, "typicality and adequacy of representation are the only provisions [of Rule 23] relevant to the determination." *City of Monroe Emples.' Ret. Sys. v. Hartford Fin. Servs. Group, Inc.*, 269 F.R.D. 291, 296 (S.D.N.Y. 2010). At the lead plaintiff stage of the litigation, Movant need only make a preliminary showing that they satisfy Rule 23's typicality and adequacy requirements. *Id.* at 296-97 (*citing In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 102 (S.D.N.Y. 2005); *Kuriakose v. Fed. Home Loan Mortg. Co.,* No. 1:08-cv-7281-JFK, 2008 U.S. Dist. LEXIS 95506, at *11-12 (S.D.N.Y. Nov. 24, 2008).

### a.      Movant's Claims Are Typical.

The Rule 23(a) typicality requirement is satisfied when a lead plaintiff's claims arise from the same event, practice, or course of conduct that gives rise to other class members' claims, and lead plaintiff's claims are based on the same legal theory. *See Kuriakose,* 2008 U.S. Dist. LEXIS 95506, at *12. Rule 23 does not require the lead plaintiff to be identically situated with all class members. *Id.*

Movant's claims are typical of the claims asserted by the proposed Class. Like all members of the Class, Movant alleges that Defendants' material misstatements and omissions, and fraudulent scheme, concerning Goldman Sachs's business, operations and financial prospects violated the federal securities laws. Movant, like all members of the Class, purchased Goldman Sachs securities during the Class Period at prices artificially inflated by Defendants' materially

false and misleading statements, and was damaged thereby. *Waterford Twp. Police & Fire Ret. Sys. v. Smithtown Bancorp, Inc.*, No. 10-cv-00864-SLT, 2011 U.S. Dist. LEXIS 88552, at *12 (E.D.N.Y. May 31, 2011) (typicality satisfied where Movant purchased stock at artificially inflates prices "and suffered damages as a result"). Accordingly, Movant's interests and claims are "typical" of the interests and claims of the Class.

### b.      Movant Is an Adequate Representative.

"The adequacy requirement is satisfied where: (1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy." *City of Monroe*, 269 F.R.D. at 297. Movant has demonstrated his adequacy by retaining competent and experienced counsel with the resources and expertise to efficiently prosecute this action, and his financial losses ensure that he has sufficient incentive to ensure vigorous advocacy. *See* Korsinsky Decl., Ex. B. Finally, Movant is not aware that any conflict exists between his claims and those asserted on behalf of the Class.

### B.      The Court Should Approve Lead Plaintiff's Choice of Counsel.

The PSLRA vests authority in the lead plaintiff to select and retain counsel, subject only to approval of the Court. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); *In re Cendant Corp.*, 264 F.3d 201, 274 (3d Cir. 2001). Thus, the Court should not disturb the lead plaintiff's choice of counsel unless necessary to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

Here, Movant has selected Levi & Korsinsky to pursue this litigation on his behalf and will retain the firm as the Class's Lead Counsel in the event he is appointed as lead plaintiff. Levi & Korsinsky possesses adequate experience in securities litigation and have successfully prosecuted numerous securities fraud class actions on behalf of injured investors, as reflected by the Firm

Résumé attached to the Korsinsky Decl. as Ex. D. Moreover, Levi & Korsinsky has often and recently been appointed as lead counsel in similar actions in this Circuit and across the country arising under the federal securities laws on behalf of investors. *See In re Adient Plc Sec. Litig.* Case No 1:18-cv-09116 (S.D.N.Y.) (appointing Levi & Korsinsky as co-lead counsel); *In re Helios and Matheson Analytics, Inc. Sec. Litig.* Case No. 1:18-06965 (S.D.N.Y.) (appointing Levi & Korsinsky as lead counsel); *see also Gunderson v. Klondex Mines Ltd.,* No. 3:18-cv-00256-LRH, 2018 U.S. Dist. LEXIS 213995, at *12 (D. Nev. Dec. 18, 2018) (appointing Levi & Korsinsky as lead counsel finding "no reason that . . . LK . . . will not fairly and adequately represent the interests of the class"); *Isaacs v. Musk*, No. 18-cv-04865-EMC, 2018 U.S. Dist. LEXIS 200717, at *8 (N.D. Cal. Nov. 27, 2018) (appointing Levi & Korsinsky as lead counsel) *recons. denied In re Tesla, Inc. Sec. Litig.*, No. 18-cv-04865-EMC, 2018 U.S. Dist. LEXIS 212238 (N.D. Cal. Dec. 17, 2018). Thus, the Court may rest assured that by granting Movant's motion, the Class will receive the highest caliber of legal representation possible. Thus, the Court may be assured that by granting the Movant's motion, the Class will receive the highest caliber of legal representation.

## IV.    CONCLUSION

For the foregoing reasons, Movant respectfully requests the Court grant his Motion and enter an Order: (1) appointing Movant as lead plaintiff, (2) approving his selection of Levi & Korsinsky as Lead Counsel for the Class, and (3) granting such other relief as the Court may deem just and proper.

*[Signature on Following Page]*

Dated: February 19, 2019

Respectfully Submitted,

**LEVI & KORSINSKY, LLP**

By:  /s/ *Eduard Korsinsky*
Eduard Korsinsky (EK-8989)
55 Broadway, 10th Floor
New York, NY 10006
Tel: (212) 363-7500
Fax: (212) 363-7171
Email: ek@zlk.com


*Lead Counsel for Movant and [Proposed]*
*Lead Counsel for the Class*