**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DANIEL PLAUT, Individually and on Behalf of All Others Similarly Situated,<br><br>      Plaintiff,<br><br>    v.<br><br>THE GOLDMAN SACHS GROUP, INC., LLOYD C. BLANKFEIN, HARVEY M. SCHWARTZ, and R. MARTIN CHAVEZ,<br><br>      Defendants. | Civ. A. No. 1:18-cv-12084-VSB<br><br>**CLASS ACTION** |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF
IWA FOREST INDUSTRY PENSION PLAN
FOR APPOINTMENT AS LEAD PLAINTIFF AND
<u>APPROVAL OF ITS SELECTION OF LEAD COUNSEL</u>**

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................................ 1

II. SUMMARY OF THE ACTION AND PROCEDURAL BACKGROUND ....................... 2

III. ARGUMENT ........................................................................................................................ 6

    A. The PLSRA Standard for Appointing Lead Plaintiff ................................................. 6

    B. IWA Forest Is the "Most Adequate Plaintiff" under the Exchange Act .................... 7

        1. IWA Forest Has Satisfied the PSLRA's Procedural Requirements................... 7

        2. IWA Forest Has the Largest Financial Interest in the Relief Sought by the Class ................................................................................................................. 7

    C. IWA Forest Is Qualified Under Rule 23 .................................................................... 8

        1. IWA Forest's Claims Are Typical of the Claims of the Class........................... 9

        2. IWA Forest Will Fairly and Adequately Represent the Class' Interests ......... 10

        3. This Court Should Approve IWA Forest's Choice of Counsel ....................... 11

IV. CONCLUSION .................................................................................................................. 12

i

## TABLE OF AUTHORITIES

**Cases**

*In re Cendant Corp. Litig.*,
    264 F.3d 201, 244, 264 (3d Cir. 2001) .................................................................... 11

*In re Deutsche Bank Aktiengesellschaft Sec. Litig.*,
    No. 16cv03495, 2016 WL 5867497 (S.D.N.Y. Oct. 4, 2016) ........................... 8, 9, 10

*In re Drexel Burnham Lambert*,
    960 F.2d 285 (2d Cir. 1992) .................................................................................... 10

*In re KIT Digital, Inc. Sec. Litig.*,
    293 F.R.D. 441, 446 (S.D.N.Y. 2013) .................................................................... 11

*Indergit v. Rite Aid Corp.*,
    293 F.R.D. 632 (S.D.N.Y. 2013) ............................................................................ 10

*Logan v. QRx Pharma Ltd.*,
    No. 15 CIV. 4868, 2015 WL 5334024 (S.D.N.Y. Sept. 14, 2015) ............................ 9

*Reitan v. China Mobile Games & Entm't Grp., Ltd.*,
    2014 WL 6491433, (S.D.N.Y. Nov. 20, 2014) ........................................................ 11

**Statutes**

15 U.S.C. § 78j(b) .............................................................................................................. 1

15 U.S.C. § 78t(a) .............................................................................................................. 1

15 U.S.C. § 78u-4, *et seq*. ........................................................................................ passim

**Rules**

Fed. R. Civ. P. 23 ........................................................................................................... 8-9

**Other Authorities**

H.R. Rep. No. 104-327 (1995),
    *reprinted in* 1995 U.S.C.C.A.N. 730, 737) ............................................................ 11

Putative class member IWA Forest Industry Pension Plan ("IWA Forest"), by its counsel, respectfully submits this Memorandum of Law pursuant to the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), for entry of an order: (i) appointing IWA Forest as Lead Plaintiff in the above-captioned action (the "Action"); (ii) approving IWA Forest's selection of the law firm of Kaplan Fox & Kilsheimer LLP ("Kaplan Fox") to serve as Lead Counsel under 15 U.S.C. § 78u-4(a)(3)(B)(v); and (iii) granting such other and further relief as the Court may deem just and proper.

IWA Forest believes that it has the largest financial interest in the outcome of this litigation and is thus presumptively entitled to be appointed Lead Plaintiff and that its choice of counsel should be approved.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

## I.   INTRODUCTION

Presently pending in this District is a securities class action brought pursuant to Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and U.S. Securities and Exchange Commission Rule 10b-5 promulgated thereunder, against The Goldman Sachs Group, Inc. ("Goldman Sachs" or the "Company"), Lloyd C. Blankfein ("Blankfein"), Harvey M. Schwartz, and R. Martin Chavez (the "Defendants"), for violations of federal securities laws on behalf of all persons and entities who purchased or otherwise acquired Goldman Sachs securities between February 28, 2014 and December 17, 2018, both dates inclusive (the "Class Period").

Pursuant to the PSLRA, this Court must appoint the member or members of the class "most capable of adequately representing the interests of class members" to serve as lead plaintiff.  15 U.S.C. §§ 78u-4(a)(3)(B)(i).  IWA Forest believes it is entitled to appointment as Lead Plaintiff as the movant with the largest financial interest that otherwise meets the applicable requirements of

Rule 23 of the Federal Rules of Civil Procedure.  IWA Forest also respectfully requests that the Court approve Kaplan Fox as Lead Counsel. 15 U.S.C. § 78u-4(a)(3)(B)(v) ("the most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class").

## II. SUMMARY OF THE ACTION AND PROCEDURAL BACKGROUND

On December 20, 2018, the Action was filed, alleging violations of Sections 10(b) and 20(a) of the Exchange Act on behalf of a class of purchasers of Goldman Sachs securities during the Class Period.  Also on December 20, 2018, in accordance with 15 U.S.C. § 78u-4(a)(3)(A)(i) of the PSLRA, notice of the Action was published to class members on *Globe Newswire* (the "Notice") advising purchasers of Goldman Sachs securities of the existence of a lawsuit against Defendants and the nature of Defendants' statements, omissions and alleged conduct.  The Notice further advised class members of their right to move the Court to be appointed Lead Plaintiff within 60 days.

Accordingly, IWA Forest now moves this Court to be appointed as Lead Plaintiff.

As alleged in the Action, Goldman Sachs is a worldwide investment banking, securities, and investment management company serving corporations, financial institutions, governments, and high-net worth individuals. (Compl. ¶ 2.[1])  According to the Action, Goldman Sachs has worked on $18.8 billion of Malaysian mergers and acquisitions over the past five years, including raising funds for 1Malaysia Development Bhd. ("1MDB"), a Malaysian state-owned investment fund set up in 2009, four months after Najib Razak ("Razak") became Prime Minister of Malaysia. 1MDB was initially established to finance infrastructure and economic deals in Malaysia.  Compl. ¶ 3.

---

[1] "Compl., ¶ __" refers to the Action.

According to the Action, in 2012, officials from 1MDB met with Goldman Sachs in Hong Kong to discuss a bond deal. *Id.* ¶ 4.  Goldman Sachs subsequently raised $6.5 billion for 1MDB, earning approximately $600 million in fees.  *Id.*  As alleged in the Action, since early 2015, 1MDB has been the subject of international criminal regulatory investigations for suspected fraud and money laundering after missing $11 billion in payments owed to banks and bondholders.  *Id.* ¶ 5.

According to the Action, on June 18, 2015, *The Wall Street Journal* published an article entitled "Fund Controversy Threatens Malaysia's Leader," detailing how 1MDB indirectly funded Razak's 2013 election campaign.  *Id.* ¶ 6.  Further, according to the Action, on July 2, 2015, *The Wall Street Journal* published another article, entitled "Investigators Believe Money Flowed to Malaysian Leader Najib's Accounts Amid 1MDB Probe," reporting how Malaysian investigators traced nearly $700 million in deposits to what they believed to be Razak's personal bank accounts. *Id.* ¶ 7.

As alleged in the Action, according to the U.S. Department of Justice (the "DOJ"), high-level 1MDB officials and their associates misappropriated an estimated $4.5 billion from 1MDB between 2009 and 2014, and two former Goldman Sachs managing directors – Tim Leissner ("Leissner") and Ng Chong Hwa, also known as Roger Ng ("Ng") – are implicated in the 1MDB scandal.  *Id.* ¶ 8.  Leissner was Chairman of South East Asia and Vice Chairman of the Investment Banking Division in Asia Ex-Japan (*i.e.*, Asia, excluding Japan) for Goldman Sachs.  *Id.* ¶ 9.  Ng was a former Goldman Sachs banker, managing director, and deputy to Leissner.  *Id.* ¶ 10.  Ng most recently was the head of South-East Asian sales in Goldman Sachs's fixed-income, currencies, and commodities unit.  *Id.*

As alleged in the Action, throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance

3

policies. Specifically, as alleged in the Action, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Goldman Sachs participated in a fraud and money-laundering scheme in collusion with 1MDB; (ii) the foregoing conduct, when revealed, would foreseeably subject Goldman Sachs to heightened regulatory investigation and enforcement; and (iii) as a result, Goldman Sachs's public statements were materially false and misleading at all relevant times. *Id.* ¶ 11.

According to the Action, on March 7, 2016, *Bloomberg News* published an article entitled "Ex-Goldman Banker to Malaysia Fund Said Subpoenaed in U.S. Probe," reporting that the DOJ had subpoenaed Leissner in late February in connection with a probe linked to 1MDB for which Goldman Sachs was the primary bond issuer. *Id.* ¶¶ 12, 49. Following this news Goldman Sachs's stock price fell $3.75 per share, or 2.41%, to close at $151.60 per share on March 8, 2016. *Id.* ¶¶ 13, 50.

According to the Action, on November 1, 2018, U.S. federal prosecutors in the Eastern District of New York unsealed indictments against Leissner and Ng related to the 1MDB probe, explicitly describing them as "agents acting within the scope of their employment on behalf of" the Company "with the intent, at least in part, to benefit" Goldman Sachs. *Id.* ¶¶ 14, 75. That same day, the United States Attorney's Office for the Eastern District of New York announced that Leissner's guilty plea was unsealed for "a two-count criminal information charging Leissner with conspiring to launder money and conspiring to violate the FCPA [Foreign Corrupt Practices Act] by both paying bribes to various Malaysian and Abu Dhabi officials and circumventing the internal accounting controls of the Financial Institutions while he was employed by it." *Id*.

As alleged in the Action, on November 8, 2018, a report by *Bloomberg News* detailed the personal involvement of Blankfein in a meeting to establish ties with Malaysia and its new

4

sovereign wealth fund that was referenced in the court documents unsealed the prior week. *Id* ¶¶ 15, 76.  In a November 8, 2018 article entitled "Goldman's Blankfein Said to Have Attended 2009 1MDB Meeting," *Bloomberg News* noted that "Blankfein was the unidentified high-ranking executive referenced in U.S. court documents who attended a 2009 meeting with the former Malaysian prime minister," and that "[t]he meeting was arranged with the help of men who are now tied to the subsequent plundering of the 1MDB fund[.]" *Id.*.  Following this news, Goldman Sachs's stock price fell by $9 per share, or nearly 4%, to close at $222.65 per share on November 9, 2018.  *Id.* ¶¶ 16, 77.

As alleged in the Action, on November 12, 2018, Malaysian government officials denounced Goldman Sachs's role in the 1MDB scandal. *Id.* ¶¶ 17, 78.  Malaysian Prime Minister Mahathir Mohamad stated that "[t]here is evidence that Goldman Sachs has done things that are wrong" and "[o]bviously we have been cheated through the compliance by Goldman Sachs people." *Id*.  Meanwhile the country's Finance Minister Lim Guan Eng said that Malaysia would seek a "full refund" of the approximately $600 million in fees that the Company earned in connection with 1MDB's $6.5 billion bond deal.  *Id*.  Following this news, Goldman Sachs's stock price fell $16.60 per share, or nearly 7.5%, to close at $206.05 per share on November 12, 2018.  *Id.* 18, 79.

As alleged in the Action, on December 17, 2018, multiple news outlets reported that Malaysia had filed criminal charges against Goldman Sachs and two former executives for their role in the 1MDB fraud and money-laundering scandal.  *Id.* ¶¶ 19, 80.  That same day, in response to these charges, Goldman Sachs denied any wrongdoing through its spokesman Edward Naylor, who stated "[w]e believe these charges are misdirected and we will vigorously defend them and look forward to the opportunity to present our case. . . ." *Id*.  Following this news, Goldman

5

Sachs's stock price fell $4.76 per share, or 2.76%, to close at $168.01 per share on December 17, 2018. *Id.* ¶¶ 20, 81.

## III. ARGUMENT

### A. The PLSRA Standard for Appointing Lead Plaintiff

The PSLRA sets forth the procedure for the selection of a lead plaintiff in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §§ 78u-4(a)(1), 78u-4(3)(B)(i). Specifically, within 20 days after the date on which a class action is filed, the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class –

> (I)  of the pendency of the action, the claims asserted therein, and the purported class period; and
> (II) that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

15 U.S.C. § 78u-4(a)(3)(A)(i).

Further, the PSLRA directs the Court to consider any motions by plaintiffs or purported class members to serve as Lead Plaintiff in response to any such notice within 90 days after the date of publication of the notice, or as soon as practicable after the Court decides any pending motion to consolidate any actions asserting substantially the same claim or claims. 15 U.S.C. § 78u-4(a)(3)(B).

Under the relevant sections of the Exchange Act, the Court "shall" appoint the "most adequate plaintiff," and is to presume that plaintiff is the person which:

> (aa) has either filed the complaint or made a motion in response to a notice . . .;
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

6

   (cc)  otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

### B.  IWA Forest Is the "Most Adequate Plaintiff" under the Exchange Act

IWA Forest respectfully submits that it is the "most adequate plaintiff" because it has complied with the PSLRA procedural requirements, holds the largest financial interest of any movant, and satisfies Rule 23's typicality and adequacy requirements. In addition, IWA Forest has duly signed and filed a certification stating that it is willing to serve as the representative party on behalf of the class. *See* Declaration of Frederic S. Fox in Support of the Motion of IWA Forest Industry Pension Plan for Appointment as Lead Plaintiff and Approval of its Selection of Lead Counsel ("Fox Decl."), dated February 19, 2019, Ex. B attached thereto. Finally, IWA Forest has selected and retained counsel experienced in the prosecution of securities class actions to represent the class. *See id.*, Ex. C (Kaplan Fox Firm Resume). Accordingly, IWA Forest satisfies the PSLRA's filing requirements for seeking appointment as lead plaintiff and, therefore should be appointed Lead Plaintiff.

#### 1.  IWA Forest Has Satisfied the PSLRA's Procedural Requirements

The Action was filed on December 20, 2018 and Notice was published over the *Globe Newswire* national wire service the same day. *See id.*, Ex. A. Accordingly, the time period in which class members may move to be appointed lead plaintiff in this case expires on February 19, 2019. *See* 15 U.S.C. § 78u-4(a)(3)(A). Pursuant to the PSLRA's provisions, and within the requisite time frame after publication of the required notice, IWA Forest timely moved this Court to be appointed lead plaintiff on behalf of all members of the class.

#### 2.  IWA Forest Has the Largest Financial Interest in the Relief Sought by the Class

7

Under the relevant sections of the Exchange Act, a rebuttable presumption exists whereby the plaintiff with the largest financial interest in the litigation and who otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure is presumed to be the most adequate plaintiff to lead the action.  15 U.S.C. § 78u-4(a)(3)(B)(iii).  Here, IWA Forest suffered substantial losses as a result of purchasing shares of Goldman Sachs securities at artificially inflated prices during the Class Period.  *See* Fox Decl., Ex. B.  IWA Forest is not aware of any other movant with a larger financial interest and believes it has the largest financial interest of any lead plaintiff movant.  Therefore, IWA Forest believes it is presumptively entitled to appointment as the Lead Plaintiff.

### C. IWA Forest Is Qualified Under Rule 23

The PSLRA provides that the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc).  Rule 23(a) provides that a party may serve as a class representative only if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

Of the four prerequisites to class certification, only two – typicality and adequacy – directly address the personal characteristics of the class representatives.  *See In re Deutsche Bank Aktiengesellschaft Sec. Litig.*, No. 16cv03495, 2016 WL 5867497, at *4 (S.D.N.Y. Oct. 4, 2016) ("For the purposes of appointment as lead plaintiff pursuant to the PSLRA, however, 'the moving

8

plaintiff must only make a preliminary showing that the adequacy and typicality requirements have been met.'") (citation omitted).  Consequently, in deciding a motion to serve as lead plaintiff, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until the lead plaintiff moves for class certification.  As detailed below, IWA Forest satisfies the typicality and adequacy requirements of Rule 23(a), thereby justifying its appointment as Lead Plaintiff for the Action.

### 1.      **IWA Forest's Claims Are Typical of the Claims of the Class**

The typicality requirement of Rule 23(a) is satisfied when (1) the claims of the proposed lead plaintiff arise from the same course of conduct that gives rise to the other purported class members' claims, (2) the claims are based on the same legal theory, and (3) the purported class members and proposed lead plaintiff were injured by the same conduct.  *See, e.g.*, *In re Deutsche Bank Aktiengesellschaft Sec. Litig.*, 2016 WL 5867497, at *5 ("The typicality requirement is satisfied if each class member's claim 'arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'") (internal citations omitted).

The claims asserted by IWA Forest are based on the same legal theory and arise out of the same course of events as the other purported class members' claims.  IWA Forest purchased shares of Goldman Sachs securities, as did each member of the proposed class, at prices artificially inflated by Defendants' false and misleading statements and was damaged thereby.  *Logan v. QRx Pharma Ltd.*, No. 15 CIV. 4868, 2015 WL 5334024, at *3 (S.D.N.Y. Sept. 14, 2015) (finding the typicality requirement met where movants' claims and injuries arose from the same conduct from which the other class members' claims and injuries arose).  Thus, IWA Forest satisfies the typicality requirement of Rule 23(a).

9

### 2.     IWA Forest Will Fairly and Adequately Represent the Class' Interests

Under Rule 23(a)(4) of the Federal Rules of Civil Procedure, the representative party must "fairly and adequately protect the interest of the class." Fed. R. Civ. P. 23(a)(4). A lead plaintiff is adequate where it has retained counsel that is "qualified, experienced and generally able to conduct the litigation" and does not have interests that are "antagonistic" to the class that it seeks to represent. *Indergit v. Rite Aid Corp.*, 293 F.R.D. 632, 654 (S.D.N.Y. 2013) (citing *In re Drexel Burnham Lambert*, 960 F.2d 285, 291 (2d Cir. 1992)). Here, IWA Forest's interests are clearly aligned with the members of the proposed class, and there is no evidence of any antagonism between IWA Forest's interests and those of the class. As detailed above, IWA Forest's claims raise similar questions of law and fact as claims of the members of the class, and IWA Forest's claims are typical of the members of the class.

Further, IWA Forest has demonstrated its adequacy and willingness to serve as and assume the responsibilities of a lead plaintiff. *See* Fox Decl., Ex. B. Having suffered substantial losses, IWA Forest will be a zealous advocate on behalf of the class. In addition, IWA Forest has selected Kaplan Fox – counsel highly experienced in prosecuting securities class actions – to represent it. *See* Fox Decl., Ex. C. Thus, the close alignment of interests between IWA Forest and other class members, and IWA Forest's strong desire to prosecute the Action on behalf of the class, provide ample reason to grant IWA Forest's motion for appointment as Lead Plaintiff in the Action. Accordingly, IWA Forest satisfies the prerequisites for appointment as Lead Plaintiff pursuant to the Exchange Act.

Additionally, IWA Forest is a sophisticated institutional investor that is precisely the type of lead plaintiff that Congress sought to summon and empower when it enacted the PSLRA. As Congress noted in its PSLRA Statement of Managers Report, the PSLRA was designed "to increase

the likelihood that institutional investors will serve as lead plaintiff[]," in part, because "[i]nstitutional investors and other class members with large amounts at stake will represent the interests of the plaintiff class more effectively than class members with small amounts at stake." *In re Cendant Corp. Litig.*, 264 F.3d 201, 244, 264 (3d Cir. 2001) (quoting H.R. Rep. No. 104-327, at 34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 737)); *see also In re KIT Digital, Inc. Sec. Litig.*, 293 F.R.D. 441, 446 (S.D.N.Y. 2013) (noting the "statutory preference for institutional lead plaintiffs"); *Reitan v. China Mobile Games & Entm't Grp., Ltd.*, No. 14-cv-4471, 2014 WL 6491433, at *4 (S.D.N.Y. Nov. 20, 2014 (recognizing that "many courts have demonstrated a clear preference for institutional investors to be appointed as lead plaintiffs," and collecting cases).

### 3. This Court Should Approve IWA Forest's Choice of Counsel

The Exchange Act vests authority in the lead plaintiff to select and retain lead counsel, subject only to court approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); *see also In re Deutsche Bank Aktiengesellschaft Sec. Litig.*, 2016 WL 5867497, at *5 ("There is a 'strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection.'") (citations omitted). IWA Forest has retained Kaplan Fox to file moving papers on behalf of IWA Forest seeking appointment as Lead Plaintiff and to serve as lead counsel to pursue this litigation on behalf of itself and the class. Kaplan Fox possesses extensive experience in the area of securities litigation and has successfully prosecuted numerous securities class actions on behalf of injured investors. *See* Fox Decl., Ex. C. Thus, the Court may be assured that, in the event the instant motion is granted, the members of the class will receive the highest caliber of legal representation available.

## IV.     CONCLUSION

For all of the foregoing reasons, IWA Forest respectfully requests that the Court: (1) appoint IWA Forest as Lead Plaintiff; (2) approve IWA Forest's selection of Kaplan Fox as Lead Counsel; and (3) grant such other relief as the Court may deem just and proper.

Dated:  February 19, 2019                                  Respectfully submitted,

*/s/ Frederic S. Fox*
Frederic S. Fox
Donald R. Hall
Jeffrey P. Campisi
Pamela A. Mayer
**KAPLAN FOX & KILSHEIMER LLP**
850 Third Avenue, 14th Floor
New York, NY 10022
Telephone: (212) 687-1980
Facsimile: (212) 687-7714

*Attorneys for Movant IWA Forest Industry Pension Plan*

12

**CERTIFICATE OF SERVICE**

    I, Frederic S. Fox, hereby certify that, on February 19, 2019, I caused the foregoing to be served on all counsel of record by filing the same with the Court using the CM\ECF system which will send electronic notices of the filing to all counsel of record.

                                                  */s/ Frederic S. Fox*
                                                  Frederic S. Fox