**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DANIEL PLAUT, Individually and on Behalf of All Others Similarly Situated,<br><br>                  Plaintiff,<br>vs.<br><br>THE GOLDMAN SACHS GROUP, INC., LLOYD C. BLANKFEIN, HARVEY M. SCHWARTZ and R. MARTIN CHAVEZ,<br><br>                  Defendants. | Case No. 1:18-cv-12084-VSB<br><br>**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF NEBRASKA INVESTMENT COUNCIL FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL** |

**TABLE OF CONTENTS**

                                                      Page

PRELIMINARY STATEMENT ............................................................................................... 1

FACTUAL BACKGROUND ..................................................................................................... 3

ARGUMENT ............................................................................................................................... 7

      I.      NEBRASKA SHOULD BE APPOINTED LEAD PLAINTIFF ........................... 7

            A.      The PSLRA Standard For Appointing Lead Plaintiff ................................ 7

            B.      Nebraska Is The "Most Adequate Plaintiff" ............................................... 8

                  1.      Nebraska's Motion Is Timely ........................................................... 8

                  2.      Nebraska Has a Substantial Financial Interest ................................ 8

                  3.      Nebraska Satisfies Rule 23's Typicality and Adequacy Requirements ...................................................................................... 9

            C.      As An Institutional Investor, Nebraska Is Precisely The Type Of Lead Plaintiff Congress Envisioned When It Passed The PSLRA ........... 11

      II.     NEBRASKA'S SELECTION OF COUNSEL MERITS APPROVAL ................ 12

CONCLUSION .......................................................................................................................... 13

i

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Braskem S.A. Sec. Litig.*,
   No. 15 Civ. 5132 (PAE), 2015 WL 5244735 (S.D.N.Y. Sept. 8, 2015) ................................ 7, 8

*In re Cendant Corp. Litig.*,
   264 F.3d 201 (3d Cir. 2001) ............................................................................................. 12

*City of Monroe Emps.' Ret. Sys. v. Hartford Fin. Servs. Grp., Inc.*,
   269 F.R.D. 291 (S.D.N.Y. 2010) ...................................................................................... 9

*In re Elan Corp. Sec. Litig.*,
   No. 1:08-cv-08761-AKH, 2009 WL 1321167 (S.D.N.Y. May 11, 2009) ....................... 10

*Faig v. Bioscrip, Inc.*,
   No. 13 Civ. 06922 (AJN), 2013 WL 6705045 (S.D.N.Y. Dec. 19, 2013) ..................... 8, 9

*Glauser v. EVCI Career Colls. Holding Corp.*,
   236 F.R.D. 184 (S.D.N.Y. 2006) ...................................................................................... 2

*Kemp v. Universal Am. Fin. Corp.*,
   No. 05 Civ. 9883 (JFK), 2006 WL 1190691 (S.D.N.Y. May 1, 2006) ............................ 8

*In re KIT Digital, Inc. Sec. Litig.*,
   293 F.R.D. 441 (S.D.N.Y. 2013) .................................................................................... 12

*Kux-Kardos v. VimpelCom, Ltd.*,
   151 F. Supp. 3d 471 (S.D.N.Y. 2016) .............................................................................. 9

*Lipetz v. Wachovia Corp.*,
   No. 08 Civ. 6171 (RJS), 2008 WL 4615895 (S.D.N.Y. Oct. 10, 2008) ......................... 11

*Micholle v. Ophthotech Corp.*,
   No. 17-CV-210 (VSB), 2018 WL 1307285 (S.D.N.Y. Mar. 13, 2018) ............... 8, 10, 12

*Randall v. Fifth St. Fin. Corp.*,
   No. 15-cv-7759, 2016 WL 462479 (S.D.N.Y. Feb. 1, 2016) ........................................... 9

*Reitan v. China Mobile Games & Entm't Grp., Ltd. (China Mobile)*,
   68 F. Supp. 3d 390 (S.D.N.Y. 2014) .............................................................................. 12

*In re Third Ave. Mgmt. LLC Sec. Litig.*,
   No. 16-cv-02758 (PKC), 2016 WL 2986235 (S.D.N.Y. May 13, 2016) ......................... 9

**Rules & Statutes**

Fed. R. Civ. P. 23 ................................................................................................................. *passim*

15 U.S.C. § 78u-4 *et seq.* ..................................................................................................... *passim*

**Docketed Cases**

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
 No. 04-cv-8141 (S.D.N.Y.) ....................................................................................................12

*In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*,
 No. 08-md-1963 (S.D.N.Y.) ...................................................................................................12

*In re Fannie Mae 2008 Sec. Litig.*,
 No. 08-cv-7831 (S.D.N.Y.) ....................................................................................................13

*In re Satyam Comput. Servs. Ltd. Sec. Litig.*,
 No. 09-md-2027 (S.D.N.Y.) ...................................................................................................13

**Other Authorities**

H.R. Conf. Rep. No. 104-369 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730 .......................2, 11, 12

S. Rep. No. 104-98 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679 ....................................................2

Proposed Lead Plaintiff Nebraska Investment Council ("Nebraska") respectfully submits this Memorandum of Law pursuant to Section 21(D)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(D)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), in support of its motion for the entry of an Order: (i) appointing Nebraska as Lead Plaintiff on behalf of a Class (as defined herein) of all persons and entities who purchased or otherwise acquired The Goldman Sachs Group, Inc. ("Goldman Sachs" or the "Company") securities between February 28, 2014, and December 17, 2018, both dates inclusive (the "Class Period"); (ii) approving Nebraska's selection of Labaton Sucharow LLP ("Labaton Sucharow") as Lead Counsel for the Class; and (iii) granting such other and further relief as the Court may deem just and proper.

## **PRELIMINARY STATEMENT**

Nebraska—a sophisticated institutional investor—respectfully submits that it should be appointed Lead Plaintiff on behalf of all persons and entities who purchased or otherwise acquired Goldman Sachs securities during the Class Period (the "Class"), and who were damaged as a result of defendants' alleged fraud. The action alleges violations of the Securities Exchange Act of 1934 against Goldman Sachs— an investment banking, securities, and investment management company with operations worldwide—and certain of its executive officers (collectively, the "Defendants") (the "Action").

The PSLRA requires that the Court appoint the "most adequate plaintiff" to serve as Lead Plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(i). In that regard, the Court must determine which movant has the "largest financial interest" in the relief sought by the Class, and also whether such movant has made a *prima facie* showing that it is a typical and adequate class representative under Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

For the reasons discussed below, Nebraska respectfully submits that it is the "most adequate plaintiff" under the PSLRA and should be appointed Lead Plaintiff.  Nebraska incurred losses of **$1,072,686.64** on its Class Period transactions in Goldman Sachs securities as calculated on a last-in-first-out ("LIFO") basis.[1]  Accordingly, Nebraska has a substantial financial interest in directing this litigation and recovering losses attributable to Defendants' violations of federal securities laws—an interest believed to be greater than that of any other qualified movant.

In addition to asserting a substantial financial interest in this litigation, Nebraska also meets the typicality and adequacy requirements of Rule 23 because (i) its claims arise from the same course of events as those of the other Class members, (ii) it relies on similar legal theories to prove Defendants' liability, and (iii) it has retained experienced counsel and is committed to vigorously prosecuting the Action.  Furthermore, the PSLRA's legislative history shows that a large, sophisticated institutional investor like Nebraska is precisely the type of investor that Congress intended to empower to lead securities class action litigation.  *See* H.R. Conf. Rep. No. 104-369, at 34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733; S. Rep. No. 104-98, at 6 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 685; *see also Glauser v. EVCI Career Colls. Holding Corp.*, 236 F.R.D. 184, 188 (S.D.N.Y. 2006) ("the PSLRA was passed . . . to increase the likelihood that institutional investors would serve as lead plaintiffs in actions such as this one") (citation omitted).

---

[1]  A copy of the Certification of Douglas J. Peterson, as Attorney General of the State of Nebraska on behalf of Nebraska ("Certification"), is attached as Exhibit A to the Declaration of Christopher J. Keller (the "Keller Decl.").  The Certification sets forth all transactions of Nebraska in Goldman Sachs securities during the Class Period.  In addition, a table reflecting the calculation of financial losses sustained by Nebraska on its Class Period transactions in Goldman Sachs securities ("Loss Analysis") is attached as Exhibit B to the Keller Decl.

Finally, pursuant to the PSLRA, Nebraska respectfully requests that the Court approve the selection of Labaton Sucharow as Lead Counsel for the Class. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v) ("[T]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class"). Labaton Sucharow is a nationally recognized securities class action litigation firm that has recovered billions of dollars in damages for defrauded investors.

Accordingly, Nebraska respectfully requests that the Court appoint it as Lead Plaintiff for the Class and approve its choice of Counsel.

## FACTUAL BACKGROUND[2]

Goldman Sachs was founded in 1869 and is headquartered in New York, New York. The Company is an investment banking, securities, and investment management company, serving corporations, financial institutions, governments, and high-net-worth individuals worldwide. *See* ¶ 2.

According to 2016 data compiled by Bloomberg, Goldman Sachs has "worked on $18.8 billion of Malaysian mergers and acquisitions over the past five years, making it the top foreign adviser with a 20.5[%] market share." Goldman Sachs's business in Malaysia included, *inter alia*, raising funds for 1Malaysia Development Bhd. ("1MDB"), a Malaysian state-owned investment fund set up in 2009, four months after Najib Razak ("Razak") became Prime Minister of Malaysia. 1MDB was initially established to finance infrastructure and economic deals in Malaysia. *See* ¶ 3.

In 2012, officials from 1MDB met with Goldman Sachs in Hong Kong to discuss a bond deal. Goldman Sachs subsequently raised $6.5 billion for 1MDB, earning approximately $600

---

[2] Unless otherwise indicated, all "¶" references refer to *Plaut v. The Goldman Sachs Group, Inc.*, No. 18-cv-12084 (S.D.N.Y. Dec 20 2018), ECF No. 1.

million in fees. Since early 2015, 1MDB has been the subject of international criminal and regulatory investigations for suspected fraud and money laundering after missing $11 billion in payments owed to banks and bondholders. *See* ¶¶ 4-5.

On June 18, 2015, *The Wall Street Journal* published an article entitled "Fund Controversy Threatens Malaysia's Leader," detailing how 1MDB indirectly funded Razak's 2013 election campaign. A probe into 1MDB subsequently followed. *See* ¶ 6.

On July 2, 2015, *The Wall Street Journal* published another article, entitled "Investigators Believe Money Flowed to Malaysian Leader Najib's Accounts Amid 1MDB Probe," reporting how Malaysian investigators traced nearly $700 million in deposits to what they believed to be Razak's personal bank accounts. *See* ¶ 7.

According to the U.S. Department of Justice, high-level 1MDB officials and their associates misappropriated an estimated $4.5 billion from 1MDB between 2009 and 2014. Implicated in the 1MDB scandal were two former Goldman Sachs managing directors— Tim Leissner ("Leissner") and Ng Chong Hwa, also known as Roger Ng ("Ng"). *See* ¶ 8.

Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Goldman Sachs participated in a fraud and money-laundering scheme in collusion with 1MDB; (ii) the foregoing conduct, when revealed, would foreseeably subject Goldman Sachs to heightened regulatory investigation and enforcement; and (iii) as a result, Goldman Sachs's public statements were materially false and misleading at all relevant times. *See* ¶ 11.

On March 7, 2016, *Bloomberg News* published an article entitled "Ex-Goldman Banker to Malaysia Fund Said Subpoenaed in U.S. Probe," reporting that the U.S. Justice Department

had subpoenaed Leissner in late February in connection with a probe linked to 1MDB. Goldman Sachs has since been the subject of investigations by the U.S. Justice Department regarding the multibillion-dollar fraud and money-laundering scheme involving 1MDB, for which Goldman Sachs was the primary bond underwriter. Following this news, Goldman Sachs' stock price fell $3.75 per share, or 2.41%, to close at $151.60 on March 8, 2016. *See* ¶¶ 12-13.

On November 1, 2018, U.S. federal prosecutors in the Eastern District of New York ("E.D.N.Y.") unsealed indictments against Leissner and Ng related to the 1MDB probe, explicitly describing them as "agents acting within the scope of their employment on behalf of" the Company "with the intent, at least in part, to benefit" Goldman Sachs. That same day, the United States Attorney's Office for the E.D.N.Y. announced that Leissner's guilty plea was unsealed for "a two-count criminal information charging Leissner with conspiring to launder money and conspiring to violate the FCPA [Foreign Corrupt Practices Act] by both paying bribes to various Malaysian and Abu Dhabi officials and circumventing the internal accounting controls of the Financial Institution while he was employed by it." The U.S. Attorney's Office also stated that, "[a]ccording to court filings, Leissner has been ordered to forfeit $43,700,000 as a result of his crimes." *See* ¶ 14.

On November 8, 2018, a report by *Bloomberg News* detailed the personal involvement of Goldman Sachs's then-Chief Executive Officer, Lloyd Blankfein, in a meeting to establish ties with Malaysia and its new sovereign wealth fund that was referenced in the court documents unsealed the prior week. In a November 8, 2018 article entitled "Goldman's Blankfein Said to Have Attended 2009 1MDB Meeting," *Bloomberg News* noted that "Blankfein was the unidentified high-ranking Goldman Sachs executive referenced in U.S. court documents who attended a 2009 meeting with the former Malaysian prime minister," and that "[t]he meeting was

arranged with the help of men who are now tied to the subsequent plundering of the 1MDB fund[.]" On this news, Goldman Sachs' stock price fell by $9.00, or nearly 4%, closing at $222.65 on November 9, 2018. *See* ¶¶ 15-16.

On November 12, 2018, Malaysian government officials denounced Goldman Sachs' role in the 1MDB scandal. Malaysian Prime Minister Mahathir Mohamad stated that "[t]here is evidence that Goldman Sachs has done things that are wrong" and "[o]bviously we have been cheated through the compliance by Goldman Sachs people." Meanwhile, the country's Finance Minister Lim Guan Eng said that Malaysia would seek a "full refund" of the approximately $600 million in fees that the Company earned in connection with 1MDB's $6.5 billion bond deal. Following this news, Goldman Sachs' stock price fell $16.60 per share, or nearly 7.5%, to close at $206.05 on November 12, 2018. *See* ¶¶ 17-18.

On December 17, 2018, multiple news outlets reported that Malaysia had filed criminal charges against Goldman Sachs and two former executives for their role in the 1MDB fraud and money-laundering scandal. That same day, in response to these charges, Goldman Sachs denied any wrongdoing through its spokesman Edward Naylor, who stated: "We believe these charges are misdirected and we will vigorously defend them and look forward to the opportunity to present our case The firm continues to cooperate with all authorities investigating these matters." Following this news, Goldman Sachs' stock price fell $4.76 per share, or 2.76%, to close at $168.01 on December 17, 2018. *See* ¶¶ 19-20.

As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

**ARGUMENT**

I. **NEBRASKA SHOULD BE APPOINTED LEAD PLAINTIFF**

Nebraska respectfully submits that it should be appointed Lead Plaintiff because it filed the instant motion in a timely manner, has a substantial financial interest in this litigation, and satisfies the typicality and adequacy requirements of Rule 23.

A. **The PSLRA Standard For Appointing Lead Plaintiff**

The PSLRA provides a straightforward procedure for selecting a lead plaintiff for "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(l); *see also* 15 U.S.C. § 78u-4(a)(3)(B) (setting forth procedure for selecting lead plaintiff). First, Section 21D(a)(3)(A)(i) of the Exchange Act, as amended by the PSLRA, specifies that:

> Not later than 20 days after the date on which the complaint is filed, the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class–
>
> (I)   of the pendency of the action, the claims asserted therein, and the purported class period; and
>
> (II)   that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

15 U.S.C. § 78u-4(a)(3)(A)(i).

Next, pursuant to the PSLRA, a court is to consider any motion made by class members to serve as lead plaintiff and appoint the "most adequate plaintiff." 15 U.S.C. § 78u-4(a)(3)(B)(i). In adjudicating a lead plaintiff motion, a court shall adopt a presumption that the "most adequate plaintiff" is the person who: (1) filed a complaint or made a motion to serve as lead plaintiff; (2) has the largest financial interest in the relief sought by the class; and (3) who otherwise satisfies the requirements of Rule 23. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *In re Braskem S.A. Sec.*

7

*Litig.*, No. 15 Civ. 5132 (PAE), 2015 WL 5244735, at *4 (S.D.N.Y. Sept. 8, 2015). This presumption may be rebutted only by "proof" that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *Micholle v. Ophthotech Corp.*, No. 17-CV-210 (VSB), 2018 WL 1307285, at *4 (S.D.N.Y. Mar. 13, 2018) (Broderick, V.).

### B. Nebraska Is The "Most Adequate Plaintiff"

#### 1. Nebraska's Motion Is Timely

Nebraska filed this motion to serve as Lead Plaintiff in a timely manner. Pursuant to 15 U.S.C. § 78u-4(a)(3)(A)(i), the plaintiff in the above-captioned action caused notice regarding the pending nature of this case to be published on *Globe Newswire,* a widely-circulated, national, business-oriented news wire service, on December 20, 2018. *See* Notice, Keller Decl., Ex. C. Thus, pursuant to the PSLRA, any person who is a member of the proposed Class may apply to be appointed lead plaintiff within sixty days after publication of the notice, *i.e.*, on or before February 19, 2019. Nebraska filed its motion seeking appointment as Lead Plaintiff within this deadline and thus has satisfied the procedural requirements of the PSLRA.

#### 2. Nebraska Has a Substantial Financial Interest

The PSLRA requires a court to adopt the rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii); *Kemp v. Universal Am. Fin. Corp.*, No. 05 Civ. 9883 (JFK), 2006 WL 1190691, at *2 (S.D.N.Y. May 1, 2006).

Nebraska incurred a substantial loss of **$1,072,686.64** on its transactions in Goldman Sachs securities on a LIFO basis during the Class Period. *See* Loss Analysis, Keller Decl., Ex. B; *see also Faig v. Bioscrip, Inc.*, No. 13 Civ. 06922 (AJN), 2013 WL 6705045, at *2 (S.D.N.Y.

8

Dec. 19, 2013) (finding the movant with the largest financial interest to be the presumptive "most adequate plaintiff"). Accordingly, Nebraska has a substantial financial interest as a qualified movant seeking Lead Plaintiff status, and is the presumptive "most adequate plaintiff." *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii); *Randall v. Fifth St. Fin. Corp.*, No. 15-cv-7759 (LANK), 2016 WL 462479, at *1 (S.D.N.Y. Feb. 1, 2016) (same); *City of Monroe Emps.' Ret. Sys. v. Hartford Fin. Servs. Grp., Inc.*, 269 F.R.D. 291, 296 (S.D.N.Y. 2010) (same).

### 3. Nebraska Satisfies Rule 23's Typicality and Adequacy Requirements

The PSLRA further provides that in addition to possessing the largest financial interest in the outcome of the litigation, a lead plaintiff must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." *See In re Third Ave. Mgmt. LLC Sec. Litig.,* No. 16-cv-02758 (PKC), 2016 WL 2986235, at *1 (S.D.N.Y. May 13, 2016). At the lead plaintiff selection stage all that is required to satisfy Rule 23 is a preliminary showing that the lead plaintiff's claims are typical and adequate. *See Kux-Kardos v. VimpelCom, Ltd.,* 151 F. Supp. 3d 471, 477 (S.D.N.Y. 2016); *see also Faig*, 2013 WL 6705045, at *3 ("[A]t this stage of the litigation, a moving plaintiff must only make a preliminary showing that the adequacy and typicality requirements have been met.") (internal citation omitted). Here, Nebraska unquestionably satisfies both requirements.

#### (i) Nebraska Satisfies the Typicality Requirement of Rule 23

The Rule 23(a) typicality requirement is satisfied when a plaintiff's claims arise from the same event, practice or course of conduct that gives rise to other class members' claims, and plaintiff's claims are based on the same legal theory. *See Faig*, 2013 WL 6705045, at *3. Rule 23 does not require the lead plaintiff to be identically situated with all class members. *Id.*

Nebraska's claims are typical of the claims asserted by the proposed Class. Like all members of the Class, Nebraska alleges that Defendants made material misstatements and

9

omissions regarding revenues and expenses on its long-term service projects in violation of the federal securities laws.  Nebraska, as did all of the members of the Class, purchased Goldman Sachs securities in reliance on Defendants' alleged misstatements and omissions and was damaged thereby.  Because Nebraska's claims arise from the same course of events as do the claims of other class members, the typicality requirement is satisfied.  *See Ophthotech*, 2018 WL 1307285, at *6.

### (ii)     Nebraska Satisfies the Adequacy Requirement of Rule 23

Nebraska likewise satisfies the adequacy requirement of Rule 23.  The adequacy of representation requirement of Rule 23(a)(4) is satisfied when a representative party establishes that it "will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  Courts in this District assess a movant's adequacy based on: "(1) the size, available resources and experience of the proposed lead plaintiff; (2) the qualifications of the proposed class counsel; and (3) any potential conflicts or antagonisms rising among purported class members."  *In re Elan Corp. Sec. Litig.*, No. 1:08-cv-08761-AKH, 2009 WL 1321167, at *2 (S.D.N.Y. May 11, 2009) (citing *In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*, No. 08 MDL No. 1963(RWS), 2009 WL 50132, at *8 (S.D.N.Y. Jan. 5, 2009)).

Nebraska will fairly and adequately represent the interests of the proposed Class, Nebraska unquestionably has resources sufficient to pursue the Action to a successful conclusion.  Nebraska has also retained counsel highly experienced in prosecuting securities class actions vigorously and efficiently, *see infra* at Section II, and timely submitted its choice to the Court for approval, in accordance with the PSLRA.  *See* 15 U.S.C. §§ 78u-4(a)(3)(A)(i)(II) and (B)(v).

Furthermore, no antagonism exists between Nebraska's interests and those of the absent Class members; rather, the interests of Nebraska and Class members are squarely aligned.

Nebraska suffered substantial losses due to Defendants' alleged misconduct and, therefore, has a sufficient interest in the outcome of this case to ensure vigorous prosecution of this action. *See Lipetz v. Wachovia Corp.*, No. 08 Civ. 6171 (RJS), 2008 WL 4615895, at *3 (S.D.N.Y. Oct. 10, 2008) (noting investor's "substantial financial stake in the litigation" suggests that it would vigorously prosecute claims on behalf of the class). In addition, Nebraska has retained counsel highly experienced in prosecuting securities class actions vigorously and efficiently, and timely submitted its choice to the Court for approval, in accordance with the PSLRA. *See* 15 U.S.C. §§ 78u-4(a)(3)(A)(i)(II) and (B)(v).

Finally, there is no proof that Nebraska is "subject to unique defenses that render such plaintiff incapable of representing the class," because no such proof exists. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). Accordingly, Nebraska satisfies the adequacy requirement.

### C. As An Institutional Investor, Nebraska Is Precisely The Type Of Lead Plaintiff Congress Envisioned When It Passed The PSLRA

In addition to satisfying the requirements of Rule 23, Nebraska—a large, sophisticated institutional investor—is precisely the type of investor Congress sought, through the enactment of the PSLRA, to encourage to assume a more prominent role in securities litigation. *See* H.R. Conf. Rep. No. 104-369, at 34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733 ("The Conference Committee believes that increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions."). Congress reasoned that increasing the role of institutional investors, which typically have a large financial stake in the outcome of the litigation, would be beneficial because institutional investors with a large financial stake are more apt to effectively manage complex securities litigation. *See id.* at 34-35, *reprinted in* 1995 U.S.C.C.A.N. at 733-34. To this end, many courts, including courts in this District, have recognized that the legislative

11

history reflects a clear preference for institutional investors to be appointed as lead plaintiff in securities class actions.  *See, e.g., Reitan v. China Mobile Games & Entm't Grp., Ltd. (China Mobile)*, 68 F. Supp. 3d 390, 396 (S.D.N.Y. 2014) (collecting cases and recognizing that "many courts have demonstrated a clear preference for institutional investors to be appointed as lead plaintiffs"); *In re KIT Digital, Inc. Sec. Litig.*, 293 F.R.D. 441, 446 (S.D.N.Y. 2013) (noting the "statutory preference for institutional lead plaintiffs"); *Ophthotech*, 2018 WL 1307285, at *6 (noting that "courts have a preference for appointing institutional investors as lead plaintiffs").

Accordingly, Nebraska has the sophistication and resources necessary to effectively litigate this matter and supervise Class counsel.

**II.      NEBRASKA'S SELECTION OF COUNSEL MERITS APPROVAL**

The PSLRA vests authority in the Lead Plaintiff to select lead counsel, subject to the approval of the Court. 15 U.S.C. § 78u-4(a)(3)(B)(v); *In re Cendant Corp. Litig.*, 264 F.3d 201, 276 (3d Cir. 2001) (stating that "the Reform Act evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention").  Consistent with Congressional intent, a court should not disturb the lead plaintiff's choice of counsel unless it is "necessary to protect the interests of the plaintiff class."  *See* H.R. Conf. Rep. No. 104-369, at 35 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 734.

Here, Nebraska has selected Labaton Sucharow to serve as Lead Counsel for the Class.  Labaton Sucharow has excelled as lead counsel in numerous landmark securities class actions on behalf of defrauded investors.  For example, Labaton Sucharow served as lead counsel in *In re American International Group, Inc. Securities Litigation*, No. 04-cv-8141 (S.D.N.Y.), in which it achieved a recovery totaling more than $1 billion for injured investors, and secured a $294.9 million recovery in *In re Bear Stearns Cos., Inc. Securities, Derivative, & ERISA Litigation*, No. 08-md-1963 (S.D.N.Y.), in which the Firm served as co-lead counsel.  Labaton Sucharow also

12

served as co-lead counsel in *In re Satyam Computer Services Ltd. Securities Litigation*, No. 09-md-2027 (S.D.N.Y.), through which it helped recover from the company and its auditors a total of $150.5 million for class members, and secured a $170 million recovery as co-lead counsel in *In re Fannie Mae 2008 Securities Litigation*, No. 08-cv-7831 (S.D.N.Y.).  Labaton Sucharow presently serves as lead or co-lead counsel in several significant investor class actions.  *See* Labaton Sucharow Firm Resume, Keller Decl., Ex. D.

Thus, the Court may be assured that, by granting Nebraska's motion, the Class will receive the highest caliber of legal representation.

## CONCLUSION

For the foregoing reasons, Nebraska respectfully requests that the Court grant its motion and enter an Order: (i) appointing Nebraska as Lead Plaintiff; (ii) approving Nebraska's selection of Labaton Sucharow as Lead Counsel for the Class; and (iii) granting such other and further relief as the Court may deem just and proper.

DATED:  February 19, 2019                    Respectfully submitted,

*/s/ Christopher J. Keller*

**LABATON SUCHAROW LLP**
Christopher J. Keller
Eric J. Belfi
Francis P. McConville
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile:  (212) 818-0477
ckeller@labaton.com
ebelfi@labaton.com
fmcconville@labaton.com

*Counsel for Nebraska Investment Council and Proposed Lead Counsel for the Class*

13