UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DANIEL PLAUT, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>THE GOLDMAN SACHS GROUP, INC., LLOYD C. BLANKFEIN, HARVEY M. SCHWARTZ, and R. MARTIN CHAVEZ,<br><br>Defendants. | Case No. 1:18-cv-12084-VSB<br><br>Hon. Vernon S. Broderick |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF
SJUNDE AP-FONDEN FOR APPOINTMENT AS LEAD PLAINTIFF
AND APPROVAL OF ITS SELECTION OF COUNSEL**

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ........................................................................................................... 1
II. FACTUAL BACKGROUND.......................................................................................... 3
III. ARGUMENT................................................................................................................... 5
    A. AP7 Satisfies the PSLRA's Requirements and Should Be Appointed Lead Plaintiff ................................................................................................................ 5
        1. AP7 Has Timely Moved for Appointment as Lead Plaintiff.......................6
        2. AP7 Has the Largest Financial Interest in the Relief Sought by the Class ..................................................................................................6
        3. AP7 Satisfies the Requirements of Rule 23 ................................................7
            a. AP7's Claims Are Typical............................................................... 7
            b. AP7 Is Adequate ............................................................................. 8
    C. AP7's Selection of Lead Counsel Should Be Approved ........................................ 9
IV. CONCLUSION.............................................................................................................. 11

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*City of Riviera Beach Gen. Emps. Ret. Sys. v. Macquarie Infrastructure Corp.*,
No. 18-CV-3608 (VSB), 2019 WL 364570
(S.D.N.Y. Jan. 30, 2019) ................................................................................................1, 6, 7, 9

*In re Cohen v. U.S. Dist. Court for the N. Dist. of Cal.*,
586 F.3d 703 (9th Cir. 2009) ..............................................................................................................9

*Glauser v. EVCI Career Colls. Holding Corp.*,
236 F.R.D. 184 (S.D.N.Y. 2006) ..................................................................................................2, 9

**Statutes**

15 U.S.C. § 78u-4(a) ................................................................................................................ *passim*

**Other Authorities**

H.R. Conf. Rep. No. 104-369 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730 ...............................2, 8

Sjunde AP-Fonden ("AP7") respectfully submits this memorandum of law in support of its motion for: (1) appointment as Lead Plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B); and (2) approval of its selection of Kessler Topaz Meltzer & Check, LLP ("Kessler Topaz") as Lead Counsel for the class and Bernstein Litowitz Berger & Grossmann LLP ("Bernstein Litowitz") as Liaison Counsel for the class.

## I. INTRODUCTION

Presently pending in this District is the above-captioned securities class action (the "Action") brought under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b) and 15 U.S.C. § 78t(a), against The Goldman Sachs Group, Inc. ("Goldman Sachs" or the "Company") and certain of its executive officers (collectively, "Defendants"). The Action is brought on behalf of all persons who purchased Goldman Sachs securities between February 28, 2014, and December 17, 2018, inclusive (the "Class Period").

The PSLRA governs the selection of the lead plaintiff in class actions asserting claims under the federal securities laws and requires a court to appoint as lead plaintiff the movant that: (1) makes a timely motion under the PSLRA's sixty-day deadline; (2) asserts the largest financial interest in the litigation; and (3) also satisfies the relevant requirements of Federal Rule of Civil Procedure 23 ("Rule 23"). *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii); *City of Riviera Beach Gen. Emps. Ret. Sys. v. Macquarie Infrastructure Corp.*, No. 18-CV-3608 (VSB), 2019 WL 364570, at *3 (S.D.N.Y. Jan. 30, 2019) (Broderick, J.) (discussing the PSLRA's process for selecting a lead plaintiff).

Here, AP7 respectfully submits that it is the presumptive "most adequate plaintiff" under the PSLRA and should be appointed as Lead Plaintiff. AP7's motion is timely, and its losses of approximately $2,921,947 under a last-in, first-out ("LIFO") analysis in connection with its

transactions in Goldman Sachs securities during the Class Period represent the largest known financial interest in the relief sought by the class.  *See* Declaration of Gerald H. Silk in Support of the Motion of Sjunde AP-Fonden for Appointment as Lead Plaintiff and Approval of Its Selection of Counsel ("Silk Decl."), Exs. A & B.  In addition to asserting the largest financial interest, AP7 satisfies the relevant requirements of Rule 23 because its claims are typical of all members of the class and because it will fairly and adequately represent the class.  *See infra* Section III.A.

Moreover, as an institutional investor with more than $50 billion in assets under management and substantial experience serving as a lead plaintiff in this District and across the United States, AP7 is the prototypical lead plaintiff envisioned by Congress to serve as lead plaintiff under the PSLRA, and its appointment would therefore fulfill this critical legislative purpose.  *See* H.R. Conf. Rep. No. 104-369, at 34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733 (explaining that "increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions"); *Glauser v. EVCI Career Colls. Holding Corp.*, 236 F.R.D. 184, 188 (S.D.N.Y. 2006) (McMahon, J.) ("[T]he PSLRA was passed, at least in part, to increase the likelihood that institutional investors would serve as lead plaintiffs in actions such as this one.").[1]

Finally, AP7 has retained experienced and competent counsel to represent the class.  Accordingly, AP7 respectfully requests that its selection of Kessler Topaz as Lead Counsel for the class be approved.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(v) ("The most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class.").

---

[1] Unless otherwise indicated, all emphasis is added and all internal quotation marks and citations are omitted.

## II. FACTUAL BACKGROUND

Goldman Sachs, a Delaware corporation headquartered in New York, operates as a global investment banking and investment management firm that provides financial services to corporations, financial institutions, governments and individuals. Goldman Sachs's shares trade on the New York Stock Exchange under the ticker symbol "GS."

Goldman Sachs operates worldwide, including in Malaysia where it raised funds for 1Malaysia Development Bhd. ("1MDB"), a Malaysian state-owned investment fund formed to finance infrastructure and economic deals after Najib Razak ("Razak") became Prime Minister. In 2012, officials from 1MDB met with Goldman Sachs to discuss a bond deal, and Goldman Sachs subsequently raised $6.5 billion for 1MDB, earning approximately $600 million in fees. In 2015, after $11 billion in payments owed went missing, 1MDB became the target of international criminal and regulatory investigations for fraud and money laundering. *The Wall Street Journal* published as series of articles in June and July 2015 reporting that 1MDB indirectly funded Razak's 2013 election campaign and that investigators traced nearly $700 million to what they believed to be Razak's personal bank accounts. According to the U.S. Department of Justice in a document unsealed in 2018, between 2009 and 2014, 1MDB officials and others misappropriated approximately $4.5 billion from 1MDB.

As alleged in the Action, Defendants made materially false and/or misleading statements and failed to disclose material adverse facts regarding the Company's business, operations and financial results during the Class Period. Specifically, Defendants misrepresented and/or failed to disclose that: (1) Goldman Sachs colluded in a fraud and money-laundering scheme with 1MDB; (2) when revealed, the scheme would foreseeably subject Goldman Sachs to heightened regulatory investigation and enforcement; and (3) as a result, Goldman Sachs's public statements during the Class Period were materially false and misleading at all relevant times. On March 7,

3

2016, *Bloomberg News* reported that the U.S. Justice Department had subpoenaed former Goldman managing director Tim Leissner ("Leissner") in February 2016 in connection with the 1MDB probe. On this news, Goldman Sachs's stock price fell $3.75 per share, or 2.41%, to close at $151.60 on March 8, 2016.

As alleged in the Action, on November 1, 2018, U.S. federal prosecutors unsealed indictments against Leissner and Ng Chong Hwa, also known as Roger Ng ("Ng"), another former Goldman managing director, related to the 1MDB probe and described them as "agents acting within the scope of their employment on behalf of" the Company "with the intent, at least in part, to benefit" Goldman Sachs. Leissner pled guilty and agreed to forfeit $43.7 million. The Action further alleges that on November 8, 2018, *Bloomberg News* reported that Goldman Sachs's then-Chief Executive Officer ("CEO"), Lloyd Blankfein, "was the unidentified high-ranking Goldman Sachs executive referenced in U.S. court documents who attended a 2009 meeting with the former Malaysian prime minister," and that "[t]he meeting was arranged with the help of men who are now tied to the subsequent plundering of the 1MDB fund[.]" As alleged in the Action, Goldman Sachs's stock price fell by $9.00 per share, or nearly 4%, to close at $222.65 on November 9, 2018 in response to this news.

The Action further alleges that Malaysian officials stated on November 12, 2018 that "[o]bviously we have been cheated through the compliance by Goldman Sachs people" and that the country would seek a "full refund" of the approximately $600 million in fees Goldman Sachs earned on the 1MDB bond deal. On this news, Goldman Sachs's stock price fell $16.60 per share, or nearly 7.5%, to close at $206.05 on November 12, 2018. Thereafter, on December 17, 2018, the media reported that Malaysia filed criminal charges against Goldman Sachs and two former executives for their role in the 1MDB fraud and money-laundering scandal. On this

news, Goldman Sachs's stock price fell $4.76 per share, or 2.76%, to close at $168.01 on December 17, 2018.

## III. ARGUMENT

### A. AP7 Satisfies the PSLRA's Requirements and Should Be Appointed Lead Plaintiff

The PSLRA establishes the procedure for selecting a lead plaintiff in a class action lawsuit asserting claims under the federal securities laws. *See* 15 U.S.C. § 78u-4(a)(1)-(3)(B)(i).

First, a plaintiff who files the initial action must publish a notice to the class within twenty days of filing the action informing class members of: (1) the pendency of the action; (2) the claims asserted therein; (3) the purported class period; and (4) the right to move the court to be appointed as lead plaintiff within sixty days of the publication of the notice. *See id*. § 78u-4(a)(3)(A)(i)(I)-(II). Within sixty days after publication of the notice, any member of the proposed class may apply to the court to be appointed as lead plaintiff, whether or not they have previously filed a complaint in the action. *See id*. § 78u-4(a)(3)(A)-(B).

Second, the PSLRA provides that within ninety days after publication of the notice, the court shall consider any motion made by a class member and shall appoint as lead plaintiff the member of the class that the court determines to be most capable of adequately representing the interests of class members. *See id*. § 78u-4(a)(3)(B). In determining the "most adequate plaintiff," the PSLRA provides that the court shall adopt a presumption that the most adequate plaintiff in any private action arising under the PSLRA is the person that:

> (aa) has either filed the complaint or made a motion in response to a notice . . . ;
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

*Id*. § 78u-4(a)(3)(B)(iii)(I).

Here, AP7 is the "most adequate plaintiff" because it: (1) timely moved for appointment as Lead Plaintiff; (2) possesses the "largest financial interest in the relief sought by the class"; and (3) "otherwise satisfies the requirements of Rule 23" for purposes of this motion. *Id*.; *see also City of Riviera Beach Gen. Emps. Ret. Sys.*, 2019 WL 364570, at *3.

### 1. AP7 Has Timely Moved for Appointment as Lead Plaintiff

The PSLRA allows members of the class to move for appointment as lead plaintiff within sixty days of the publication of notice that the first action has been filed. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i)(II). Here, the Action was filed in this District on December 20, 2018, and notice was published the same day in *Globe Newswire*. *See* Silk Decl., Ex. C. Thus, February 19, 2019, is the deadline for class members to seek appointment as Lead Plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(A)(II). Accordingly, AP7 has timely moved this Court for appointment as Lead Plaintiff.

### 2. AP7 Has the Largest Financial Interest in the Relief Sought by the Class

The PSLRA instructs the Court to adopt a rebuttable presumption that the "most adequate plaintiff" is the movant with the "largest financial interest in the relief sought by the class" who "otherwise satisfies the requirements of Rule 23." *Id*. § 78u-4(a)(3)(B)(iii)(I). Here, AP7 suffered substantial losses of approximately $2,921,947 on a LIFO basis in connection with its transactions in Goldman Sachs securities during the Class Period. *See* Silk Decl., Exs. A & B. In addition, AP7 purchased 179,082 total shares of Goldman Sachs common stock during the Class Period, retaining 100,069 of those shares through the end of the Class Period on a net basis, at a net cost of $21,375,937. *See id.* To the best of AP7's knowledge, there are no other

applicants seeking Lead Plaintiff appointment that have a larger financial interest in this litigation.

### 3.  AP7 Satisfies the Requirements of Rule 23

In addition to possessing the largest financial interest in the relief sought by the class, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure" in order to trigger the presumption of adequacy. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc).

Rule 23 provides that a party may serve as a class representative if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

At the lead plaintiff selection stage of litigation, a movant must make only "a preliminary showing that it satisfies the typicality and adequacy requirements of Rule 23." *City of Riviera Beach Gen. Emps. Ret. Sys.*, 2019 WL 364570, at *4.

### a.  AP7's Claims Are Typical

The typicality requirement is satisfied when "the claims of the proposed lead plaintiff arise from the same conduct from which the other class members' claims and injuries arise." *Id.* AP7 satisfies the typicality requirement because, just like all other proposed class members, it seeks recovery for losses incurred as a result of Defendants' misrepresentations and omissions that resulted in subsequent declines in the price of Goldman Sachs securities. Thus, AP7's claims arise from the same conduct as those of the other class members and AP7 is typical. *See id.* at *4, 6.

### b.     AP7 Is Adequate

The adequacy element of Rule 23 is satisfied where the Lead Plaintiff can "fairly and adequately protect the interests of the class." *Id.* at *6. "In order for the class' interests to be fairly and adequately represented, the lead plaintiff must not have interests that are antagonistic to the class, must have a sufficient interest in the outcome of the case to ensure vigorous advocacy, and must retain counsel that is qualified to represent the interests of the class." *Id.*

Here, AP7 satisfies the adequacy requirement because its interest in vigorously pursuing claims against Defendants—given its substantial financial losses—is aligned with the interests of the members of the class who were similarly harmed as a result of Defendants' false and misleading statements. There is no potential conflict between AP7's interests and those of the other members of the class, and AP7 is fully committed to vigorously pursuing claims on behalf of the class. Moreover, as set forth in AP7's PSLRA certification, AP7 has affirmatively demonstrated its willingness to pursue this Action for the benefit of the class. *See* Silk Decl., Ex. A.

AP7 has further demonstrated its adequacy through its selection of Kessler Topaz as Lead Counsel for the class. As discussed more fully below, Kessler Topaz is highly qualified and experienced in the area of securities class action litigation and has repeatedly demonstrated its capability to conduct complex securities class action litigation in an efficient, effective, and professional manner.

In addition to satisfying the typicality and adequacy requirements of Rule 23, AP7—as a sophisticated institutional investor with more than $50 billion in assets under management—is also the prototypical investor Congress sought to encourage to lead securities class actions. *See* H.R. Conf. Rep. No. 104-369, at 34, *reprinted in* 1995 U.S.C.C.A.N. at 733 ("The Conference Committee believes that increasing the role of institutional investors in class actions will

ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions."); *Glauser*, 236 F.R.D. at 188 ("[T]he PSLRA was passed, at least in part, to increase the likelihood that institutional investors would serve as lead plaintiffs in actions such as this one."); *City of Riviera Beach Gen. Emps. Ret. Sys.*, 2019 WL 364570, at *6 (same).

Moreover, AP7 has significant prior experience serving as a lead plaintiff under the PSLRA and has recovered millions of dollars for investors.  *See In re JPMorgan Chase & Co. Sec. Litig.*, No. 1:12-cv-03852-GBD (S.D.N.Y.) ($150 million recovery); *United Union of Roofers, Waterproofers & Allied Workers Local Union No. 8 v. Ocwen Fin. Corp., et al.*, No. 9:14-cv-81057 (S.D. Fla.) ($56 million recovery); *Lou. Mun. Police Emps.' Ret. Sys. v. Green Mountain Coffee Roasters, Inc., et al.*, No. 2:11-cv-00289-WKS (D. Vt.) ($36.5 million recovery); *In re Johnson & Johnson Sec. Litig.*, No. 3:10-cv-04841 (D.N.J.) ($23 million recovery).

> **C.     AP7's Selection of Lead Counsel Should Be Approved**

The PSLRA vests authority in the lead plaintiff to select and retain counsel, subject to the Court's approval.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); *In re Cohen v. U.S. Dist. Court for the N. Dist. of Cal.*, 586 F.3d 703, 712 (9th Cir. 2009) ("if the lead plaintiff has made a reasonable choice of counsel, the district court should generally defer to that choice").  Here, AP7 has selected and retained Kessler Topaz to serve as Lead Counsel for the class.  AP7's selection of counsel should be approved.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); *City of Riviera Beach Gen. Emps. Ret. Sys.*, 2019 WL 364570, at *8 ("There is a strong presumption in favor of approving a properly-selected lead plaintiff's decision as to counsel selection.")

Kessler Topaz specializes in prosecuting complex class action litigation and is one of the leading law firms in its field.  *See* Silk Decl., Ex. D.  The firm is actively engaged in complex litigation and has successfully prosecuted numerous securities fraud class actions on behalf of

9

injured investors, including: *In re Tyco International, Ltd. Securities Litigation*, No. 02-md-1335 (PB) (D.N.H.) ($3.2 billion recovery); *In re Bank of America Corp. Securities, Derivative, and Employee Retirement Income Security Act (ERISA) Litigation*, No. 09-md-2058 (PKC) (S.D.N.Y.) ($2.425 billion recovery); *In re Wachovia Preferred Securities and Bond/Notes Litigation*, No. 09-cv-6351 (RJS) (S.D.N.Y.) ($627 million recovery); and *In re Lehman Bros. Equity/Debt Securities Litigation*, No. 08-cv-5523 (LAK) (S.D.N.Y.) ($615 million recovery). Additionally, Kessler Topaz is currently serving as lead or co-lead counsel in several high profile securities class actions, including: *Sjunde AP-Fonden v. General Electric Co.*, No. 17-cv-8457 (JMF) (S.D.N.Y.); *Baker v. SeaWorld Entertainment, Inc.*, No. 14-cv-2129 (MMA) (AGS) (S.D. Cal.); *In re Allergan Generic Drug Pricing Securities Litigation*, No. 16-cv-9449 (KSH) (CLW) (D.N.J.); and *Washtenaw County Employees' Retirement System v. Walgreen Co.*, No. 15-cv-03187 (SJC) (N.D. Ill.).

Kessler Topaz's commitment to zealous representation is also evident from its trial experience under the PSLRA.  Specifically, the firm obtained a rare jury verdict in the class's favor after a week-long trial held in 2014 in *In re Longtop Financial Technologies Ltd. Securities Litigation*, No. 11-cv-3658 (SAS) (S.D.N.Y.)—which at the time was one of just thirteen securities class actions to reach a verdict since enactment of the PSLRA in 1995 (based on post-enactment conduct).  The firm also obtained the largest damage award in Delaware Chancery Court history following a trial before Chancellor Leo E. Strine, Jr.  *See In re S. Peru Copper Corp. S'holder Derivative Litig.*, No. 961-CS (Del. Ch.), *aff'd Americas Mining Corp. v. Theriault*, 51 A.3d 1213, 1262-63 (Del. 2012) (affirming final judgment, with interest, of $2 billion).

Additionally, AP7 has selected Bernstein Litowitz to serve as Liaison Counsel for the class. Bernstein Litowitz, with offices in New York City, has extensive experience in the area of securities and complex litigation and is highly qualified to perform the duties of Liaison Counsel. *See* Silk Decl., Ex E.

Thus, the Court may be assured that in the event this motion is granted, the members of the class will receive the highest caliber of legal representation available from these firms. Both firms are highly qualified and will zealously represent the class's interests. Accordingly, AP7's selection of Lead and Liaison Counsel should be approved.

## IV.  CONCLUSION

For the reasons stated herein, AP7 respectfully requests that the Court: (1) appoint AP7 as Lead Plaintiff; (2) approve its selection of Kessler Topaz and Bernstein Litowitz as Lead and Liaison Counsel, respectively, for the class; and (3) grant such other relief as the Court may deem just and proper.

DATED: February 19, 2019               Respectfully submitted,

**BERNSTEIN LITOWITZ BERGER
  & GROSSMANN LLP**

*S/ Gerald H. Silk*
Gerald H. Silk
Michael D. Blatchley
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
jerry@blbglaw.com
michaelb@blbglaw.com

*Proposed Liaison Counsel for the Class*

**KESSLER TOPAZ
  MELTZER & CHECK, LLP**
Naumon A. Amjed
Darren J. Check

        Ryan T. Degnan
        Melissa L. Troutner
        280 King of Prussia Road
        Radnor, PA 19087
        Telephone: (610) 667-7706
        Facsimile: (610) 667-7056
        namjed@ktmc.com
        dcheck@ktmc.com
        rdegnan@ktmc.com
        mtroutner@ktmc.com

        *Counsel for Sjunde AP-Fonden and*
        *Proposed Lead Counsel for the Class*