UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DANIEL PLAUT, Individually and on Behalf of All Others Similarly Situated,<br><br>                            Plaintiff,<br><br>     v.<br><br>THE GOLDMAN SACHS GROUP, INC., LLOYD C. BLANKFEIN, HARVEY M. SCHWARTZ, and R. MARTIN CHAVEZ,<br><br>                            Defendants. | Case No.  1:18-cv-12084-VSB |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF MEITAV DASH PROVIDENT FUNDS AND PENSION LTD. FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1
STATEMENT OF FACTS ........................................................................................................... 3
ARGUMENT .................................................................................................................................. 7
    I.    MEITAV SHOULD BE APPOINTED LEAD PLAINTIFF .................................. 7
           A.    Meitav is willing to serve as a Class Representative and has timely filed this motion to be appointed Lead Plaintiff. .................................................. 8
           B.    Meitav has the "largest financial interest" in the Action. ........................... 8
           C.    Meitav otherwise satisfies the Requirements of Rule 23. ........................... 9
    II.    LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED ............................................................................................................ 12
CONCLUSION ............................................................................................................................ 13

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aude v. Kobe Steel, Ltd.*, 17-CV-10085,
   2018 U.S. Dist. LEXIS 57591 (S.D.N.Y. Apr. 4, 2018) ..................................................... 9, 10

*Bishop v. N.Y. City Dep't of Hous. Pres. & Dev.*,
   141 F.R.D. 229 (2d Cir. 1992) ................................................................................................. 10

*Chahal v. Credit Suisse Grp. AG*, 18-CV-2268 *et al.*,
   2018 U.S. Dist. LEXIS 104185 (S.D.N.Y. June 21, 2018) .......................................................... 9

*Dookeran v. Xunlei Ltd.*, 18-cv-467 (RJS) *et al.*,
   2018 U.S. Dist. LEXIS 62575 (S.D.N.Y. Apr. 12, 2018) .......................................................... 11

*Foley v. Transocean Ltd.*,
   272 F.R.D. 126 (S.D.N.Y. 2011) ............................................................................................. 11

*Glauser v. EVCI Career Colleges Holding Corp.*,
   236 F.R.D. 184 (S.D.N.Y. 2006) ......................................................................................... 2, 12

*In re Braskem S.A. Sec. Litig.*, 15 Civ. 5132 (PAE) *et al.*,
   2015 U.S. Dist. LEXIS 119183 (S.D.N.Y. Sept. 8, 2015) ......................................................... 12

*In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG) (RER),
   2007 U.S. Dist. LEXIS 14878 (E.D.N.Y. Mar. 2, 2007) ............................................................ 9

*In re Doral Fin. Corp. Sec. Litig.*,
   414 F. Supp. 2d 398 (S.D.N.Y. 2006) ..................................................................................... 12

*In re Drexel Burnham Lambert Grp., Inc.*,
   960 F.2d 285 (2d Cir. 1992) ..................................................................................................... 10

*In re Olsten Corp. Sec. Litig.*,
   3 F. Supp. 2d 286 (E.D.N.Y. 1998) ........................................................................................... 9

*In re Orion Secs. Litig.*, 08 Civ. 1328 (RJS),
   2008 U.S. Dist. LEXIS 55368 (S.D.N.Y. July 7, 2008) ............................................................ 10

*In re Oxford Health Plans, Inc. Sec. Litig.*,
   182 F.R.D. 42 (S.D.N.Y. 1998) ................................................................................................ 10

*In re Veeco Instruments, Inc.*,
   233 F.R.D. 330 (S.D.N.Y. 2005) ......................................................................................... 2, 12

*Janbay v. Canadian Solar, Inc.*,
   272 F.R.D. 113 (S.D.N.Y. 2010) ..................................................................................10

*Kaplan v. Gelfond*,
   240 F.R.D. 88 (S.D.N.Y. 2007) ......................................................................................9

*Kaplan v. S.A.C. Capital Advisors, L.P.*,
   311 F.R.D. 373 (S.D.N.Y. 2015) ..................................................................................12

*Lax v. First Merchants Acceptance Corp.*, Nos. 97 C 2715 *et al.*,
   1997 U.S. Dist. LEXIS 11866 (N.D. Ill. Aug. 6, 1997)...........................................8, 9

*Micholle v. Ophthotech Corp.*, 17-CV-210 (VSB) *et al.*,
   2018 U.S. Dist. LEXIS 41120 (S.D.N.Y. Mar. 13, 2018) ....................................3, 12

*Nurlybaev v. ZTO Express (Cayman) Inc.*, 17-CV-06130 (LTS)(SN),
   2017 U.S. Dist. LEXIS 187238 (S.D.N.Y. Nov. 13, 2017) .........................................9

*Pirelli Armstrong Tire Corp. v. LaBranche & Co., Inc.*,
   229 F.R.D. 395 (S.D.N.Y. 2004) ....................................................................................9

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
   589 F. Supp. 2d 388 (S.D.N.Y. 2008).........................................................................12

## **Statutes**

15 U.S.C. § 78u-4(a)(3)(B) ...................................................................................... *passim*

15 U.S.C. §§78j(b), 78t(a) .............................................................................................1, 8

Foreign Corrupt Practices Act ......................................................................................5, 6

Private Securities Litigation Reform Act of 1995 ....................................................1, 10

## **Rules**

Fed. R. Civ. P. 23.................................................................................................... *passim*

Meitav Dash Provident Funds and Pension Ltd. ("Meitav") respectfully submits this Memorandum of Law in support of its motion, pursuant to Section 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), for an Order: (1) appointing Meitav as Lead Plaintiff on behalf of all persons who purchased or otherwise acquired the securities of The Goldman Sachs Group, Inc. ("Goldman Sachs") between February 28, 2014, and November 9, 2018, both dates inclusive (the "Class Period"); and (2) approving proposed Lead Plaintiff's selection of Pomerantz LLP ("Pomerantz") as Lead Counsel for the Class.

## PRELIMINARY STATEMENT

It is critically important that a sophisticated institutional investor oversee the litigation of this action by experienced legal counsel. The complaint in this action alleges a very significant fraud perpetrated on the investors in Goldman Sachs during the Class Period, arising from the Company's participation in a fraud and money-laundering scheme in collusion with 1Malaysia Development Bhd. ("1MDB"), a Malaysian state-owned investment fund. *See generally* Dkt. No. 1 (the "Complaint"). The ability of Goldman Sachs investors to recover their losses arising from the alleged fraud rests up on the Court's appointment of the most qualified Lead Plaintiff and Lead Counsel pursuant to the procedure set forth in the PSLRA. Meitav is the best choice to serve as Lead Plaintiff. Its chosen counsel, Pomerantz, will devote the resources and expertise necessary to zealously prosecute this litigation, and is thus the best candidate to serve as Lead Counsel.

During the Class Period, Goldman Sachs and certain of its officers (collectively, "Defendants") allegedly defrauded investors, in violation of Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b), 78t(a)), and U.S. Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5), by misrepresenting

1

Goldman Sachs' business and operations. Goldman Sachs investors, including Meitav, incurred significant losses resulting from the false and misleading statements made by Defendants, concealing their participation in a fraud and money-laundering scheme in collusion. *See* Complaint.

Pursuant to the PSLRA, the Court is to appoint as lead plaintiff the movant that possesses the largest financial interest in the outcome of the action and that satisfies the requirements of Fed. R. Civ. P. 23. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). Meitav, an institutional investor that incurred losses of $3,193,833 calculated on a first-in, first-out ("FIFO") basis and $3,143,586 calculated on a last-in, first-out ("LIFO") basis in connection with its Class Period purchases of Company securities, believes that it has the largest financial interest in the relief sought in this action.

Beyond its considerable financial interest, Meitav also meets the applicable requirements of Rule 23 because its claims are typical of absent class members and it will fairly and adequately represent the interests of the Class. As a sophisticated institutional investor, Meitav is a paradigmatic lead plaintiff under the PSLRA, and its appointment would advance the legislative purpose of "increasing the role of institutional investors in class actions" in order to "benefit shareholders and assist courts by improving the quality of representation in securities class actions." H.R. Conf. Rep. No. 104-369, at *34 (1995), *reprinted in* U.S.C.C.A.N. 730, 733. For this reason, courts in the Second Circuit strongly prefer appointment of institutional investors to lead complex securities class actions. *See, e.g.*, *Glauser v. EVCI Career Colleges Holding Corp.*, 236 F.R.D. 184, 188 (S.D.N.Y. 2006) ("[T]he PSLRA was passed, at least in part, to increase the likelihood that institutional investors would serve as lead plaintiffs in actions such as this one.") (quoting *In re Veeco Instruments, Inc.*, 233 F.R.D. 330, 332-33 (S.D.N.Y. 2005));

2

*Micholle v. Ophthotech Corp.*, 17-CV-210 (VSB) *et al.*, 2018 U.S. Dist. LEXIS 41120, at *17 (S.D.N.Y. Mar. 13, 2018) ("[C]ourts have a preference for appointing institutional investors as lead plaintiffs.").

In order to fulfill its responsibilities as lead plaintiff and vigorously prosecute this action on behalf of the Class, Meitav has selected Pomerantz as Lead Counsel for the Class.  Pomerantz is a nationally-recognized securities class action firm that has recovered billions of dollars on behalf of defrauded investors, and recently secured a recovery of $3 billion on behalf of investors in the securities of Petrobras, the fifth largest class action settlement ever achieved in the United States.  Based in New York, Pomerantz has offices in Chicago, Los Angeles, and Paris, France.

Accordingly, based on its very significant financial interest, and its commitment as a sophisticated institutional investor to overseeing this litigation, Meitav respectfully requests that the Court enter an order appointing it as Lead Plaintiff and approving its selection of Lead Counsel.

## STATEMENT OF FACTS

Goldman Sachs was founded in 1869 and is headquartered in New York, New York. The Company operates as investment banking, securities, and investment management company worldwide, serving corporations, financial institutions, governments, and high-net-worth individuals.  Complaint, ¶ 2.

According to 2016 data compiled by Bloomberg, Goldman Sachs has "worked on $18.8 billion of Malaysian mergers and acquisitions over the past five years, making it the top foreign adviser with a 20.5[%] market share."  *Id.* at ¶ 3. Goldman Sachs's business in Malaysia included, *inter alia*, raising funds for 1MDB, a Malaysian state-owned investment fund set up in 2009, four months after Najib Razak ("Razak") became Prime Minister of Malaysia.  1MDB was initially established to finance infrastructure and economic deals in Malaysia.  *Id.*

In 2012, officials from 1MDB met with Goldman Sachs in Hong Kong to discuss a bond deal. Goldman Sachs subsequently raised $6.5 billion for 1MDB, earning approximately $600 million in fees. *Id.* at ¶ 4.

Since early 2015, 1MDB has been the subject of international criminal and regulatory investigations for suspected fraud and money laundering after missing $11 billion in payments owed to banks and bondholders. *Id.* at ¶ 5. On June 18, 2015, *The Wall Street Journal* published an article entitled "Fund Controversy Threatens Malaysia's Leader," detailing how 1MDB indirectly funded Razak's 2013 election campaign. A probe into 1MDB followed. *Id.* at ¶ 6.

On July 2, 2015, *The Wall Street Journal* published another article, entitled "Investigators Believe Money Flowed to Malaysian Leader Najib's Accounts Amid 1MDB Probe," reporting how Malaysian investigators traced nearly $700 million in deposits to what they believed to be Razak's personal bank accounts. *Id.* at ¶ 7.

According to the U.S. Department of Justice, high-level 1MDB officials and their associates misappropriated an estimated $4.5 billion from 1MDB between 2009 and 2014. *Id.* at ¶ 7. Implicated in the 1MDB scandal were two former Goldman Sachs managing directors—Tim Leissner ("Leissner") and Ng Chong Hwa, also known as Roger Ng ("Ng"). *Id.* at ¶ 8. Leissner was Chairman of South East Asia and Vice Chairman of the Investment Banking Division in Asia Ex-Japan (*i.e.*, Asia, excluding Japan) for Goldman Sachs. *Id.* at ¶ 9. Ng was a former Goldman Sachs banker, managing director, and deputy to Leissner. *Id.* at ¶ 10. Ng most recently was the head of South-East Asian sales in Goldman Sachs's fixed-income, currencies, and commodities unit. *Id.*

Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Goldman Sachs participated in a fraud and money-laundering scheme in collusion with 1MDB; (ii) the foregoing conduct, when revealed, would foreseeably subject Goldman Sachs to heightened regulatory investigation and enforcement; and (iii) as a result, Goldman Sachs's public statements were materially false and misleading at all relevant times. *Id.* at ¶ 11.

On March 7, 2016, *Bloomberg News* published an article entitled "Ex-Goldman Banker to Malaysia Fund Said Subpoenaed in U.S. Probe," reporting that the U.S. Justice Department had subpoenaed Leissner in late February in connection with a probe linked to 1MDB. *Id.* at ¶ 12. Goldman Sachs has since been the subject of investigations by the U.S. Justice Department regarding the multibillion-dollar fraud and money-laundering scheme involving 1MDB, for which Goldman Sachs was the primary bond underwriter. *Id.* Following this news, Goldman Sachs's stock price fell $3.75 per share, or 2.41%, to close at $151.60 on March 8, 2016. *Id.* at ¶ 13.

On November 1, 2018, U.S. federal prosecutors in the Eastern District of New York ("E.D.N.Y.") unsealed indictments against Leissner and Ng related to the 1MDB probe, explicitly describing them as "agents acting within the scope of their employment on behalf of" the Company "with the intent, at least in part, to benefit" Goldman Sachs. *Id.* at ¶ 14. That same day, the United States Attorney's Office for the E.D.N.Y. announced that Leissner's guilty plea was unsealed for "a two-count criminal information charging Leissner with conspiring to launder money and conspiring to violate the FCPA [Foreign Corrupt Practices Act] by both paying bribes to various Malaysian and Abu Dhabi officials and circumventing the internal

accounting controls of the Financial Institution while he was employed by it." *Id.* The U.S. Attorney's Office also stated that, "[a]ccording to court filings, Leissner has been ordered to forfeit $43,700,000 as a result of his crimes." *Id.*

On November 8, 2018, a report by *Bloomberg News* detailed the personal involvement of Goldman Sachs's then-Chief Executive Officer ("CEO"), Lloyd Blankfein, in a meeting to establish ties with Malaysia and its new sovereign wealth fund that was referenced in the court documents unsealed the prior week. *Id.* at ¶ 15. In a November 8, 2018 article entitled "Goldman's Blankfein Said to Have Attended 2009 1MDB Meeting," *Bloomberg News* noted that "Blankfein was the unidentified high-ranking Goldman Sachs executive referenced in U.S. court documents who attended a 2009 meeting with the former Malaysian prime minister," and that "[t]he meeting was arranged with the help of men who are now tied to the subsequent plundering of the 1MDB fund[.]" *Id.* On this news, Goldman Sachs's stock price fell by $9.00, or nearly 4%, closing at $222.65 on November 9, 2018. *Id.* at ¶ 16.

On November 12, 2018, Malaysian government officials denounced Goldman Sachs's role in the 1MDB scandal. *Id.* at ¶ 17. Malaysian Prime Minister Mahathir Mohamad stated that "[t]here is evidence that Goldman Sachs has done things that are wrong" and "[o]bviously we have been cheated through the compliance by Goldman Sachs people." *Id.* Meanwhile, the country's Finance Minister Lim Guan Eng said that Malaysia would seek a "full refund" of the approximately $600 million in fees that the Company earned in connection with 1MDB's $6.5 billion bond deal. *Id.*

Following this news, Goldman Sachs's stock price fell $16.60 per share, or nearly 7.5%, to close at $206.05 on November 12, 2018. *Id.* at ¶ 18.

6

As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.  *Id.* at ¶ 19.

## ARGUMENT

### I. MEITAV SHOULD BE APPOINTED LEAD PLAINTIFF

Meitav should be appointed Lead Plaintiff because, to its knowledge, Meitav has the largest financial interest in the Action and otherwise strongly satisfies the requirements of Rule 23.  The PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to a published notice of the class action and to do so by the later of (i) 90 days after the date of publication, or (ii) as soon as practicable after the Court decides any pending motion to consolidate.  15 U.S.C. § 78u-4(a)(3)(B)(i) & (ii).

Further, under 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I), the Court is directed to consider all motions by plaintiffs or purported class members to appoint lead plaintiff filed in response to any such notice.  Specifically, the Court "shall" appoint the presumptively "most adequate plaintiff" to serve as lead plaintiff and shall presume that plaintiff is the person or group of persons, that:

> (aa) has either filed the complaint or made a motion in response to a notice . . .;
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

As set forth below, Meitav satisfies all three of these criteria and thus is entitled to the presumption that it is the most adequate plaintiff of the Class and, therefore, should be appointed Lead Plaintiff for the Class.

7

### A. Meitav is willing to serve as a Class Representative and has timely filed this motion to be appointed Lead Plaintiff.

On December 21, 2018, counsel for the plaintiff in the above captioned action caused a notice to be published over *Globe Newswire* pursuant to Section 21D(a)(3)(A)(i) of the PSLRA, which announced that litigation had been filed against Defendants and which advised investors in Goldman Sachs securities that they had until February 19, 2019, to file a motion to be appointed as lead plaintiff. *See* Declaration of Jeremy A. Lieberman in Support of Motion ("Lieberman Decl."), Ex. A. Meitav has timely filed the instant motion pursuant to the Notice, and has attached a sworn Certification attesting that Meitav is willing to serve as a representative for the Class and to provide testimony at deposition and trial, if necessary. *See id.*, Ex. B. Accordingly, Meitav satisfies the first requirement to serve as Lead Plaintiff of the Class.

Meitav is, in every respect, exactly the sort of well-managed, sophisticated institutional investor that Congress intended to fulfill the lead plaintiff role created by the PSLRA. Meitav is an affiliate of Meitav Dash, a leading investment management firm in Israel with approximately $32 billion under management.

### B. Meitav has the "largest financial interest" in the Action.

The PSLRA requires a court to adopt a presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii). To the best of its knowledge, Meitav has the largest financial interest of any Goldman Sachs investor seeking to serve as Lead Plaintiff. For claims arising under Exchange Act §10(b), courts frequently assess financial interest based upon the four factors articulated in the seminal case *Lax v. First Merchants Acceptance Corp.*: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the

8

approximate losses suffered. Nos. 97 C 2715 *et al.*, 1997 U.S. Dist. LEXIS 11866, at *17 (N.D. Ill. Aug. 6, 1997). In accord with other courts nationwide, these *Lax* factors have been adopted and routinely applied by courts in the Second Circuit. *See*, *e.g.*, *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998); *accord In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG) (RER), 2007 U.S. Dist. LEXIS 14878, at *22-*25 (E.D.N.Y. Mar. 2, 2007); *Chahal v. Credit Suisse Grp. AG*, 18-CV-2268 *et al.*, 2018 U.S. Dist. LEXIS 104185, at *12 (S.D.N.Y. June 21, 2018); *Nurlybaev v. ZTO Express (Cayman) Inc.*, 17-CV-06130 (LTS)(SN), 2017 U.S. Dist. LEXIS 187238, at *3 (S.D.N.Y. Nov. 13, 2017); *Pirelli Armstrong Tire Corp. v. LaBranche & Co., Inc.*, 229 F.R.D. 395, 404-05 (S.D.N.Y. 2004).

During the Class Period, Meitav (1) 119,596 shares of Goldman Sachs common stock and Goldman Sachs bonds in the principal amount of $2,916,000; (2) expended $28,576,979 on its purchases of Goldman Sachs securities; (3) retained 110,379 shares of Goldman Sachs common stock and Goldman Sachs bonds in the principal amount of $860,000; and (4) as a result of the disclosures of the fraud, suffered a loss of $3,193,833 calculated on a FIFO basis and $3,143,586 calculated on a LIFO basis in connection with its purchases of Goldman Sachs securities. *See* Lieberman Decl., Ex. C. To the extent that Meitav possesses the largest financial interest in the outcome of this litigation, it is the presumptive "most adequate" plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

### C. Meitav otherwise satisfies the Requirements of Rule 23.

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, a lead plaintiff must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure."

At this stage of the litigation, only a *prima facie* showing of typicality and adequacy is required. *Kaplan v. Gelfond*, 240 F.R.D. 88, 94 (S.D.N.Y. 2007); *Aude v. Kobe Steel, Ltd.*, 17-

9

CV-10085, 2018 U.S. Dist. LEXIS 57591, at *8 (S.D.N.Y. Apr. 4, 2018). In making its determination that a lead plaintiff satisfies the requirements of Rule 23, the Court need not raise its inquiry to the level required in ruling on a motion for class certification. Instead, "[t]he parties moving for lead plaintiff are only required to make a *prima facie* showing that they meet [the requirements of] Rule 23". *Aude* 2018 U.S. Dist. LEXIS 57591, at *8; *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998) ("[t]ypicality and adequacy of representation are the only provisions relevant to a determination of lead plaintiff under the PSLRA").

The typicality requirement of Fed. R. Civ. P. 23(a)(3) "is satisfied if 'each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *In re Orion Secs. Litig.*, 08 Civ. 1328 (RJS), 2008 U.S. Dist. LEXIS 55368, at *12 (S.D.N.Y. July 7, 2008) (quoting *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291) (2d Cir. 1992)). "[T]he claims of the class representative need not be identical those of all members of the class. '[T]he typicality requirement may be satisfied even if there are factual dissimilarities or variations between the claims of the named plaintiffs and those of other class members, including distinctions in the qualifications of the class members.'" *Janbay v. Canadian Solar, Inc.*, 272 F.R.D. 113, 120 (S.D.N.Y. 2010) (quoting *Bishop v. N.Y. City Dep't of Hous. Pres. & Dev.*, 141 F.R.D. 229, 238 (2d Cir. 1992)).

Meitav's claims are typical of those of the Class. Meitav alleges, as do all Class members, that Defendants violated the Exchange Act by making what they knew or should have known were false or misleading statements of material facts and/or omitting to disclose material facts concerning Goldman Sachs. Meitav, as did all members of the Class, held Goldman Sachs securities during the Class Period, and was harmed by Defendants' concealment of their

10

participation in a fraud and money-laundering scheme in collusion. These shared claims, which are based on the same legal theory and arise from the same events and course of conduct as the Class's claims, satisfy the typicality requirement of Rule 23(a)(3).

The adequacy of representation requirement of Rule 23(a)(4) is satisfied where "(1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy." *Foley v. Transocean Ltd.*, 272 F.R.D. 126, 131 (S.D.N.Y. 2011); *see also Dookeran v. Xunlei Ltd.*, 18-cv-467 (RJS) *et al.*, 2018 U.S. Dist. LEXIS 62575, at *6 (S.D.N.Y. Apr. 12, 2018) (same).

As set forth in greater detail below Meitav has retained counsel highly experienced in vigorously and efficiently prosecuting securities class actions such as this action, and submits its choice of Pomerantz to the Court for approval pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v).  There is no evidence of antagonism or conflict between Meitav's interests and the interests of the Class. Meitav has submitted a signed Certification declaring its commitment to protect the interests of the Class (*see* Lieberman Decl., Ex. B), and the significant losses incurred by Meitav demonstrate that it has a sufficient interest in the outcome of this litigation to ensure vigorous adequacy.

As noted above, Meitav is a sophisticated institutional investor with significant assets under management.  As such, its appointment would be consistent with the PSLRA's preference for the appointment of institutional investors as class representatives in securities class actions. *See* H.R. Conf. Rep. No. 104-369, at 34 ("increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of

representation in securities class actions"). Indeed, courts strongly prefer appointment of institutional investors to lead complex securities class actions. *See, e.g.*, *Glauser*, 236 F.R.D. at 188 ("[T]he PSLRA was passed, at least in part, to increase the likelihood that institutional investors would serve as lead plaintiffs in actions such as this one.") (quoting *In re Veeco Instruments*, 233 F.R.D. at 332-33); *Ophthotech*, 2018 U.S. Dist. LEXIS 41120, at *17 ("[C]ourts have a preference for appointing institutional investors as lead plaintiffs."); *In re Braskem S.A. Sec. Litig.*, 15 Civ. 5132 (PAE) *et al.*, 2015 U.S. Dist. LEXIS 119183, at *14 (S.D.N.Y. Sept. 8, 2015) (appointing as lead plaintiff "an institutional investor, the type of investor Congress prefers as lead plaintiff"); *In re Doral Fin. Corp. Sec. Litig.*, 414 F. Supp. 2d 398, 403 n. 8 (S.D.N.Y. 2006) (appointing as lead plaintiff a "large institutional investor . . . precisely the type of plaintiff envisioned under the PSLRA").

## II.   LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to Court approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should only interfere with lead plaintiff's choice if necessary to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa). *See also Kaplan v. S.A.C. Capital Advisors, L.P.*, 311 F.R.D. 373, 383 (S.D.N.Y. 2015) ("The PSLRA evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention.") (quoting *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 398 (S.D.N.Y. 2008)).

Here, Meitav has selected Pomerantz as Lead Counsel for the Class. Pomerantz is highly experienced in the area of securities litigation and class actions, and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in the firm's resume. Pomerantz is a premiere firm in the area of securities litigation based in New York, with offices in Chicago, Los Angeles, and Paris, France. For more than 75

12

years, Pomerantz has represented defrauded investors. In 2018 alone, Pomerantz secured a recovery of $3 billion on behalf of investors in the securities of Petrobras, the largest settlement ever in a class action involving a foreign issuer and the fifth largest class action settlement ever achieved in the United States, as well as an $80 million settlement on behalf of Yahoo Inc. investors. Courts in this Judicial District, the Second Circuit and throughout the country have recognized Pomerantz's qualifications to serve as class counsel, and Pomerantz has recently been appointed lead counsel in actions including *Schiro v. CEMEX, S.A.B. de C.V.*, 1:18-cv-2352 (S.D.N.Y.); *Brady v. Top Ships Inc.*, 2:17-cv-4987 (E.D.N.Y.); *Smith v. Antares Pharma, Inc.*, 3:17-cv-8945 (D.N.J.) and *Kessman v. Myriad Genetics, Inc.*, No. 18-cv-336 (D. Utah). *See* Lieberman Decl., Ex. D.

Meitav's chosen counsel have the skill, knowledge, expertise, and experience that will enable them to prosecute this action effectively and expeditiously. Thus, the Court may be assured that by approving Meitav's selection of Pomerantz as Lead Counsel, the members of the class will receive the best legal representation available.

## CONCLUSION

For the foregoing reasons, Meitav respectfully requests that the Court issue an Order: (1) appointing Meitav as Lead Plaintiff for the Class; and (2) approving its selection of Pomerantz as Lead Counsel for the Class.

Dated: February 19, 2019         Respectfully submitted,

                                 POMERANTZ LLP

                                 */s/ Jeremy A. Lieberman*
                                 Jeremy A. Lieberman
                                 J. Alexander Hood II
                                 Jonathan D. Lindenfeld
                                 600 Third Avenue, 20th Floor
                                 New York, NY 10016
                                 Telephone: (212) 661-1100

13

Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com
Email: ahood@pomlaw.com
Email: jlindenfeld@pomlaw.com

POMERANTZ LLP
Patrick V. Dahlstrom
Ten South LaSalle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
Email:  pdahlstrom@pomlaw.com

*Counsel for Lead Plaintiff Movant and Proposed Lead Counsel for the Class*