**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DANIEL PLAUT, Individually and on Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br><br>   v.<br><br>THE GOLDMAN SACHS GROUP, INC., LLOYD C. BLANKFEIN, HARVEY M. SCHWARTZ, and R. MARTIN CHAVEZ,<br><br>        Defendants. | Case No. 1:18-cv-12084-VSB<br><br>Hon. Vernon S. Broderick |

**MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE MOTION OF**
**SJUNDE AP-FONDEN FOR APPOINTMENT AS LEAD PLAINTIFF**
**AND APPROVAL OF ITS SELECTION OF COUNSEL,**
**AND IN OPPOSITION TO THE COMPETING MOTION**

## <u>TABLE OF CONTENTS</u>

**Page**

I.      INTRODUCTION ................................................................................................. 1

II.     ARGUMENT ....................................................................................................... 4

     A.      AP7 Satisfies the PSLRA's Requirements and Should Be Appointed Lead Plaintiff ........................................................................................................ 4

          1.      AP7 Has the Largest Financial Interest under the Analysis Required by This Court's Application of *Dura* in *Ophthotech* ......................................................................................... 5

          2.      AP7 Satisfies the Requirements of Rule 23 ............................... 10

     B.      The Court Should Approve AP7's Selection of Counsel..................... 11

     C.      The Competing Motion Should Be Denied ........................................ 12

III.    CONCLUSION ................................................................................................. 14

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Bo Young Cha v. Kinross Gold Corp.*,
No. 12 Civ. 1203 (PAE), 2012 WL 2025850 (S.D.N.Y. May 31, 2012)..................................2

*Bricklayers of W. Pa. Pension Plan v. Hecla Mining Co.*,
Nos. 2:12-cv-00042-BLW, *et al.*, 2012 WL 2872787 (D. Idaho July 12, 2012)......................9

*In re Cohen v. U.S. Dist. Court for the N. Dist. of Cal.*,
586 F.3d 703 (9th Cir. 2009) ........................................................................................11, 12

*In re Comverse Tech., Inc. Sec. Litig.*,
No. 06-CV-1825 (NGG)(RER), 2007 WL 680779 (E.D.N.Y. Mar. 2, 2007)............... 2, 5-6, 8

*Dura Pharm., Inc. v. Broudo*,
544 U.S. 336 (2005)..................................................................................................... *passim*

*Galmi v. Teva Pharm. Indus. Ltd.*,
302 F. Supp. 3d 485 (D. Conn. 2017)..................................................................................5, 6

*Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
903 F.2d 176 (2d. Cir. 1990).................................................................................................14

*Glauser v. EVCI Career Colls. Holding Corp.*,
236 F.R.D. 184 (S.D.N.Y. 2006) .........................................................................................12

*Irving Firemen's Relief & Ret. Fund v. Tesco PLC*,
Nos. 14 Civ. 8495(RMB), *et al.*, 2015 WL 1345931 (S.D.N.Y. Mar. 19, 2015) .............13, 14

*Micholle v. Ophthotech Corp.*,
Nos. 17-CV-210 (VSB), *et al.*, 2018 WL 1307285 (S.D.N.Y. Mar. 13, 2018)............... *passim*

*Sallustro v. CannaVest Corp.*,
93 F. Supp. 3d 265 (S.D.N.Y. 2015).................................................................................. 5, 6

**Statutes**

15 U.S.C. § 78u-4(a)........................................................................................................... *passim*

Presumptive Lead Plaintiff Sjunde AP-Fonden ("AP7") respectfully submits this memorandum of law in further support of its motion for appointment as Lead Plaintiff [ECF No. 25, the "Motion"] and in opposition to the competing motion filed by Meitav Dash Provident Funds and Pension Ltd ("Meitav") [ECF No. 29].[1]

## I.    INTRODUCTION

The Private Securities Litigation Reform Act of 1995 (the "PSLRA") requires courts to appoint as lead plaintiff the movant asserting the largest financial interest in the litigation that also satisfies the relevant adequacy and typicality requirements of Federal Rule of Civil Procedure 23 ("Rule 23").  15 U.S.C. § 78u-4(a)(3)(B)(iii); *see also Micholle v. Ophthotech Corp.*, Nos. 17-CV-210 (VSB), *et al.*, 2018 WL 1307285, at *4 (S.D.N.Y. Mar. 13, 2018) (Broderick, J.) (discussing the PSLRA's process for selecting a lead plaintiff).  Here, AP7 is the presumptive most adequate plaintiff and is entitled appointment as Lead Plaintiff under the PSLRA.

*First*, AP7 possesses the "largest financial interest" in this litigation under the analysis previously set forth by this Court.  As the Court recently explained in *Ophthotech*, a movant's "financial loss is considered the most significant factor" when assessing financial interest and, consistent with the Supreme Court's decision in *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 345 (2005), "[c]ourts consider only recoverable losses when calculating financial loss for the purpose of selecting lead plaintiff."  2018 WL 1307285, at *5.  Accordingly, "*[a]ny losses*

---

[1]    Nebraska Investment Council ("Nebraska"), IWA Forest Industry Pension Plan ("IWA"), and Zuheir R. Safe also filed motions seeking appointment as Lead Plaintiff but each has subsequently filed a response acknowledging that they do not have the largest financial interest and do not oppose the competing motions.  *See* ECF Nos. 35 (Mr. Safe: stating that he "does not appear to have the largest financial interest and . . . does not oppose the competing motions"); 36 (IWA: "IWA Forest Industry Pension Plan does not possesses the largest financial interest [and] does not oppose the competing motions"); 37 (Nebraska: "Nebraska does not have the 'largest financial interest' in the above-captioned action").  Unless otherwise indicated, all internal citations are omitted and emphases are added.

***incurred based on 'in-and-out' trades***—where an investor buys stock and sells it during the class period but before any disclosures—***should not be considered***." *Id.*

When the movants' in-and-out transactions are appropriately excluded, as is required by *Ophthotech*'s application of *Dura*, it is indisputable that AP7 suffered the largest losses of any movant before the Court:

| Movant | Recoverable LIFO Losses[2] |
|---|---|
| *AP7* | *$3,095,533* |
| Meitav | $2,758,814[3] |
| ~~Nebraska (Filed Non-Opposition; ECF No. 37)~~ | ~~$1,295,680~~ |
| ~~IWA (Filed Non-Opposition; ECF No. 36)~~ | ~~$351,024~~ |
| ~~Mr. Safe (Filed Non-Opposition; ECF No. 35)~~ | ~~$53,672~~ |

The methodology utilized by AP7's expert, Kenneth N. Kotz, to calculate recoverable losses was previously adopted by the court in *In re Comverse Technology, Inc. Securities Litigation*, No. 06-CV-1825 (NGG)(RER), 2007 WL 680779, at *8 (E.D.N.Y. Mar. 2, 2007). *Comverse* was, in turn, relied on by this Court in *Ophthotech* when addressing how a movant's financial interest is to be calculated under the PSLRA and *Dura*. *See Ophthotech*, 2018 WL 1307285, at *5.

---

[2]     *See* Supplemental Declaration of Gerald H. Silk in Support of the Motion of Sjunde AP-Fonden for Appointment as Lead Plaintiff and Approval of Its Selection of Counsel ("Silk Supp. Decl."), Ex. A (the "Kotz Declaration") at Ex. 6A.  The movants' recoverable losses are provided on a last-in, first-out ("LIFO") accounting basis—the most widely used method for matching movant's shares when assessing financial interests under the PSLRA.  *See Bo Young Cha v. Kinross Gold Corp.*, No. 12 Civ. 1203 (PAE), 2012 WL 2025850, at *3 (S.D.N.Y. May 31, 2012) ("the overwhelming trend . . . nationwide has been to use LIFO").  AP7 also possesses the largest recoverable losses under the first-in, first-out ("FIFO") accounting methodology.  *See* Kotz Declaration, Ex. 7A.

[3]     Meitav's claimed LIFO losses of $3,143,586 improperly included approximately $400,000 in losses from in-and-out transactions during the Class Period.  *Compare* ECF No. 31-3 *with* Kotz Declaration, Ex. 6A.

In addition to possessing the greatest recoverable losses under *Dura*, AP7 also has a greater financial interest under the other three other financial interest factors considered by courts, often referred to as the "*Lax*" factors. *See Ophthotech*, 2018 WL 1307285, at *5 (citing with approval four factors first set forth in *Lax v. First Merchs. Acceptance Corp.*, Nos. 97 Civ. 2715, *et al.*, 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997) ("*Lax*")). Specifically, AP7 purchased more total shares, more shares on a net basis, and expended more net funds on Goldman Sachs common stock than any other movant—further bolstering the conclusion that AP7 possesses the largest financial interest in this litigation.

**Second**, AP7 readily satisfies the typicality and adequacy requirements of Rule 23, and is perfectly situated to represent all class members. As a sophisticated institutional investor with more than $50 billion in assets under management and a proven track record of obtaining substantial recoveries as a lead plaintiff in cases proceeding under the PSLRA, AP7 is precisely the type of investor that Congress intended to lead securities class actions. *See Ophthotech*, 2018 WL 1307285, at *6 ("courts have a preference for appointing institutional investors as lead plaintiffs"). Indeed, just last year AP7 was appointed as the sole lead plaintiff under the PSLRA by the Honorable Jesse M. Furman in *Hachem v. General Electric Co.*, No. 1:17-cv-08457-JMF, ECF No. 139 (S.D.N.Y. May 30, 2018). *See* Silk Supp. Decl., Ex. B. Moreover, AP7 has selected highly experienced counsel to pursue the class's claims against Defendants. *See id.* (approving AP7's selection of Kessler Topaz Meltzer & Check, LLP ("Kessler Topaz") as Lead Counsel).

**Third**, in order to rebut the statutory presumption that AP7 is entitled to appointment as Lead Plaintiff, competing movants are required to submit "proof" that AP7 is inadequate. *See Ophthotech*, 2018 WL 1307285, at *10. No such proof exists and AP7's presumptive status cannot be rebutted.

*Last*, in the event that Meitav continues with its motion, serious concerns exist regarding the accuracy of its claimed financial interest.  As set forth in greater detail below, the number of shares of Goldman Sachs common stock listed on Meitav's PSLRA certification and loss chart (ECF Nos. 31-2 & 31-3) vastly exceeds the number of shares of Goldman Sachs common stock Meitav reported that it held in its quarterly filings with the U.S. Securities and Exchange Commission (the "SEC").[4]  For example, Meitav's PSLRA certification and loss chart state that Meitav held 110,379 shares as of December 31, 2018, yet its SEC filings demonstrate that Meitav held no more than 76,596 shares as of December 31, 2018.  *See infra* Section II.C.  This significant discrepancy calls into question the accuracy of Meitav's PSLRA certification and purported losses, and undermines Meitav's ability to serve as Lead Plaintiff.  *See Ophthotech*, 2018 WL 1307285, at *9 ("The errors in [the movant's] submissions, however, militate against appointment and render [the movant] inadequate to serve as lead plaintiff under Rule 23's adequacy requirement.").

Accordingly, AP7 respectfully requests that the Court grant its Motion in its entirety.

## II.    ARGUMENT

### A.    AP7 Satisfies the PSLRA's Requirements and Should Be Appointed Lead Plaintiff

The PSLRA creates a strong presumption that the lead plaintiff is the movant that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *see also Ophthotech*, 2018 WL 1307285, at *4. "In order to rebut the statutory presumption . . . another movant must provide ***proof*** that it would not be able to 'fairly and adequately protect the interests of the class' or 'is subject to unique

---

[4]    Meitav's Form 13F SEC filings are attached as Exhibits C-G to the Silk Supp. Decl.

defenses that render such plaintiff incapable of adequately representing the class.'" *Ophthotech*, 2018 WL 1307285, at \*10.  Under this framework, AP7 is entitled to appointment as Lead Plaintiff.

### 1.  AP7 Has the Largest Financial Interest under the Analysis Required by This Court's Application of *Dura* in *Ophthotech*

This Court—along with nearly every court in this Circuit—has held that a movant's loss is the most important factor in determining whether a movant has the largest financial interest in the litigation.  *See id.* at \*5 ("financial loss is considered the most significant factor"); *Galmi v. Teva Pharm. Indus. Ltd.*, 302 F. Supp. 3d 485, 497 (D. Conn. 2017) ("Courts agree that the last factor, 'approximate losses suffered,' is the most important factor . . . .").  As explained last year by this Court in *Ophthotech*, when assessing a movant's losses, "courts must consider only those losses that a plaintiff incurred after a misrepresentation is revealed to the public" and "***[a]ny losses incurred based on 'in-and-out' trades***—where an investor buys stock and sells it during the class period but before any disclosures—***should not be considered***."  *Ophthotech*, 2018 WL 1307285, at \*5; *see also Teva*, 302 F. Supp. 3d at 498-99 ("Courts within the Second Circuit consistently hold that, when calculating a proposed lead plaintiff's estimated losses, the court 'should not include losses resulting from in-and-out transactions, which took place during the class period, but before the misconduct identified in the complaint was ever revealed to the public.'"); *Sallustro v. CannaVest Corp.*, 93 F. Supp. 3d 265, 273 (S.D.N.Y. 2015) ("[W]hen evaluating a plaintiff's financial interest for purposes of selecting a lead plaintiff, courts in this Circuit consider that plaintiff's recoverable loss, and ***do not take into account losses from shares sold prior to corrective disclosures***.") (Gardephe, J.).  Indeed, the exclusion of gains and losses resulting from in-and-out transactions "is consistent with the Supreme Court's holding in *Dura* . . . where the Court found that securities actions only provide recoveries for 'economic losses that misrepresentations actually cause.'"  *Ophthotech*, 2018 WL 1307285, at \*5; *see also Comverse*,

5

2007 WL 680779, at *4 (excluding in-and-out transactions and noting that "it is clear that under *Dura* and its progeny, any losses that [the movant] may have incurred before [defendant's] misconduct was ever disclosed to the public are not recoverable"); *Teva*, 302 F. Supp. 3d at 500 ("The Court in *Dura* made it clear that a plaintiff can only recover for losses that are attributable to the materialization of the risk concealed by the defendant's fraudulent statement. . . . Accordingly, I will only consider such losses in determining which plaintiff has the greatest financial stake in the litigation.").  As explained by the court in *Sallustro*, "[t]he court would be abdicating its responsibility under the PSLRA if it were to ignore [the issue of loss causation at the lead plaintiff appointment] stage."  93 F. Supp. 3d at 273 (brackets in original) (quoting *Converse*, 2007 WL 680779, at *5).

Here, when the movants' in-and-out transactions are removed from consideration pursuant to *Dura* and this Court's decision in *Ophthotech*, AP7 clearly suffered the largest recoverable losses during the Class Period:

| Movant | Recoverable LIFO Losses[5] |
|---|---|
| *AP7* | *$3,095,533* |
| Meitav | $2,758,814 |
| ~~Nebraska~~ | ~~$1,295,680~~ |
| ~~IWA~~ | ~~$351,024~~ |
| ~~Mr. Safe~~ | ~~$53,672~~ |

In calculating the movants' recoverable losses, AP7's expert, Mr. Kotz, first matched all Class Period transactions under the LIFO accounting methodology, and then identified and removed all "in-and-out" transactions in which shares or units were ***purchased and sold***: (1) prior to the first

---

[5]     *See* Kotz Declaration, Ex. 6A.  As noted above, AP7 also has the largest recoverable losses under the less favored FIFO accounting methodology.  *See id.*, Ex. 7A.

corrective disclosure on March 7, 2016; (2) between the first corrective disclosure on March 7, 2016, and the second corrective disclosure on November 8, 2018; (3) between the second corrective disclosure on November 8, 2018, and the third corrective disclosure on November 12, 2018; and (4) between the third corrective disclosure on November 12, 2018, and the final corrective disclosure on December 17, 2018. *See* Kotz Declaration at ¶¶ 2-3; ECF No. 1, ¶¶ 50; 77; 79; 81 (the "Complaint"; identifying four corrective disclosures and resulting stock price declines). As a result, the only transactions included in the recoverable loss calculations are those transactions in which shares or units were held through at least one corrective disclosure, and thus, suffered losses resulting from the revelation of Defendants' fraud. *See Ophthotech*, 2018 WL 1307285, at \*5 ("courts must consider only those losses that a plaintiff incurred *after* a misrepresentation is revealed to the public") (emphasis in original).

Critically, Meitav's initial LIFO calculation of $3,143,586 overstates its losses by nearly $400,000 by including non-recoverable losses from its in-and-out transactions in Goldman Sachs common stock and bonds. *Compare* ECF No. 31-3 *with* Kotz Declaration, Ex. 6A; *see also Ophthotech*, 2018 WL 1307285, at \*8 (concluding that movant's "financial losses [were] overstated, since many of his trades are 'in-and-out' trades"). Specifically, as detailed in the Kotz Declaration, Meitav purchased and sold 20,897 shares of Goldman Sachs common stock ***prior to the first corrective disclosure*** on March 8, 2016. *See* Kotz Declaration, Ex. 6B. Similarly, Meitav purchased and sold 819,000 units of Goldman Sachs bonds prior to the first corrective disclosure, and purchased ***and sold*** 429,000 units of Goldman Sachs bonds between the first corrective disclosure on March 8, 2016, and the second corrective disclosure on November 9, 2018. *See id*. The losses claimed by Meitav in connection with these shares ($372,611) and units ($17,828), *see id*. at Ex. 6A, are not recoverable—and must be excluded when calculating Meitav's financial

interest—because none of these shares or units were held at the time of a pled corrective disclosure. *See Ophthotech*, 2018 WL 1307285, at *5 (excluding "'in-and-out' trades—where an investor buys stock and sells it during the class period but before any disclosures").

Significantly, the methodology utilized by Mr. Kotz here is ***identical*** to the methodology that was employed by Mr. Kotz—and endorsed by the court—in *Comverse* to calculate *Dura*-compliant losses when assessing lead plaintiff movants' financial interest. *See* Kotz Declaration at ¶ 1 (noting that methodology used here is "consistent with the methodology [Mr. Kotz] used in *In re Comverse*"); *Comverse*, 2007 WL 680779, at *8 (relying on Mr. Kotz's analysis—which "clearly delineates the losses that [the movants] each suffered, if in-and-out transactions are excluded"—to assess the movants' financial interest under *Dura*). Meitav, which cites to *Comverse* in its opening papers,[6] cannot credibly dispute the propriety of Mr. Kotz's analysis. Indeed, the analysis performed by Mr. Kotz in *Comverse* was done at the direction of the same law firm that represents Meitav in this litigation: Pomerantz LLP ("Pomerantz") f/k/a Pomerantz Haudek Block Grossman & Gross LLP. Moreover, Meitav's filing in this case affirmatively touts *Comverse* as one of the "many landmark decisions" achieved by its counsel. ECF No. 31-4 at 7. In fact, according to Meitav's submission here, in *Comverse*, "[Pomerantz] obtained an important clarification of how courts calculate the 'largest financial interest' in connection with the selection of a Lead Plaintiff, in a manner consistent with *Dura* . . . ." *Id.* at 17. Given Meitav's submissions to the Court, Meitav should have no concerns about *Comverse*'s "important clarification" being applied to the calculation of the movants' financial interests here, which in any event, is also required under *Ophthotech*.

---

[6]   *See* ECF No. 30 at 9 ("Meitav Brief") (citing *Comverse*).

In addition to suffering greater losses than the competing movants—"the most significant factor" in determining which movant has the largest financial interest, *Ophthotech*, 2018 WL 1307285, at *5—AP7 also has the largest financial interest under the remaining *Lax* factors, as it purchased more total shares of Goldman Sachs common stock, purchased more net shares of Goldman Sachs common stock, and expended more net funds on Goldman Sachs common stock during the Class Period than any other movant:

| Movant | Total Shares | Net Shares | Net Expenditures |
|--------|-------------|------------|------------------|
| *AP7* | *179,082* | *100,069* | *$21,375,937* |
| Meitav | 119,596 | 98,699 | $21,228,617 |
| ~~Nebraska~~ | ~~54,327~~ | ~~21,777~~ | ~~$5,104,604~~ |
| ~~IWA~~ | ~~14,140~~ | ~~8,260~~ | ~~$1,966,937~~ |
| ~~Mr. Safe~~ | ~~6,800~~ | ~~6,800~~ | ~~$1,303,796~~ |

Thus, AP7 also asserts the largest financial interest under each of the secondary factors used by courts to assess movants' financial interests. *See Ophthotech*, 2018 WL 1307285, at *5 (citing with approval the four financial interest factors first set forth in *Lax*).[7]

Accordingly, AP7 has "the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb); *see also Ophthotech*, 2018 WL 1307285, at *9-10.

---

[7]    Given the apples-to-oranges nature of combining shares of common stock and units of bonds under *Lax*'s four-factor test, Meitav's transactions in Goldman Sachs bonds are excluded from its total shares, net shares, and net expenditures calculations. *Cf. Bricklayers of W. Pa. Pension Plan v. Hecla Mining Co*., Nos. 2:12-cv-00042-BLW, *et al.*, 2012 WL 2872787, at *4 (D. Idaho July 12, 2012) (explaining that a total shares, net shares, and net expenditure analysis for purchases of both common stock and options is "like comparing apples to oranges" and "throws the analysis off").  If these bond transactions were to be included in the net expenditure calculation, Meitav's net expenditures during the Class Period are $22,294,905.

## 2.   AP7 Satisfies the Requirements of Rule 23

In addition to possessing the largest financial interest in the relief sought by the class, AP7 also satisfies the typicality and adequacy requirements of Rule 23.  *See Ophthotech*, 2018 WL 1307285, at *6 ("The parties moving for lead plaintiff are only required to make a prima facie showing that they meet the Rule 23 prerequisites, and courts need only consider the typicality and adequacy requirements.").

As demonstrated in its opening brief, AP7's claims are typical of the claims of the class. *See* ECF No. 26 at 7 ("AP7 Brief").  Like all other class members, AP7: (1) purchased Goldman Sachs securities during the Class Period; (2) at prices artificially inflated by Defendants' materially false and misleading statements and/or omissions; and (3) was damaged thereby.  *See Ophthotech*, 2018 WL 1307285, at *6 ("With respect to typicality, courts consider whether the claims of the proposed lead plaintiff 'arise from the same conduct from which the other class members' claims and injuries arise.'").

AP7 also satisfies Rule 23's adequacy requirement because it is capable of "fairly and adequately protect[ing] the interests of the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).  AP7's interests are clearly aligned with other class members and there is no evidence of any conflicts. AP7 also has a sufficient interest in this case to ensure the vigorous prosecution of this litigation, and has demonstrated its commitment to prosecuting this action efficiently and in the best interests of the class.  *See Ophthotech*, 2018 WL 1307285, at *6.

Moreover, as a sophisticated institutional investor that oversees more than $50 billion in assets under management and has successfully served as lead plaintiff in a number of class actions under the PSLRA, AP7 is precisely the type of investor that Congress sought, through the enactment of the PSLRA, to encourage to lead securities class actions.  *See id.* at *6 (noting that "courts have a preference for appointing institutional investors as lead plaintiffs. . . . consistent

with Congress's intent in passing the PSLRA").  Indeed, AP7's ability to zealously represent the class is evident from its significant recoveries as a lead plaintiff or certified class representative in: *In re Cobalt International Energy, Inc. Securities Litigation*, No. 4:14-cv-03428 (S.D. Tex.) ($389.6 million recovery); *In re JPMorgan Chase & Co. Securities Litigation*, No. 1:12-cv-03852-GBD (S.D.N.Y.) ($150 million recovery); *United Union of Roofers, Waterproofers & Allied Workers Local Union No. 8 v. Ocwen Financial Corp.*, No. 9:14-cv-81057 (S.D. Fla.) ($56 million recovery on the eve of trial); *Louisiana Municipal Police Employees' Retirement System v. Green Mountain Coffee Roasters, Inc.*, No. 2:11-cv-00289-WKS (D. Vt.) ($36.5 million recovery); *In re Johnson & Johnson Securities Litigation*, No. 3:10-cv-04841 (D.N.J.) ($23 million recovery). Additionally, AP7 was recently appointed as the sole lead plaintiff in the *General Electric* securities class action lawsuit pending before the Honorable Jesse M. Furman.  *See* Silk Supp. Decl., Ex. B.

Accordingly, because AP7 has the largest financial interest in the relief sought by the class and otherwise satisfies the relevant requirements of Rule 23, the Court should appoint AP7 as Lead Plaintiff.

### B.     The Court Should Approve AP7's Selection of Counsel

The PSLRA vests authority in the lead plaintiff to select and retain counsel for the class, subject to the Court's approval.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(v).  The Court should not disturb a lead plaintiff's choice of counsel unless it is "necessary to protect the interests of the class."  *In re Cohen v. U.S. Dist. Court for the N. Dist. of Cal.*, 586 F.3d 703, 712 (9th Cir. 2009) ("if the lead plaintiff has made a reasonable choice of counsel, the district court should generally defer to that choice").

As detailed in AP7's opening brief, Kessler Topaz is one of the leading securities class action law firms in the nation and has successfully prosecuted numerous securities fraud class

actions on behalf of injured investors. Indeed, Kessler Topaz has successfully served as lead counsel under AP7's leadership; recovering more than $265 million on behalf of investors in *JPMorgan*, *Ocwen*, *Green Mountain*, and *Johnson & Johnson*. In addition, Bernstein Litowitz Berger & Grossmann LLP ("Bernstein Litowitz") has significant experience litigating securities class actions, maintains an office in this District, and is well qualified to represent the class as Liaison Counsel.

Thus, AP7's proposed counsel are highly qualified to serve in their respective capacities and their appointments should be approved. *See Cohen*, 586 F.3d at 712; *Ophthotech*, 2018 WL 1307285, at *10 (approving the lead plaintiff's selection of counsel).

### C.    The Competing Motion Should Be Denied

As set forth above, Meitav does not assert the largest financial interest in this litigation, and no "proof" exists to rebut AP7's presumptive status as the most adequate plaintiff under the PSLRA. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) (requiring "proof" to rebut presumption); *Glauser v. EVCI Career Colls. Holding Corp.*, 236 F.R.D. 184, 189-90 (S.D.N.Y. 2006) (rejecting "speculative and hypothetical argument[s]" challenging a presumptive lead plaintiffs' typicality or adequacy). This, without more, is sufficient to deny Meitav's motions under the PSLRA's lead plaintiff selection process. *See Ophthotech*, 2018 WL 1307285, at *10 (appointing movant that was "the presumptive lead plaintiff [where] no other movants have rebutted that presumption").

In addition to asserting a lesser financial interest than AP7, Meitav's PSLRA certification and accompanying loss chart appear to be inconsistent with Meitav's Form 13F quarterly statements filed with the SEC.[8] Specifically, the Form 13F filings (which also include the holdings

---

[8]      *See* Silk Supp. Decl., Exs. C-G.  Pursuant to 17 C.F.R. § 240.13f-1(a)(1), certain institutional investment managers, like Meitav, file quarterly statements with the SEC detailing their securities holdings.

of several related entities that are not seeking appointment as Lead Plaintiff[9]) demonstrate that Meitav held *significantly fewer* shares of Goldman Sachs common stock during the Class Period than Meitav has claimed in its PSLRA certification and loss chart:

| **Date** | **Shares Held As Reported In Certification & Loss Chart** (Meitav) | **Shares Held As Reported In SEC Filings** (Meitav *plus* four related entities) |
|---|---|---|
| December 31, 2018 | 110,379 | 76,596 |
| September 30, 2018 | 42,418 | 2,430 |
| June 30, 2018 | 42,418 | 2,430 |
| March 31, 2018 | 42,418 | 2,430 |
| December 31, 2017 | 42,418 | 2,430 |

The substantial discrepancy between the number of shares Meitav reported that it held to the SEC and the number of shares it now claims it held casts significant doubt on Meitav's purported financial interest and "render[s] [Meitav] inadequate to serve as lead plaintiff under Rule 23's adequacy requirement." *Ophthotech*, 2018 WL 1307285, at *9 (disqualifying movant with errors in its PSLRA certification); *see also Irving Firemen's Relief & Ret. Fund v. Tesco PLC*, Nos. 14 Civ. 8495(RMB), *et al.*, 2015 WL 1345931, at *3 (S.D.N.Y. Mar. 19, 2015) (Berman, J.) (rejecting lead plaintiff movant where its claimed transactions were called into question by publicly-available data).

*Tesco* is instructive.  In that case, Judge Berman found an institutional investor to be inadequate because "the Court [wa]s unable to verify its claimed losses" given that the movant failed to sufficiently explain a discrepancy between the quantity of shares claimed to have been

---

[9]     The four related entities included in Meitav's Form 13F holdings statements are: Meitav Dash Investments Ltd.; Meitav Dash Mutual Trust Funds Ltd.; Meitav Dash Portfolio Management Ltd.; and Tachlit Indices Ltd.

purchased" and publicly reported data. *Tesco*, 2015 WL 1345931, at *3. As such, even if Meitav claimed a larger financial interest than AP7 (it cannot), serious questions concerning the discrepancy between the transactions listed in Meitav's certification and its SEC filings present "unique defenses which threaten to become the focus of the litigation" and trigger an independent basis to deny Meitav's motion. *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d. Cir. 1990); *see also Tesco*, 2015 WL 1345931, at *3 (holding that the uncertainty of a movant's trading irregularities "undermines [its] adequacy") (alterations in original).

## III.   CONCLUSION

For the reasons stated herein and its Motion, AP7 respectfully requests that the Court: (1) appoint AP7 as Lead Plaintiff; and (2) approve its selection of Kessler Topaz and Bernstein Litowitz as Lead and Liaison Counsel, respectively, for the class; and (3) grant such other relief as the Court may deem just and proper.

DATED: March 5, 2019                     Respectfully submitted,

**BERNSTEIN LITOWITZ BERGER
    & GROSSMANN LLP**

*S/ Gerald H. Silk*
Gerald H. Silk
Michael D. Blatchley
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
jerry@blbglaw.com
michaelb@blbglaw.com

*Proposed Liaison Counsel for the Class*

**KESSLER TOPAZ
    MELTZER & CHECK, LLP**
Naumon A. Amjed
Darren J. Check

Ryan T. Degnan
Melissa L. Troutner
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
namjed@ktmc.com
dcheck@ktmc.com
rdegnan@ktmc.com
mtroutner@ktmc.com

*Counsel for Sjunde AP-Fonden and
Proposed Lead Counsel for the Class*