UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DANIEL PLAUT, Individually and on Behalf of All Others Similarly Situated, | Case No. |
| Plaintiff, | CLASS ACTION |
| v. | AMENDED COMPLAINT |
| THE GOLDMAN SACHS GROUP, INC., LLOYD C. BLANKFEIN, HARVEY M. SCHWARTZ, and R. MARTIN CHAVEZ, | JURY TRIAL DEMANDED |
| Defendants. | |

Plaintiff Daniel Plaut ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding The Goldman Sachs Group, Inc. ("Goldman Sachs" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet.  Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION AND OVERVIEW

1.     This is a federal securities class action on behalf of all persons and entities who purchased or otherwise acquired Goldman Sachs securities between February 28, 2014, and December 17, 2018, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.     Goldman Sachs was founded in 1869 and is headquartered in New York, New York.  The Company operates as an investment banking, securities, and investment management company worldwide, serving corporations, financial institutions, governments, and high-net-worth individuals.

3.     According to 2016 data compiled by Bloomberg, Goldman Sachs has "worked on $18.8 billion of Malaysian mergers and acquisitions over the past five years, making it the top foreign adviser with a 20.5[%] market share."  Goldman Sachs's business in Malaysia included, *inter alia*, raising funds for 1Malaysia Development Bhd. ("1MDB"), a Malaysian state-owned investment fund set up in 2009, four months after Najib Razak ("Razak") became Prime Minister of Malaysia.  1MDB was initially established to finance infrastructure and economic deals in Malaysia.

4.     In 2012, officials from 1MDB met with Goldman Sachs in Hong Kong to discuss a bond deal.  Goldman Sachs subsequently raised $6.5 billion for 1MDB, earning approximately $600 million in fees.

5.      Since early 2015, 1MDB has been the subject of international criminal and regulatory investigations for suspected fraud and money laundering after missing $11 billion in payments owed to banks and bondholders.

6.      On June 18, 2015, *The Wall Street Journal* published an article entitled "Fund Controversy Threatens Malaysia's Leader," detailing how 1MDB indirectly funded Razak's 2013 election campaign.  A probe into 1MDB subsequently followed.

7.      On July 2, 2015, *The Wall Street Journal* published another article, entitled "Investigators Believe Money Flowed to Malaysian Leader Najib's Accounts Amid 1MDB Probe," reporting how Malaysian investigators traced nearly $700 million in deposits to what they believed to be Razak's personal bank accounts.

8.      According to the U.S. Department of Justice, high-level 1MDB officials and their associates misappropriated an estimated $4.5 billion from 1MDB between 2009 and 2014. Implicated in the 1MDB scandal were two former Goldman Sachs managing directors— Tim Leissner ("Leissner") and Ng Chong Hwa, also known as Roger Ng ("Ng").

9.      Leissner was Chairman of South East Asia and Vice Chairman of the Investment Banking Division in Asia Ex-Japan (*i.e.*, Asia, excluding Japan) for Goldman Sachs.

10.     Ng was a former Goldman Sachs banker, managing director, and deputy to Leissner.  Ng most recently was the head of South-East Asian sales in Goldman Sachs's fixed-income, currencies, and commodities unit.

11.      Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Goldman Sachs participated in a fraud and money-laundering scheme in collusion with 1MDB; (ii) the

foregoing conduct, when revealed, would foreseeably subject Goldman Sachs to heightened regulatory investigation and enforcement; and (iii) as a result, Goldman Sachs's public statements were materially false and misleading at all relevant times.

12. On October 14, 2015, *The Wall Street Journal* published articles entitled "U.S. Examines Goldman Sachs Role in 1MDB Transaction" and "Goldman Entangled In Malaysia Fund Scandal," reporting that as part of the probe into money laundering and corruption, investigators at the FBI and the DOJ had begun examining Goldman Sachs's role in a series of transactions at 1MDB in which the bank garnered approximately $600 million in fees.

13. Following this news, Goldman Sachs's stock price fell $1.46 per share, or 0.81%, to close at $179.51 on October 14, 2015. That same day, *The Street* published an article entitled "Goldman Sachs (GS) Stock Down, Under Investigation in Malaysia Fund Probe."

14. On March 7, 2016, *Bloomberg News* published an article entitled "Ex-Goldman Banker to Malaysia Fund Said Subpoenaed in U.S. Probe," reporting that the U.S. Justice Department had subpoenaed Leissner in late February in connection with a probe linked to 1MDB. Goldman Sachs has since been the subject of investigations by the U.S. Justice Department regarding the multibillion-dollar fraud and money-laundering scheme involving 1MDB, for which Goldman Sachs was the primary bond underwriter.

15. Following this news, Goldman Sachs's stock price fell $3.75 per share, or 2.41%, to close at $151.60 on March 8, 2016.

16. On June 10, 2016, *Bloomberg* published an article, entitled "Goldman Sachs Queried About 1MDB by New York Bank Regulator," reporting that New York's Department of Financial Services directed Goldman Sachs to swiftly report on its internal review of more than $6 billion in bond sales for 1MDB.

17.     Following this news, Goldman Sachs's stock price fell $3.28 per share, or 2.14%, to close at $149.89 on June 10, 2016.

18.     On November 1, 2018, U.S. federal prosecutors in the Eastern District of New York ("E.D.N.Y.") unsealed indictments against Leissner and Ng related to the 1MDB probe, explicitly describing them as "agents acting within the scope of their employment on behalf of" the Company "with the intent, at least in part, to benefit" Goldman Sachs.  That same day, the United States Attorney's Office for the E.D.N.Y. announced that Leissner's guilty plea was unsealed for "a two-count criminal information charging Leissner with conspiring to launder money and conspiring to violate the FCPA [Foreign Corrupt Practices Act] by both paying bribes to various Malaysian and Abu Dhabi officials and circumventing the internal accounting controls of the Financial Institution while he was employed by it."  The U.S. Attorney's Office also stated that, "[a]ccording to court filings, Leissner has been ordered to forfeit $43,700,000 as a result of his crimes."

19.     On November 8, 2018, a report by *Bloomberg News* detailed the personal involvement of Goldman Sachs's then-Chief Executive Officer ("CEO"), Lloyd Blankfein, in a meeting to establish ties with Malaysia and its new sovereign wealth fund that was referenced in the court documents unsealed the prior week.  In a November 8, 2018 article entitled "Goldman's Blankfein Said to Have Attended 2009 1MDB Meeting," *Bloomberg News* noted that "Blankfein was the unidentified high-ranking Goldman Sachs executive referenced in U.S. court documents who attended a 2009 meeting with the former Malaysian prime minister," and that "[t]he meeting was arranged with the help of men who are now tied to the subsequent plundering of the 1MDB fund[.]"

20.     On this news, Goldman Sachs's stock price fell by $9.00, or nearly 4%, closing at $222.65 on November 9, 2018.

21.     On November 12, 2018, Malaysian government officials denounced Goldman Sachs's role in the 1MDB scandal.  Malaysian Prime Minister Mahathir Mohamad stated that "[t]here is evidence that Goldman Sachs has done things that are wrong" and "[o]bviously we have been cheated through the compliance by Goldman Sachs people."  Meanwhile, the country's Finance Minister Lim Guan Eng said that Malaysia would seek a "full refund" of the approximately $600 million in fees that the Company earned in connection with 1MDB's $6.5 billion bond deal.

22.     Following this news, Goldman Sachs's stock price fell $16.60 per share, or nearly 7.5%, to close at $206.05 on November 12, 2018.

23.     On December 17, 2018, multiple news outlets reported that Malaysia had filed criminal charges against Goldman Sachs and two former executives for their role in the 1MDB fraud and money-laundering scandal. That same day, in response to these charges, Goldman Sachs denied any wrongdoing through its spokesman Edward Naylor, who stated: "We believe these charges are misdirected and we will vigorously defend them and look forward to the opportunity to present our case . . . . The firm continues to cooperate with all authorities investigating these matters."

24.     Following this news, Goldman Sachs's stock price fell $4.76 per share, or 2.76%, to close at $168.01 on December 17, 2018.

25.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

26.     The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5.

27.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

28.     Venue is proper in this District pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1391(b). Goldman Sachs is headquartered in this District, Defendants conduct business in this District, and a significant portion of Defendants' actions took place within this District.

29.     In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

30.     Plaintiff, as set forth in the previously-filed Certification (ECF Nos. 1-1, 1-2) acquired Goldman Sachs shares at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

31.     Defendant Goldman Sachs is a Delaware corporation with its principal executive offices located at 200 West Street, New York, New York.  Goldman Sachs's shares trade in an efficient market on the New York Stock Exchange ("NYSE") under the ticker symbol "GS."

32.     Defendant Blankfein served as the CEO of Goldman Sachs between June 2006 and September 2018.

33.     Defendant Harvey M. Schwartz served as the Chief Financial Officer ("CFO") of Goldman Sachs between January 2013 and May 2017.

34.     Defendant R. Martin Chavez served as the CFO of Goldman Sachs between May 2017 and November 2018.

35.     The Defendants referenced above in ¶¶ 32-34 are sometimes referred to herein collectively as the "Individual Defendants."

36.     The Individual Defendants possessed the power and authority to control the contents of the Company's SEC filings, press releases, and other market communications. The Individual Defendants were provided with copies of the Company's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected. Because of their positions with the Company, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading. The Individual Defendants are liable for the false statements and omissions pleaded herein.

## SUBSTANTIVE ALLEGATIONS
### Background

37.     Goldman Sachs was founded in 1869 and is headquartered in New York, New York. The Company operates as an investment banking, securities, and investment management company worldwide, serving corporations, financial institutions, governments, and high-net-worth individuals.  Goldman Sachs's common stock trades on the NYSE under the ticker symbol "GS".

38.    According to 2016 data compiled by Bloomberg, Goldman Sachs "worked on $18.8 billion of Malaysian mergers and acquisitions over the past five years, making it the top foreign adviser with a 20.5[%] market share." Goldman Sachs's business in Malaysia included raising funds for 1MDB, a Malaysian state-owned investment fund set up in 2009, four months after Razak became Prime Minister of Malaysia. 1MDB was initially established to finance infrastructure and economic deals in Malaysia.

39.    In 2012, officials from 1MDB met with Goldman Sachs in Hong Kong to discuss a bond deal.   Goldman Sachs subsequently raised $6.5 billion for 1MDB, acquiring approximately $600 million in fees.

40.    Two Goldman Sachs managing directors in particular were closely involved with 1MDB: Tim Leissner, Chairman of South East Asia and Vice Chairman of the Investment Banking Division in Asia Ex-Japan; and his deputy Roger Ng, head of South-East Asian sales in Goldman Sachs's fixed-income, currencies, and commodities unit.

**<u>Materially False and Misleading Statements Issued During the Class Period</u>**

41.    The Class Period begins on February 28, 2014, when Goldman Sachs filed an Annual Report on Form 10-K with the SEC, announcing the Company's financial and operating results for the quarter and year ended December 31, 2013 (the "2013 10-K").  According to the 2013 10-K, Asia accounted for $5.52 billion, or 16%, of total net revenues, and $1.35 billion, or 17%, of Goldman Sachs's total pre-tax earnings in 2013.

42.    The 2013 10-K contained merely generic, boilerplate representations with respect to the Company's risk of regulatory enforcement "relating to corrupt and illegal payments and money laundering," citing "the geographical diversity of [Goldman Sachs's] operations, employees, clients and customers, as well as the vendors and other third parties that [the

Company] deal[s] with," while touting Goldman Sachs's purported prior and continuing investment in "significant resources in training and in compliance monitoring."

43.     Appended as exhibits to the 2013 10-K were signed certifications pursuant by Defendants Blankfein and Schwartz, attesting "that the Company's Annual Report on Form 10-K for the year ended December 31, 2013 . . . fully complies with the requirements of Section 13(a) or 15(d), as applicable, of the Securities Exchange Act of 1934 and that the information contained in the Report fairly presents, in all material respects, the financial condition and results of operations of the Company."

44.     On February 23, 2015, Goldman Sachs filed an Annual Report on Form 10-K with the SEC, announcing the Company's financial and operating results for the quarter and year ended December 31, 2014 (the "2014 10-K").  According to the 2014 10-K, Asia accounted for $5.41 billion, or 16%, of total net revenues, and $1.43 billion, or 17%, of Goldman Sachs's total pre-tax earnings in 2014.

45.     The 2014 10-K contained merely generic, boilerplate representations with respect to the Company's risk of regulatory enforcement "relating to corrupt and illegal payments and money laundering," citing "the geographical diversity of [Goldman Sachs's] operations, employees, clients and customers, as well as the vendors and other third parties that [the Company] deal[s] with," while touting Goldman Sachs's purported prior and continuing investment in "significant resources in training and in compliance monitoring."

46.     Appended as exhibits to the 2014 10-K were signed certifications pursuant by Defendants Blankfein and Schwartz, attesting "that the Company's Annual Report on Form 10-K for the year ended December 31, 2014 . . . fully complies with the requirements of Section 13(a) or 15(d), as applicable, of the Securities Exchange Act of 1934 and that the information

contained in the Report fairly presents, in all material respects, the financial condition and results of operations of the Company."

47.    News of misconduct associated at 1MDB began to emerge in early 2015, although without initially implicating Goldman Sachs.  On June 18, 2015, *The Wall Street Journal* published an article entitled "Fund Controversy Threatens Malaysia's Leader," detailing how 1MDB indirectly funded Razak's 2013 election campaign.  A probe into 1MDB subsequently followed.

48.    On July 2, 2015, *The Wall Street Journal* published another article, entitled "Investigators Believe Money Flowed to Malaysian Leader Najib's Accounts Amid 1MDB Probe," reporting how Malaysian investigators traced nearly $700 million in deposits to what they believed to be Razak's personal bank accounts.

49.    The statements referenced in ¶¶ 41-46 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Goldman Sachs participated in a fraud and money-laundering scheme in collusion with 1MDB; (ii) the foregoing conduct, when revealed, would foreseeably subject Goldman Sachs to heightened regulatory investigation and enforcement; and (iii) as a result, Goldman Sachs's public statements were materially false and misleading at all relevant times.

**The Truth Begins To Emerge**

50.    On October 14, 2015, *The Wall Street Journal* published articles entitled "U.S. Examines Goldman Sachs Role in 1MDB Transaction" and "Goldman Entangled In Malaysia Fund Scandal," reporting that as part of the probe into money laundering and corruption,

investigators at the FBI and the DOJ had begun examining Goldman Sachs's role in a series of transactions at 1MDB in which the bank garnered approximately $600 million in fees.

51.     Following this news, Goldman Sachs's stock price fell $1.46 per share, or 0.81%, to close at $179.51 on October 14, 2015. That same day, *The Street* published an article entitled "Goldman Sachs (GS) Stock Down, Under Investigation in Malaysia Fund Probe."

52.     Nevertheless, Goldman Sachs continued to conceal its role in the growing 1MDB scandal.  On October, 23, 2015, *The Wall Street Journal* published an article concerning the 1MDB scandal and Goldman Sachs's alleged involvement and high fees, reporting that "Goldman has said its fees were higher than usual to compensate for the risks it took to execute the deal quickly and sell three bonds totaling $6.5 billion."

53.     On February 22, 2016, Goldman Sachs filed an Annual Report on Form 10-K with the SEC, announcing the Company's financial and operating results for the quarter and year ended December 31, 2015 (the "2015 10-K").  According to the 2015 10-K, Asia accounted for $5.64 billion, or 17%, of total net revenues, and $1.69 billion, or 27%, of Goldman Sachs's total pre-tax earnings in 2015.

54.     The 2015 10-K again contained merely generic, boilerplate representations with respect to the Company's risk of regulatory enforcement "relating to corrupt and illegal payments and money laundering," citing "the geographical diversity of [Goldman Sachs's] operations, employees, clients and customers, as well as the vendors and other third parties that [the Company] deal[s] with," while touting Goldman Sachs's purported prior and continuing investment in "significant resources in training and in compliance monitoring."

55.     Appended as exhibits to the 2015 10-K were signed certifications pursuant by Defendants Blankfein and Schwartz, attesting "that the Company's Annual Report on Form 10-K

for the year ended December 31, 2015 . . . fully complies with the requirements of Section 13(a) or 15(d), as applicable, of the Securities Exchange Act of 1934 and that the information contained in the Report fairly presents, in all material respects, the financial condition and results of operations of the Company."

56.     On March 7, 2016, *Bloomberg News* published an article entitled "Ex-Goldman Banker to Malaysia Fund Said Subpoenaed in U.S. Probe," reporting that the U.S. Justice Department had subpoenaed Leissner in late February in connection with a probe linked to 1MDB.

57.     Following this news, Goldman Sachs's stock price fell $3.75 per share, or 2.41%, to close at $151.60 on March 8, 2016.

58.     On June 10, 2016, *Bloomberg* published an article, entitled "Goldman Sachs Queried About 1MDB by New York Bank Regulator," reporting that New York's Department of Financial Services directed Goldman Sachs to swiftly report on its internal review of more than $6 billion in bond sales for 1MDB.

59.     Following this news, Goldman Sachs's stock price fell $3.28 per share, or 2.14%, to close at $149.89 on  June 10, 2016.

60.     Nonetheless, Goldman Sachs continued to deny any culpability in connection with 1MDB-related misconduct.  On or around July 20, 2016, amid news from multiple news outlets that the FBI and other U.S. regulators were investigating Goldman Sachs's role in the 1MDB fraud and money-laundering scandal, a spokesman for Goldman Sachs stated:  "We helped raise money for a sovereign wealth fund that was designed to invest in Malaysia. ***We had no visibility into whether some of those funds may have been subsequently diverted to other purposes.***"  (Emphasis added.)

61.     On August 4, 2016, Goldman Sachs filed a Quarterly Report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended June 30, 2016 (the "Q2 2016 10-Q").   According to the Q2 2016 10-Q, Asia accounted for $897 million, or 11%, of total net revenues, and $214 million, or 9%, of Goldman Sachs's total pre-tax earnings for the quarter.

62.     The Q2 2016 10-Q's discussion of "Regulatory Investigations and Reviews and Related Litigation" merely stated, in relevant part:

> [Goldman Sachs] and certain of its affiliates are subject to a number of other investigations and reviews by, and in some cases have received subpoenas and requests for documents and information from, various governmental and regulatory bodies and self-regulatory organizations and litigation and shareholder requests relating to various matters relating to the firm's businesses and operations, including . . . [t]ransactions involving government-related financings and other matters, ***including those related to 1Malaysia Development Berhad (1MDB), a sovereign wealth fund in Malaysia***, municipal securities, including wall-cross procedures and conflict of interest disclosure with respect to state and municipal clients, the trading and structuring of municipal derivative instruments in connection with municipal offerings, political contribution rules, municipal advisory services and the possible impact of credit default swap transactions on municipal issuers[.]

(Emphasis added.)  Notably, this boilerplate statement wholly failed to disclose the participation of high-level Goldman Sachs personnel, including two former managing directors (Leissner and Ng), in fraud and money laundering.

63.     On November 3, 2016, Goldman Sachs filed a Quarterly Report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter and year ended September 30, 2016 (the "Q3 2016 10-Q").   According to the Q3 2016 10-Q, Asia accounted for $1.39 billion, or 17%, of total net revenues, and $543 million, or 19%, of Goldman Sachs's total pre-tax earnings for the quarter.

64.     With respect to the 1MDB scandal, the Q3 2016 10-Q's discussion of "Regulatory Investigations and Reviews and Related Litigation" merely included another boilerplate statement, substantively similar to the representations described *supra* at ¶ 62, that wholly failed to disclose the participation of high-level Goldman Sachs personnel in fraud and money laundering.

65.     On February 27, 2017, Goldman Sachs filed an Annual Report on Form 10-K with the SEC, announcing the Company's financial and operating results for the quarter and year ended December 31, 2016 (the "2016 10-K").  According to the 2016 10-K, Asia accounted for $4.42 billion, or 14%, of total net revenues, and $870 million, or 12%, of Goldman Sachs's total pre-tax earnings in 2016.

66.     With respect to the 1MDB scandal, the 2016 10-K's discussion of "Regulatory Investigations and Reviews and Related Litigation" merely included another boilerplate statement, substantively similar to the representations described *supra* at ¶ 62, that wholly failed to disclose the participation of high-level Goldman Sachs personnel in fraud and money laundering.

67.     Likewise, the 2016 10-K contained merely generic, boilerplate representations with respect to the Company's risk of regulatory enforcement "relating to corrupt and illegal payments and money laundering," citing "the geographical diversity of [Goldman Sachs's] operations, employees, clients and customers, as well as the vendors and other third parties that [the Company] deal[s] with," while touting Goldman Sachs's purported prior and continuing investment in "significant resources in training and in compliance monitoring."

68.     Appended as exhibits to the 2016 10-K were signed certifications pursuant by Defendants Blankfein and Schwartz, attesting "that the Company's Annual Report on Form 10-K

for the year ended December 31, 2016 . . . fully complies with the requirements of Section 13(a) or 15(d), as applicable, of the Securities Exchange Act of 1934 and that the information contained in the Report fairly presents, in all material respects, the financial condition and results of operations of the Company."

69.     On May 4, 2017, Goldman Sachs filed a Quarterly Report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended March 31, 2017 (the "Q1 2017 10-Q").  According to the Q1 2016 10-Q, Asia accounted for $1.21 billion, or 15%, of total net revenues, and $393 million, or 15%, of Goldman Sachs's total pre-tax earnings for the quarter.

70.     With respect to the 1MDB scandal, the Q1 2017 10-Q's discussion of "Regulatory Investigations and Reviews and Related Litigation" merely included another boilerplate statement, substantively similar to the representations described *supra* at ¶ 53, that wholly failed to disclose the participation of high-level Goldman Sachs personnel in fraud and money laundering.

71.     On August 4, 2017, Goldman Sachs filed a Quarterly Report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended June 30, 2017 (the "Q2 2017 10-Q").  According to the Q2 2017 10-Q, Asia accounted for $946 million, or 12%, of total net revenues, and $233 million, or 9%, of Goldman Sachs's total pre-tax earnings for the quarter.

72.     With respect to the 1MDB scandal, the Q2 2017 10-Q's discussion of "Regulatory Investigations and Reviews and Related Litigation" merely included another boilerplate statement, substantively similar to the representations described *supra* at ¶ 62, that

wholly failed to disclose the participation of high-level Goldman Sachs personnel in fraud and money laundering.

73.     On November 3, 2017, Goldman Sachs filed a Quarterly Report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended September 30, 2017 (the "Q3 2017 10-Q").  According to the Q3 2017 10-Q, Asia accounted for $1.39 billion, or 17%, of total net revenues, and $514 million, or 17%, of Goldman Sachs's total pre-tax earnings for the quarter.

74.     With respect to the 1MDB scandal, the Q3 2017 10-Q contained merely the following boilerplate representation:

> **1Malaysia Development Berhad (1MDB)-Related Matters**
> The firm has received subpoenas and requests for documents and information from various governmental and regulatory bodies and self-regulatory organizations as part of investigations and reviews relating to financing transactions and other matters involving 1MDB, a sovereign wealth fund in Malaysia. The firm is cooperating with all such governmental and regulatory investigations and reviews.

Again, this wholly failed to disclose the participation of high-level Goldman Sachs personnel in fraud and money laundering.

75.     On February 26, 2018, Goldman Sachs filed an Annual Report on Form 10-K with the SEC, announcing the Company's financial and operating results for the quarter and year ended December 31, 2017 (the "2017 10-K").  According to the 2017 10-K, Asia accounted for $4.82 billion, or 15%, of total net revenues, and $1.24 billion, or 28%, of Goldman Sachs's total pre-tax earnings in 2017.

76.     With respect to the 1MDB scandal, the 2017 10-K merely included another boilerplate statement, under the heading "1Malaysia Development Berhad (1MDB)-Related Matters", substantively similar to the representations described *supra* at ¶ 74, that wholly failed

to disclose the participation of high-level Goldman Sachs personnel in fraud and money laundering.

77.     Likewise, the 2017 10-K contained merely generic, boilerplate representations with respect to the Company's risk of regulatory enforcement "relating to corrupt and illegal payments and money laundering," citing "the geographical diversity of [Goldman Sachs's] operations, employees, clients and customers, as well as the vendors and other third parties that [the Company] deal[s] with," while touting Goldman Sachs's purported prior and continuing investment in "significant resources in training and in compliance monitoring."

78.     Appended as exhibits to the 2017 10-K were signed certifications pursuant by Defendants Blankfein and Chavez, attesting "that the Company's Annual Report on Form 10-K for the year ended December 31, 2017 . . . fully complies with the requirements of Section 13(a) or 15(d), as applicable, of the Securities Exchange Act of 1934 and that the information contained in the Report fairly presents, in all material respects, the financial condition and results of operations of the Company."

79.     On May 4, 2018, Goldman Sachs filed a Quarterly Report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended March 31, 2017 (the "Q1 2018 10-Q").  According to the Q1 2018 10-Q, Asia accounted for $1.55 billion, or 15%, of total net revenues, and $533 million, or 16%, of Goldman Sachs's total pre-tax earnings for the quarter.

80.     With respect to the 1MDB scandal, the Q1 2018 10-Q merely included another boilerplate statement, under the heading "1Malaysia Development Berhad (1MDB)-Related Matters", substantively similar to the representations described *supra* at ¶ 74, that wholly failed to disclose the participation of high-level Goldman Sachs personnel.

81.     On August 3, 2018, Goldman Sachs filed a Quarterly Report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended June 30, 2018 (the "Q2 2018 10-Q").  According to the Q2 2018 10-Q, Asia accounted for $1.11 billion, or 12%, of total net revenues, and $234 million, or 7%, of Goldman Sachs's total pre-tax earnings for the quarter.

82.     With respect to the 1MDB scandal, the Q2 2018 10-Q merely included another boilerplate statement, under the heading "1Malaysia Development Berhad (1MDB)-Related Matters", substantively similar to the representations described *supra* at ¶ 74, that wholly failed to disclose the participation of high-level Goldman Sachs personnel in fraud and money laundering.

83.     The statements referenced in ¶¶ 52-82 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Goldman Sachs participated in a fraud and money-laundering scheme in collusion with 1MDB; (ii) the foregoing conduct, when revealed, would foreseeably subject Goldman Sachs to heightened regulatory investigation and enforcement; and (iii) as a result, Goldman Sachs's public statements were materially false and misleading at all relevant times.

84.     On November 1, 2018, U.S. federal prosecutors in the E.D.N.Y. unsealed indictments against Leissner and Ng related to the 1MDB probe, explicitly describing them as "agents acting within the scope of their employment on behalf of" the Company "with the intent, at least in part, to benefit" Goldman Sachs.  That same day, the United States Attorney's Office for the E.D.N.Y. announced that Leissner's guilty plea was unsealed for "a two-count criminal

information charging Leissner with conspiring to launder money and conspiring to violate the FCPA [Foreign Corrupt Practices Act] by both paying bribes to various Malaysian and Abu Dhabi officials and circumventing the internal accounting controls of the Financial Institution while he was employed by it." The U.S. Attorney's Office also stated that, "[a]ccording to court filings, Leissner has been ordered to forfeit $43,700,000 as a result of his crimes."

85.     On November 8, 2018, a report by *Bloomberg News* detailed the personal involvement of Blankfein in a meeting to establish ties with Malaysia and its new sovereign wealth fund that was referenced in the court documents unsealed the prior week. In a November 8, 2018 article entitled "Goldman's Blankfein Said to Have Attended 2009 1MDB Meeting," *Bloomberg News* noted that "Blankfein was the unidentified high-ranking Goldman Sachs executive referenced in U.S. court documents who attended a 2009 meeting with the former Malaysian prime minister," and that "[t]he meeting was arranged with the help of men who are now tied to the subsequent plundering of the 1MDB fund[.]"

86.     On this news, Goldman Sachs's stock price fell by $9.00, or nearly 4%, closing at $222.65 on November 9, 2018.

87.     On November 12, 2018, Malaysian government officials denounced Goldman Sachs's role in the 1MDB scandal. Malaysian Prime Minister Mahathir Mohamad stated that "[t]here is evidence that Goldman Sachs has done things that are wrong" and "[o]bviously we have been cheated through the compliance by Goldman Sachs people." Meanwhile, the country's Finance Minister Lim Guan Eng said that Malaysia would seek a "full refund" of the approximately $600 million in fees that the Company earned in connection with 1MDB's $6.5 billion bond deal.

88.     Following this news, Goldman Sachs's stock price fell $16.60 per share, or nearly 7.5%, to close at $206.05 on November 12, 2018.

89.     On December 17, 2018, multiple news outlets reported that Malaysia had filed criminal charges against Goldman Sachs and two former executives for their role in the 1MDB fraud and money-laundering scandal. That same day, in response to these charges, Goldman Sachs denied any wrongdoing through its spokesman Edward Naylor, who stated: "We believe these charges are misdirected and we will vigorously defend them and look forward to the opportunity to present our case . . . . The firm continues to cooperate with all authorities investigating these matters."

90.     Following this news, Goldman Sachs's stock price fell $4.76 per share, or 2.76%, to close at $168.01 on December 17, 2018.

91.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

92.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Goldman Sachs securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

93.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Goldman Sachs securities were actively traded on

the NYSE.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Goldman Sachs or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

94.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

95.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

96.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Goldman Sachs;

- whether the Individual Defendants caused Goldman Sachs to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Goldman Sachs securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

97.   A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

98.   Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Goldman Sachs  securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NYSE and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Goldman Sachs securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

99.   Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

100.   Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State*

*of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

<u>**COUNT I**</u>

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

101.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

102.    This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

103.    During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did:  (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Goldman Sachs securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Goldman Sachs securities and options at artificially inflated prices.   In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

104.    Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Goldman Sachs securities.  Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Goldman Sachs finances and business prospects.

105.    By virtue of their positions at Goldman Sachs , Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants.  Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth.  In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

106.    Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control.  As the senior managers and/or directors of Goldman Sachs, the Individual Defendants had knowledge of the details of Goldman Sachs internal affairs.

107.    The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of

Goldman Sachs.   As officers and/or directors of a publicly-held Company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Goldman Sachs businesses, operations, future financial condition and future prospects.   As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Goldman Sachs securities was artificially inflated throughout the Class Period.   In ignorance of the adverse facts concerning Goldman Sachs business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Goldman Sachs securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

108.   During the Class Period, Goldman Sachs securities were traded on an active and efficient market.   Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Goldman Sachs securities at prices artificially inflated by Defendants' wrongful conduct.   Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.   At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Goldman Sachs securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.   The market price of Goldman Sachs securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

109.    By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

110.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against The Individual Defendants)**

111.    Plaintiff repeats and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

112.    During the Class Period, the Individual Defendants participated in the operation and management of Goldman Sachs, and conducted and participated, directly and indirectly, in the conduct of Goldman Sachs business affairs.  Because of their senior positions, they knew the adverse non-public information about Goldman Sachs misstatement of income and expenses and false financial statements.

113.    As officers and/or directors of a publicly owned Company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Goldman Sachs financial condition and results of operations, and to correct promptly any public statements issued by Goldman Sachs which had become materially false or misleading.

114.    Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press

27

releases and public filings which Goldman Sachs disseminated in the marketplace during the Class Period concerning Goldman Sachs results of operations.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Goldman Sachs to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Goldman Sachs within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Goldman Sachs securities.

115.    Each of the Individual Defendants, therefore, acted as a controlling person of Goldman Sachs.  By reason of their senior management positions and/or being directors of Goldman Sachs, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Goldman Sachs to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of Goldman Sachs and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

116.    By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Goldman Sachs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.    Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.      Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.      Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.      Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated:  March 11, 2019                          Respectfully submitted,


                                                **POMERANTZ LLP**

                                                */s/ Jeremy A. Lieberman*
                                                Jeremy A. Lieberman
                                                J. Alexander Hood II
                                                Jonathan Lindenfeld
                                                600 Third Avenue, 20th Floor
                                                New York, New York 10016
                                                Telephone: (212) 661-1100
                                                Facsimile: (212) 661-8665
                                                Email: jalieberman@pomlaw.com
                                                Email: ahood@pomlaw.com
                                                Email: jlindenfeld@pomlaw.com

                                                **POMERANTZ LLP**
                                                Patrick V. Dahlstrom
                                                10 South La Salle Street, Suite 3505
                                                Chicago, Illinois 60603
                                                Telephone:  (312) 377-1181
                                                Facsimile:  (312) 377-1184
                                                Email:  pdahlstrom@pomlaw.com

                                                *Attorneys for Plaintiff*