**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DANIEL PLAUT, Individually and on Behalf of All Others Similarly Situated,<br><br>                          Plaintiff,<br><br>     v.<br><br>THE GOLDMAN SACHS GROUP, INC., LLOYD C. BLANKFEIN, HARVEY M. SCHWARTZ, and R. MARTIN CHAVEZ,<br><br>                          Defendants. | Case No.  1:18-cv-12084-VSB |

**REPLY MEMORANDUM OF LAW: (1) IN FURTHER SUPPORT OF THE MOTION OF MEITAV DASH PROVIDENT FUNDS AND PENSION LTD. FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL, AND (2) IN OPPOSITION TO COMPETING MOTIONS**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ....................................................................................... 1

ARGUMENT ................................................................................................................. 2

I.    Meitav Is the Most Adequate Plaintiff........................................................... 2

    A.    Meitav Has the Largest Financial Interest in the Relief Sought by the Class......... 2

    B.    The Loss Calculation Methodologies Proposed by AP7 Should be Rejected ........ 3

    C.    Meitav's Losses Are Greatest Even Under AP7's *Dura*-Based Loss Analysis ...... 7

II.   AP7 Is Inadequate and Subject to Unique Defenses....................................... 9

CONCLUSION............................................................................................................ 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acticon AG v. China N.E. Petroleum Holdings Ltd*.,
   692 F.3d 34 (2d Cir. 2012)................................................................................8

*Bensley v. FalconStor Software, Inc*.,
   277 F.R.D. 231 (E.D.N.Y. 2011)....................................................................8

*Bodri v. GoPro, Inc*.,
   2016 U.S. Dist. LEXIS 57559 (N.D. Cal. Apr. 28, 2016) ..............................5

*City of Riviera Beach Gen. Emples. Ret. Sys. v. Macquarie Infrastructure Corp.*,
   2019 U.S. Dist. LEXIS 14860 (S.D.N.Y. Jan. 30, 2019)...............................2

*Cohen v. Kitov Pharm. Holdings, Ltd*.,
   2018 U.S. Dist. LEXIS 45676 (S.D.N.Y. Mar. 20, 2018) ..............................8

*Dura Pharmaceuticals, Inc. v. Broudo*,
   544 U.S. 336 (2005)............................................................................. *passim*

*Erica P. John Fund, Inc. v. Halliburton Co*.,
   131 S. Ct. 2179 (2011)...................................................................................6

*Fialkov v. Celladon Corp.*,
   2015 U.S. Dist. LEXIS 192311 (S.D. Cal. Dec. 9, 2015)...............................4

*Foley v. Transocean Ltd.*,
   272 F.R.D. 126 (S.D.N.Y. 2011) ...................................................................2

*Galmi v. Teva Pharm. Indus., Ltd*.,
   302 F. Supp. 3d 485 (D. Conn. 2017)........................................................4, 8

*Glickenhaus & Co. v. Household Int'l*,
   787 F.3d 408 (7th Cir. 2015) .........................................................................6

*Goodwin v. Anadarko Petro. Corp.*,
   2010 U.S. Dist. LEXIS 147763 (S.D.N.Y. Nov. 15, 2010) ............................3

*Gutman v. Sillerman*,
   2015 U.S. Dist. LEXIS 179553 (S.D.N.Y. Dec. 8, 2015) ............................4, 8

*Hom v. Vale, S.A.*,
   2016 U.S. Dist. LEXIS 28863 (S.D.N.Y. Mar. 7, 2016) ...............................3

ii

*In re Allied Nevada Gold Corp. Sec. Litigation*,
No. 3:14-cv-00175 (D. Nev.) Dkt. No. 36 ........................................................6, 7

*In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*,
258 F.R.D. 260 (S.D.N.Y. 2009) .......................................................................3

*In re: Bank of America Corp. Securities, Derivative and ERISA Litigation*
No. 1:09-md-02058 (S.D.N.Y), Dkt No. 767-1 .................................................9

*In re Comverse Technology, Inc. Securities Litigation*,
2007 WL 680779 (E.D.N.Y. Mar. 2, 2007) ......................................................4

*In re Doral Fin. Corp. Sec. Litig.*,
414 F. Supp. 2d 398 (S.D.N.Y. 2006)...............................................................5

*In re Facebook, Inc.*,
288 F.R.D. 26 (S.D.N.Y. 2012) ........................................................................3

*In re GE Sees. Litig.*,
2009 U.S. Dist. LEXIS 69133 (S.D. N.Y. July 29, 2009) .................................9, 10

*In re Gentiva Sec. Litig.*,
281 F.R.D. 108 (E.D.N.Y. 2012) ......................................................................4

*In re LightInTheBox Holding Co., Sec. Litig.*,
2013 U.S. Dist. LEXIS 165842 (S.D.N.Y. Nov. 21, 2013) ...............................3

*In re: Longtop Fin. Techs. Ltd.*,
No 1:11-cv-03658 (S.D.N.Y.), Dkt. No. 276.....................................................9

*In re Star Gas Sec. Litig.*,
2005 U.S. Dist. LEXIS 5827 (D. Conn. Apr. 8, 2005) ......................................5

*In re Veeco Instruments, Inc.*,
233 F.R.D. 330 (S.D.N.Y. 2005) .......................................................................3

*Ire Watchguard Sec. Litig.*,
2005 U.S. Dist. LEXIS 40923 (W.D. Wash. July 13, 2005) ..............................4

*Juliar v. SunOpta, Inc.*,
2009 U.S. Dist. LEXIS 58118 (S.D. N.Y. Jan. 30, 2009)...................................8

*Khunt v. Alibaba Grp. Holding Ltd.*,
102 F. Supp. 3d 523 (S.D.N.Y. 2015)...............................................................4

*McKenna v. Dick's Sporting Goods, Inc.*,
2018 U.S. Dist. LEXIS 31660 (S.D.N.Y. Feb. 27, 2018)...................................3

*Micholle v. Ophthotech Corp.*,
   2018 U.S. Dist. LEXIS 41120 (S.D.N.Y. Mar. 13, 2018) .......................................................3

*Nicolow v. Hewlett Packard Co.*,
   2013 U.S. Dist. LEXIS 29876 (N.D. Cal. Mar. 4, 2013)..........................................................5

*Peters v. Jinkosolar Holding Co.*,
   2012 U.S. Dist. LEXIS 38489 (S.D.N.Y. Mar. 19, 2012) .......................................................3

*Pipefitters Local No. 636 Defined Benefit Plan v. Bank of Am. Corp.*,
   275 F.R.D. 187 (S.D.N.Y. 2011) ............................................................................................10

*Plumbers & Pipefitters Nat'l Pension Fund v. Orthofix Int'l N.V.*,
   89 F. Supp. 3d 602 (S.D.N.Y. 2015)........................................................................................7

*Porzio v. Overseas Shipholding Grp.*,
   2013 U.S. Dist. LEXIS 14463 (S.D.N.Y. Feb. 1, 2013)..........................................................4

*Ret. Sys. v. Hartford Fin. Servs. Grp.*,
   269 F.R.D. 291 (S.D.N.Y. 2010) .............................................................................................3

*Richman v. Goldman Sachs Grp., Inc.*,
   274 F.R.D. 473 (S.D.N.Y. 2011) ..........................................................................................3, 5

*Sallustro v. CannaVest Corp.*,
   93 F. Supp. 3d 265 (S.D.N.Y. 2015)........................................................................................4

*Simmons v. Spencer*,
   2014 U.S. Dist. LEXIS 58743 (S.D.N.Y. Apr. 24, 2014).......................................................8

**Statutes**

Private Securities Litigation Reform Act of 1995 ................................................................1, 7, 9

**Rules**

Fed. R. Civ. P. 23 .......................................................................................................................1

Movant Meitav Dash Provident Funds and Pension Ltd. ("Meitav") respectfully submits this reply memorandum of law: (i) in further support of its motion for appointment as Lead Plaintiff and approval of its selection of Pomerantz as Lead Counsel (Dkt. No. 29); and (ii) in opposition to the competing motion of Sjunde AP-Fonden ("AP7") (Dkt. No. 25).[1]

### PRELIMINARY STATEMENT

No movant contests that Meitav has the greatest financial interest in this litigation under the last-in, first-out ("LIFO") loss calculation method—the most accepted method for determining financial interest under the Private Securities Litigation Reform Act of 1995 (the "PSLRA"). It is also uncontested that Meitav satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). Accordingly, Meitav should be appointed lead plaintiff.

Recognizing that the PSLRA requires the appointment of Meitav, AP7 has abandoned the very LIFO calculation proposed in its motion, now arguing for a loss calculation that purports to comply with *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005). *First*, courts rarely apply a *Dura* analysis instead of LIFO where, as here, it is alleged that the truth of the fraud "leaked out" over the course of multiple partial corrective disclosures spanning several years. *Second*, even if the Court were inclined to apply AP7's *Dura*-based analysis, when considering *all* the alleged partial corrective disclosures, Meitav still has the largest losses.

*Finally*, AP7 has established its *in*adequacy to act as fiduciaries for all Class members because it was willing to abandon the interests of the Class in order to benefit its lawyers by taking a position that *reduces* the Class's potential recovery and arguing against the recoverability of the Class's losses. Appointment of AP7 would also jeopardize the interests of

---

[1] Other competing motions were initially filed by putative Class members Zuheir R. Safe ("Safe") (Dkt. No. 15), IWA Forest Industry Pension Plan ("IWA Forest") (Dkt. No. 18), and Nebraska Investment Counsel ("Nebraska") (Dkt. No. 21). Safe, IWA Forest and Nebraska have since filed notices of non-opposition to the competing motions. Dkt. Nos. 35, 36, and 37.

the Class because it would be subject to the unique defense of standing, which at best would create a needless distraction and at worst would result in dismissal of all the Class' claims.

There is no need to burden the Class with an inadequate movant when the appointment of Meitav presents no such risk. Meitav is a sophisticated institutional investor that has the largest financial interest in the litigation and is ideally situated to protect and advance the interests of *all* class members. Accordingly, the Court should grant Meitav's motion.

<strong>ARGUMENT</strong>

**I.      Meitav Is the Most Adequate Plaintiff**

**A.      Meitav Has the Largest Financial Interest in the Relief Sought by the Class**

Courts recognize that financial loss is the most significant factor to be considered in determining which plaintiff has the "largest financial interest." *City of Riviera Beach Gen. Emples. Ret. Sys. v. Macquarie Infrastructure Corp.*, 2019 U.S. Dist. LEXIS 14860, at *11 (S.D.N.Y. Jan. 30, 2019) (Broderick, J.) ("The magnitude of the loss is the most significant factor"); *Foley v. Transocean Ltd.*, 272 F.R.D. 126, 128 (S.D.N.Y. 2011) (Buchwald, J.). Similarly, "courts in this district and others have stated a preference for LIFO over FIFO in assessing loss for purposes of the appointment of lead plaintiff." *Id.* at *14 n.8.

Under the foregoing analysis, it is undisputed that Meitav has the largest financial interest in the litigation by approximately $200,000, as shown in the below chart.

| Movant | Loss |
|--------|------|
| Meitav | $3,160,824 |
| AP7 | $2,914,452 |

Thus, Meitav has the largest financial interest in the relief being requested.[2]

---

[2] The initial certification timely filed by Meitav with its motion papers on February 19, 2019 (Dkt. No. 31-2) inadvertently omitted certain Class Period transactions in Goldman Sachs securities due to a clerical error. Meitav's revised certification (Dkt. No. 39-1) corrected the

**B.      The Loss Calculation Methodologies Proposed by AP7 Should be Rejected**

After submitting only LIFO-based damages in its motion and recognizing that its losses were lower than Meitav's, AP7 abruptly abandoned its proposed methodology, asserting for the first time in its opposition brief that a *Dura*-based loss calculation should be used instead.

Contrary to AP7's assertion, courts overwhelmingly do **not** perform a *Dura*-based loss calculation in assessing the plaintiff with the largest financial interest. *See, e.g., McKenna v. Dick's Sporting Goods, Inc.,* 2018 U.S. Dist. LEXIS 31660, at *10 (S.D.N.Y. Feb. 27, 2018) (Broderick, J.) (applying LIFO).[3] Even when movants expressly argue for a *Dura*-based loss calculation (as AP7 does here) courts often nevertheless apply the standard LIFO-based loss calculation, without ever addressing the proposed *Dura* calculation in the court's order.[4]

When courts do apply a *Dura*-based calculation (including in the cases upon which AP7 relies), it is almost always done when there is a single corrective disclosure (or two in close succession) at the end of the class period.[5]

---

error. Even under its initial certification, Meitav's $3,143,586 LIFO losses are higher than the $2,914,452 LIFO losses identified by AP7 in its motion.

[3] *See, also, Hom v. Vale, S.A.*, 2016 U.S. Dist. LEXIS 28863, at *10 (S.D.N.Y. Mar. 7, 2016) (Woods, J.); *Peters v. Jinkosolar Holding Co.*, 2012 U.S. Dist. LEXIS 38489, at *15 (S.D.N.Y. Mar. 19, 2012) (Oetken, J.); *In re Facebook, Inc.*, 288 F.R.D. 26, 36 (S.D.N.Y. 2012) (Sweet, J.); *City of Monroe Emps.' Ret. Sys. v. Hartford Fin. Servs. Grp.*, 269 F.R.D. 291, 295-296 (S.D.N.Y. 2010) (Buchwald, J.); *Goodwin v. Anadarko Petro. Corp.*, 2010 U.S. Dist. LEXIS 147763, at *5-6 (S.D.N.Y. Nov. 15, 2010) (Gardephe, J.); *In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*, 258 F.R.D. 260, 269 (S.D.N.Y. 2009) (Chin, J.).

[4] *See, e.g. Hom*, 2016 U.S. Dist. LEXIS 28863, at *10 (court applying LIFO despite movant arguing for *Dura* analysis at No. 1:15-cv-9539-GHW,  Dkt. Nos. 47, 51); *Richman v. Goldman Sachs Grp., Inc.*, 274 F.R.D. 473 (S.D.N.Y. 2011) (Crotty, J.) (court applying LIFO despite movant arguing for *Dura* analysis at No. 10-cv-03461, , Dkt. Nos. 30, 42).

[5] *See, e.g.,Micholle v. Ophthotech Corp.*, 2018 U.S. Dist. LEXIS 41120, at *20 (S.D.N.Y. Mar. 13, 2018) (Broderick, J.) (only one alleged corrective disclosure occurring on December 12, 2016); *In re LightInTheBox Holding Co., Sec. Litig.*, 2013 U.S. Dist. LEXIS 165842 (S.D.N.Y. Nov. 21, 2013) (Castel, J.) (only one corrective disclosure occurring on August 19, 2013); *In re Veeco Instruments, Inc.*, 233 F.R.D. 330 (S.D.N.Y. 2005) (McMahon, J.) (only one corrective

By contrast, courts steer clear of a *Dura*-based calculation where, as here, it is alleged that the truth concerning the fraud leaked out over several partial corrective disclosures, particularly over a significant period of time. *See In re Gentiva Sec. Litig.*, 281 F.R.D. 108, 115 (E.D.N.Y. 2012) (in-and-out losses are "not usually raised in the context of who has the largest financial interest….[M]ost Courts who have refrained from appointing ["a plaintiff who has sold the majority or a portion of its stock prior to a corrective disclosure"] have done so in the complete absence of partial corrective disclosures or in light of speculative or highly questionable partial disclosures"). This is because where there exists multiple corrective disclosures (and intervening misrepresentations), the calculation of losses (and gains) from the fraud is a complicated matter and there is a substantial likelihood that a plaintiff has recoverable losses even if it purchased and sold its securities in between disclosures. *See Ire Watchguard Sec. Litig.*, 2005 U.S. Dist. LEXIS 40923, at *14-15, *15 n.6 (W.D. Wash. July 13, 2005) ("The Supreme Court [in *Dura*] recognized… that numerous factors may affect the price of a security. The Supreme Court did not suggest that a court should guess about the effect of these as-yet-unknown factors  in selecting a lead plaintiff"); *Fialkov v. Celladon Corp.*, 2015 U.S. Dist. LEXIS 192311, at *15 (S.D. Cal. Dec. 9, 2015) (rejecting *Dura* analysis where there were partial

---

disclosure occurring on February 10, 2005); *Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523 (S.D.N.Y. 2015) (McMahon, J.) (corrective disclosures occurred on January 28 and 29, 2015); *Gutman v. Sillerman*, 2015 U.S. Dist. LEXIS 179553 (S.D.N.Y. Dec. 8, 2015) (McMahon, J.) (corrective disclosures occurred on August 14 and 17, 2015); *Sallustro v. CannaVest Corp.*, 93 F. Supp. 3d 265, 273 (S.D.N.Y. 2015) (Gardephe, J.) (corrective disclosures occurred on April 3 and April 14, 2014); *Porzio v. Overseas Shipholding Grp.*, 2013 U.S. Dist. LEXIS 14463 (S.D.N.Y. Feb. 1, 2013) (Scheindlin, J.) (corrective disclosures occurred on October 3 and 22, 2012); *In re Comverse Technology, Inc. Securities Litigation*, 2007 WL 680779, at *8 (E.D.N.Y. Mar. 2, 2007) (alleged corrective disclosures occurred on March 14 and April 17, 2006); *Galmi v. Teva Pharm. Indus*., Ltd., 302 F. Supp. 3d 485, 492 (D. Conn. 2017) (corrective disclosures occurred on August 4 and November 3, 2016). Moreover, these cases only exclude shares sold prior to the ***first*** corrective disclosure. Here, AP7 also seeks to exclude shares purchased and sold ***between*** partial corrective disclosures.

corrective disclosures: "the *Dura*-loss analysis advanced by the Greenfields does not appear to be the majority view of financial interest analysis adopted by courts in this district or this circuit … [T]he Court is inclined to adopt the most expansive view of potential recovery in determining which party has the greatest financial interest for the appointment as lead plaintiff.").[6]

AP7 admitted the inapplicability of a *Dura* analysis by presenting its losses only under LIFO in its opening motion, as all movants did. Thus, AP7's position has improperly "changed and adjusted, depending on conditions, so that the lead plaintiff status (and the right to select counsel) may be achieved." *Richman*, 274 F.R.D. at 477. Courts have refused to reward such gamesmanship. *See Bodri v. GoPro, Inc*., 2016 U.S. Dist. LEXIS 57559, at *12 (N.D. Cal. Apr. 28, 2016) (refusing to use the "retained shares" methodology when the moving parties initially focused solely on LIFO: "This fact alone counsels in favor of adopting the LIFO methodology" and observing that such calculations are not useful where "gradual disclosures are involved, because those methods assume a constant 'fraud premium' throughout the class period."); *Nicolow v. Hewlett Packard Co.*, 2013 U.S. Dist. LEXIS 29876, at *18-20 (N.D. Cal. Mar. 4, 2013) (finding that "[t]he weight of authority puts the most emphasis on the competing movants' estimated losses, using a 'last in, first out ('LIFO') methodology…. Tellingly, VRS itself made no reference to net shares purchased or a retained shares calculation in its opening motion, … shifting its argument only after PGGM came forward with larger LIFO losses" and stating that a LIFO  calculation is preferable where "[t]he allegations [] involve multiple partial corrective

---

[6] This is consistent with courts' general refusal to prematurely limit the size, nature or losses of a class prior to the filing of an amended complaint by the movant appointed lead plaintiff. *See, In re Star Gas Sec. Litig.*, 2005 U.S. Dist. LEXIS 5827, at *19 (D. Conn. Apr. 8, 2005) (holding that it was "premature" to limit plaintiff class "at such an early stage of the litigation" before appointing lead plaintiff and recognizing that appointed lead plaintiffs would have opportunity to amend complaint to include allegations not made by first-filing plaintiff; *In re Doral Fin. Corp. Sec. Litig.*, 414 F. Supp. 2d 398, 402-03 (S.D.N.Y. 2006) (Owen, J.) ("the use of the longer, most inclusive class period . . . is proper, as it encompasses more potential class members.").

disclosures"). Notably, in each of the 15 lead plaintiff motions filed by AP7 over the last 13 years that Meitav's counsel located, AP7 **never** proposed a *Dura* analysis. *See* Appendix I.

A request **by a plaintiff** to exclude from the class all investors that sold their stock prior to a disclosure in the initial complaint prior to development of a factual record is highly irresponsible, especially where, as here, it is alleged the truth leaked out through multiple partial corrective disclosures since at least October 2015. *See Glickenhaus & Co. v. Household Int'l,* 787 F.3d 408 (7th Cir. 2015) (discussing and endorsing a "leakage" theory of loss causation). In *Erica P. John Fund, Inc. v. Halliburton Co*., the Supreme Court held that courts should not reach the issue of loss causation even when performing a more searching analysis of class representatives at the class certification stage. 131 S. Ct. 2179, 2186 (2011). It is antithetical to the duties of a lead plaintiff (and counsel) to argue **against** the interests of the class members.

Indeed, AP7's counsel, Kessler Topaz Meltzer & Check, LLP ("Kessler Topaz"), has previously argued against the very *Dura*-based calculation they propose here:

> "[C]ourts frequently decline to weigh loss causation considerations pursuant to *Dura* at the lead plaintiff stage because it requires premature factual determinations regarding when a fraud was disclosed and how damages are tabulated well before fact discovery and prior to the plaintiff having an opportunity to fully develop the case. …
>
> Even if a "*Dura*" based approach…were ever appropriate at the lead plaintiff stage, courts uniformly reject it where, as here, there are multiple dates on which the fraud alleged became known to investors through a multiple "partial disclosures."

*In re Allied Nevada Gold Corp. Sec. Litigation*, No. 3:14-cv-00175 (D. Nev.) Dkt. No. 36 at 11-12 (emphasis supplied). Kessler Topaz's argument against *Dura* continued:

> [T]here is no reason for the Court to resort to a *Dura* analysis in assessing financial interest when the "***overwhelming trend***"—even after the Supreme Court's decision in *Dura*—is "to use LIFO." …
>
> [E]ven if [the] loss calculation methods advanced by the competing movants were appropriate, which they are not, the [other movants'] opposition briefs have established their **in**adequacy to act as fiduciaries for all Class members. Here, both [movants] are willing to abandon the interests of the Class in order to benefit their lawyers by taking

> positions that **reduce** the Class's potential recovery by ignoring corrective events and arguing against the recoverability of the Class's losses. …
>
> There is no need to saddle the class with inadequate movants when the appointment of [movant] presents no such risk and is the only proper outcome under the PSLRA.

*Id.* Dkt. No. 47 at 2-3 (case citations omitted) (emphasis in original). As AP7's counsel has conceded, they have advanced their own interest to the detriment of the Class and should be precluded from serving as lead plaintiff and lead counsel.

### C.   Meitav's Losses Are Greatest Even Under AP7's *Dura*-Based Loss Analysis

Even if the *Dura*-based loss analysis proposed by AP7 is applied, Meitav has the greatest losses. When courts <u>do</u> conduct a *Dura*-based loss analysis involving multiple corrective disclosures they consider <u>all</u> partial corrective disclosures presented by movants in complaints and declarations. Here, further investigation has revealed that Goldman Sachs was implicated in the 1MDB scandal before March 7, 2016.

- On <u>October 14, 2015</u>, *The Wall Street Journal* published articles entitled "U.S. Examines Goldman Sachs Role in 1MDB Transaction" and "Goldman Entangled In Malaysia Fund Scandal," reporting the FBI and DOJ were investigating Goldman Sachs's role in 1MDB in which the bank garnered $600 million in fees. *See* Lieberman Decl. Exs. 1 and 2; Am. Compl. (Dkt. 43) ¶ 50. Goldman Sachs's stock price declined $1.46 per share on this news. *See* Lieberman Decl. Ex. 3; Am. Compl. ¶51. The same day, *The Street* published an article entitled "Goldman Sachs (GS) Stock Down, Under Investigation in Malaysia Fund Probe." Lieberman Decl. Ex. 4; Am. Compl. ¶51.

- On <u>June 10, 2016</u>, *Bloomberg* published an article, entitled "Goldman Sachs Queried About 1MDB by New York Bank Regulator," reporting that New York's Department of Financial Services directed Goldman Sachs to report on its internal review of $6 billion in bond sales for 1MDB. *See* Lieberman Decl. Ex. 5; Am. Compl. ¶58. Goldman' Sachs's stock price declined $3.28 per share on this news. *See* Lieberman Decl. Ex. 3; Amend. Compl. ¶59.

In light of these additional partial corrective disclosures,[7] which are identified in the Lieberman Declaration and the Amended Complaint (Dkt. No. 43), almost all of Meitav's losses

---

[7] "[T]his Court and other courts within this District have concluded that the disclosure of an investigation 'into a particular business practice can be sufficient to allege loss causation with respect to alleged misstatements regarding that practice.'" *Plumbers & Pipefitters Nat'l Pension*

can be considered even under AP7's proposed *Dura* analysis because almost all of Meitav's sales occurred after October 14, 2015. Dkt. No. 39-1. *See Simmons v. Spencer*, 2014 U.S. Dist. LEXIS 58743, at *14 (S.D.N.Y. Apr. 24, 2014) (Sweet, J.) (refusing to exclude a movant's losses incurred prior to first corrective disclosure alleged in the complaint when the movant presented sufficient evidence through a declaration to infer that there were three additional partial corrective disclosures prior to his sales in filings at No. 1:13-cv-08216, Dkt. No. 27 at 4-6 and Dkt. No. 28); *Juliar v. SunOpta, Inc.*, 2009 U.S. Dist. LEXIS 58118, at *7-9 (S.D.N.Y. Jan. 30, 2009) (refusing to exclude a movant's losses incurred prior to first corrective disclosure alleged in the complaint when the movant presented sufficient evidence through a declaration to infer that there "was substantial leakage of [] misconduct prior to" the complaint's first disclosure in filings at No. 08-cv-00933, Dkt. No. 27 at 3-5 and Dkt. No. 28).[8] Here, Meitav has retained Dr. Zachary Nye, a well-regarded damages expert in securities class actions, to apply Ken Kotz's *Dura* analysis to these additional partial corrective disclosures. As demonstrated in Dr. Nye's Declaration, under the *Dura* analysis proposed by AP7, Meitav's losses are **$3,130,027**, which is greater than AP7's *Dura* losses of **$3,095,545**, when all potential corrective disclosures are properly included. *See* Lieberman Decl. Ex. 6 (Nye Declaration), ¶ 7.

Notably, Meitav's losses are even greater than AP7's losses when AP7's losses are netted against its gains, which AP7's counsel has previously asserted is the appropriate method for

---

*Fund v. Orthofix Int'l N.V.*, 89 F. Supp. 3d 602, 620 (S.D.N.Y. 2015) (Koeltl, J.) (collecting cases); *see also Cohen v. Kitov Pharm. Holdings, Ltd.*, 2018 U.S. Dist. LEXIS 45676, at *19 (S.D.N.Y. Mar. 20, 2018) (Schofield, J.) (collecting cases).  Also, courts are "entitled to take judicial notice of well publicized stock prices." *Acticon AG v. China N.E. Petroleum Holdings Ltd.*, 692 F.3d 34, 37 n.1 (2d Cir. 2012).

[8] Courts conducting a *Dura* analysis consider additional partial corrective disclosures advanced in briefing for lead plaintiff even when, unlike here, the disclosures are not submitted through a declaration. *See, e.g., Galmi v. Teva Pharm. Indus., Ltd*., 302 F. Supp. 3d 485, 503 (D. Conn. 2017); *Bensley v. FalconStor Software, Inc.*, 277 F.R.D. 231, 236 (E.D.N.Y. 2011); *Gutman v. Sillerman,* 2015 U.S. Dist. LEXIS 179553 (S.D.N.Y. Dec. 8, 2015) (McMahon, J.).

calculating a class member's recoverable damages. *See In re: Longtop Fin. Techs. Ltd.*, No 1:11-cv-03658 (S.D.N.Y.), Dkt. No. 276 at 8 n.9; *In re: Bank of America Corp. Securities, Derivative and ERISA Litigation* No. 1:09-md-02058 (S.D.N.Y), Dkt No. 767-1 at 164-65. Under Kotz's analysis, **AP7 earned $537,997 in gains** from in-and-out transactions. *See* Nye Decl., ¶ 9. When these gains are netted out, **AP7's net *Dura* losses are only $2,557,548**.[9]

   To ensure the class is not irreparably damaged by AP7's self-serving advocacy, Plaintiff Daniel Plaut has taken the extra precaution of amending the complaint (Dkt. No. 43)[10] to expressly include these additional partial corrective disclosures. *See In re GE Sees. Litig.*, 2009 U.S. Dist. LEXIS 69133, at *12 (S.D. N.Y. July 29, 2009) (refusing to exclude a movant's losses from sales prior to the first corrective disclosure alleged in a complaint where another complaint alleged partial corrective disclosures prior to the sales); *In re GE Sec. Litig.*, 2009 U.S. Dist. LEXIS 69133, at *12 (S.D.N.Y. July 29, 2009) (Chin, J.) (same).[11]

## II.     AP7 Is Inadequate and Subject to Unique Defenses

   As discussed in Meitav's prior briefing and the Kent Declaration (Dkt. No. 42 at 9-22; 39-2), the PSLRA precludes the appointment of AP7 because it is "subject to unique defenses" due to its failure to demonstrate Article III standing, which Defendants will certainly challenge.

---

[9] AP7 failed to net out the $537,997 in gains from its *Dura*-based losses it presented in its briefing, improperly inflating its losses.

[10] On March 12, 2019, the Court issued a notice stating that, pursuant to Dkt. No. 8, an amended complaint cannot be filed until after an order appointing lead plaintiff. However, Dkt. No. 8 merely extends "[t]he time for lead plaintiff(s) to file an amended complaint..." The Order does not preclude Plaintiff Plaut from filing an amended complaint. For the Court's convenience, a copy of the Amended Complaint is attached as Exhibit 7 to the Lieberman Decl.

[11] Amendment of the complaint is proper here because (i) it is being done to protect the interests of the class, and (ii) movants could not have anticipated that AP7 would advance a *Dura* calculation under the facts of this case. Amendment will not require a new PSLRA notice to be sent because the amendment does not add a new cause of action or extend the class period.

The only possibility for AP7 to establish standing is through the "third-party standing" exception. However, its ability to do so is highly uncertain because the law is divided into two contradictory lines of case law and the Supreme Court has indicated that it should revisit third-party jurisprudence. Dkt. No. 42 at 19-20.  There is no dispute that AP7 cannot meet the more strict analysis because AP7 has not suffered an injury-in-fact. *Id*. at15-16. It is also unlikely that AP7 will meet the more lenient analysis because courts have found that investment managers like AP7 do not have third-party standing. *Id.* at 17 (collecting cases).

Having failed to establish its Article III standing, AP7 is clearly subject to unique defenses that render it incapable of serving as lead plaintiff, as a court in this District has previously held. *Pipefitters Local No. 636 Defined Benefit Plan v. Bank of Am. Corp.*, 275 F.R.D. 187, 191 (S.D.N.Y. 2011) (Pauley, J.). While Meitav anticipates that AP7 will attempt to submit in its reply papers evidence or expert declarations to rebut Professor Kent's well-reasoned analysis, therein lays the point.  A lead plaintiff's ability to represent the Class should not be subject to expert debate. The Class requires a solid lead plaintiff with no infirmities regarding its ability to pursue this action that could jeopardize the claims of the Class. *Id*. ("[AP7] submits the opinion of a Swedish law expert …. however … arguments could be raised regardingAP7's third party standing, which subjects it to a unique defense and may prejudice the class.").

The appointment of AP7 would be particularly nonsensical because it has also argued against the interests of the Class to further its own agenda, and the class will not be prejudiced by the appointment of Meitav, a sophisticated institutional investor that has the largest financial interest in the litigation and is ideally situated to protect the interests of ***all*** class members.

## CONCLUSION

For the foregoing reasons, Meitav respectfully requests that the Court grant its motion in its entirety, and deny the competing motions.

Dated:  March 12, 2019                          Respectfully submitted,


                                                POMERANTZ LLP

                                                */s/ Jeremy A. Lieberman*
                                                Jeremy A. Lieberman
                                                J. Alexander Hood II
                                                Jonathan D. Lindenfeld
                                                600 Third Avenue, 20th Floor
                                                New York, NY 10016
                                                Telephone: (212) 661-1100
                                                Facsimile: (212) 661-8665
                                                Email: jalieberman@pomlaw.com
                                                Email: ahood@pomlaw.com
                                                Email: jlindenfeld@pomlaw.com

                                                POMERANTZ LLP
                                                Patrick V. Dahlstrom
                                                Ten South LaSalle Street, Suite 3505
                                                Chicago, Illinois 60603
                                                Telephone: (312) 377-1181
                                                Facsimile: (312) 377-1184
                                                Email:  pdahlstrom@pomlaw.com

                                                *Counsel for Lead Plaintiff Movant Meitav DS*
                                                *Provident Funds and Pension Ltd. and*
                                                *Proposed Lead Counsel for the Class*

## APPENDIX I

## Cases in Which AP7 Moved For Lead Plaintiff

1. *Sjunde Ap-Fonden et al., v. General Electric Company, et al.*, No. 1: 17-cv-08457-JMF (S.D.N.Y. Nov. 1, 2017), Dkt. Nos. 97 at 2 (memorandum); 101-2 (loss chart);

2. *Shah v. Qualcomm Incorporated et al.*, No. 3:17-cv-00121-JAH-MSB (S.D. Cal. Jan 23, 2017), Dkt. Nos. 11-1 at 7 (memorandum); 11-7 (loss chart);

3. *Rosenberg v. Allergan PLC et al.*, No. 1:17-cv-00025-VEC (S.D.N.Y., Jan. 03. 2017), Dkt. Nos. 15 at 6-7 (memorandum); 16-2 (loss chart);

4. *Forden v. Allergan Plc et al.*, No. 2:16-cv-09449-KSH-CLW (D.N.J. Dec. 22, 2016), Dkt. Nos. 10 at 8 (memorandum); 10-4 (loss chart);

5. *Hefler et al v. Wells Fargo & Company et al.*, No. 3:16-cv-05479-JST (N.D. Cal. Sept. 26, 2016), Dkt. Nos. 28 at 8 (memorandum); 28-4 (loss chart);

6. *Elm Tree Investment L.P. v. Ocwen Financial Corporation, et al.*, No. 9:15-cv-80899-WPD (S.D. Fla. June 30, 2015), Dkt. Nos. 21-2 at 6-7 (memorandum);  21-5 (loss chart);

7. *In re: Cobalt International Energy, Inc. Securities Litigation*, No. 4:14-cv-03428 (S.D. Tex. Nov. 30, 2014), Dkt. Nos. 23 at 8 (memorandum); 24-3 (loss chart);

8. *In re American Capital Realties Litigation*, No. 1:14-cv-09006-AKH (S.D.N.Y. Nov. 12, 2014), Dkt. Nos. 8 at 13 (memorandum); 9-1 at 8-9 (loss chart);

9. *In re Genworth Financial, Inc. Securities Litigation*, No. 3:14-cv-00682-JAG-RCY (E.D. Va. Oct. 6, 2014), Dkt. Nos. 13 at 5-6 (memo); 13-5 (loss chart);

10. *In re JPMorgan Chase & Co. Securities Litigation*, No. 1:12-cv-03852-GBD (S.D.N.Y. May 14, 2012), Dkt. Nos. 14 at 7 (memorandum); 16-2 at 48-51 (loss chart)  20 at 4 (response);

11. *Louisiana Municipal Police Employees' Retirement System v. Green Mountain Coffee Roasters, Inc. et al.*, No. 2:11-cv-00289-wks (D.Vt. Nov. 29, 2011), Dkt. No. 8-1 at 8-9 (memorandum); 8-5 at 3 (loss chart);

12. *Anchorage Police & Fire Retirement System v. Bank of America Corporation et al.*, No. 1:11-cv-02216-WHP (S.D.N.Y. Mar. 30, 2011), Dkt. Nos. 6 at 7 (memorandum); 7 at 5-7 (loss chart);

13. *Monk v. Johnson & Johnson et al.*, No. 3:10-cv-04841-FLW-DEA (D.N.J. Sept. 31 2010), Dkt. Nos. 3-1 at 6 (memorandum); 3-4 (loss chart);

14. *Public Employees' Retirement Association of Colorado et al v. CitiGroup Inc. et al.*, No. 1:08-cv-00135-SHS (S.D.N.Y. Jan. 7, 2008), Dkt. Nos.  4 at 7 (memorandum); 5-4 (loss chart);

15. *Klein v. Dell, Inc. et al.*, No.  1:06-cv-00770-SS (W.D. Tex. Sept. 27, 2006), Dkt. Nos. 22 at 6 (memorandum); 22-1 at 22-24 (loss chart)