

**Jeremy A. Lieberman**
Managing Partner

March 22, 2019

**VIA ECF**

The Honorable Vernon S. Broderick
United States District Judge
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

      Re:    ***Plaut v. The Goldman Sachs Group, Inc. et al.*, No. 1:18-cv-12084 (S.D.N.Y.)**

Dear Judge Broderick:

We represent Movant Meitav Dash Provident Funds and Pension Ltd. ("Meitav") in the above-captioned action. We write to notify the Court of persuasive supplemental authority relevant to Meitav's pending motion for appointment as Lead Plaintiff and approval of Lead Counsel and in opposition to competing motions. Dkt. No. 29. Chief Judge McMahon's decision issued today in *Cook v. Allergan plc, et al.*, No. 1:18-cv-12089 (S.D.N.Y.) ("*Allergan*"), attached hereto as Exhibit A, directly supports a finding the *Dura*-based loss calculation proposed by movant Sjunde AP-Fonden ("AP7") should be rejected, and Meitav should be appointed Lead Plaintiff as it has the largest losses under the standard LIFO loss calculation.

In *Allergan*, movant DeKalb County Pension Fund ("DeKalb") proposed, as AP7 does here, using a *Dura*-based loss calculation that excluded all "in and out" transactions that took place during the class period, instead of using the standard LIFO calculation. *Id.* at 3. Chief Judge McMahon held that it was inappropriate to apply a *Dura*-based loss calculation because there were multiple partial corrective disclosures alleged:

For one thing, the appropriateness of employing *Dura* analysis at the lead plaintiff stage is subject to considerable dispute. For another it is not clear where a *Dura* analysis would lead in this case. Under *Dura* and its progeny, "any losses that [a plaintiff] may have incurred before [a defendant's] misconduct was *ever* disclosed to the public are not recoverable, because those losses cannot be proximately linked to the misconduct at issue in th[e] litigation." *In re Comverse*, 2007 WL

jalieberman@pomlaw.com

600 Third Avenue, New York, New York 10016   tel: 212.661.1100   www.pomerantzlaw.com

NEW YORK        CHICAGO        LOS ANGELES        PARIS

{00318291;3 }



The Honorable Vernon S. Broderick
March 22, 2019
Page 2

> 680779, at *4 (emphasis added). Here, allegations of fraud in the complaint
> suggest that the "fraud premium" may have varied throughout the Class Period as
> a result of, *inter alia*, partial corrective disclosures of Allergan's malfeasance.
> (*See, e.g.,* 18 Civ. 12219 Dkt. No. 1 (complaint).)

*Id.* at 4. The Court concluded: "Given the length of the pleaded class period (beginning in early 2017 and going to December 2018) and the documented decline in Allergan's share price during that period (at points dramatically), it would be unwise to embrace DeKalb's convoluted loss calculation methodology at the expense of BRS's considerably more straightforward [LIFO] calculations."[1]

Chief Judge McMahon also explained that "[t]he fact that DeKalb used the same methodology as BRS in its original moving papers [LIFO] – only to alter its calculation when it learned someone else had a larger loss – lends validity to the conclusion that the impact of *Dura* on the proposed lead plaintiffs' loss calculations is at best uncertain, and so should be discounted." *Id.*

Here, Chief Judge McMahon's analysis strongly supports rejecting AP7's proposed *Dura*-based loss calculation and appointing Meitav as Lead Plaintiff. *First*, it is undisputed that Meitav has the largest LIFO losses. *Second*, the Complaint alleges a class period of almost five years (from February 28, 2014 through December 17, 2018) and there are allegations of multiple partial corrective disclosures occurring as early as October 14, 2015 (*See* Dkt. No. 43 at ¶ 50; Dkt. No. 46 at 7), much greater than the almost two-year class period in *Allergan*. Thus, the "fraud premium" certainly varied throughout the Class Period, rending a *Dura*-based analysis unreliable and unhelpful. *Third*, AP7, like DeKalb in *Allergan*, used a LIFO calculation in its original moving papers, proposing a *Dura*-based analysis only after it realized Meitav had larger losses.

---

[1] Chief Judge McMahon noted that the use of a *Dura*-based analysis in certain cases can be distinguished based on those cases not alleging partial corrective disclosures, but instead alleging a short period at the end of the class period where the truth was revealed. *Id.* n. 4. Indeed, as noted in Meitav's reply brief, Chief Judge McMahon previously applied a *Dura*-based loss calculation in *In re Veeco Instruments, Inc.*, 233 F.R.D. 330 (S.D.N.Y. 2005) where there was only one corrective disclosure occurring at the end of the class period. *See* Dkt. No. 46 at 3 n.5.



The Honorable Vernon S. Broderick
March 22, 2019
Page 3

Respectfully,

Jeremy A. Lieberman

cc:     All Counsel of Record (by ECF)