# BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

ATTORNEYS AT LAW

NEW YORK • CALIFORNIA • LOUISIANA • ILLINOIS

GERALD H. SILK
jerry@blbglaw.com
212-554-1282

June 17, 2019

**VIA ECF**

The Honorable Vernon S. Broderick
United States District Judge
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

      Re:    *Plaut v. The Goldman Sachs Group, Inc., et al.*, No. 1:18-cv-12084 (S.D.N.Y.)

Dear Judge Broderick:

      We, along with Kessler Topaz Meltzer & Check, LLP, represent presumptive Lead Plaintiff Sjunde AP-Fonden ("AP7") in connection with the above-referenced class action. Although briefing on Lead Plaintiff appointment has long been completed, we are forced to respond to yet another submission by competing movant Meitav Dash Provident Funds and Pension Ltd. ("Meitav") of irrelevant briefing from an unrelated litigation that has no factual or legal connection to the matters before the Court. *See* ECF No. 52 (citing AP7's briefing in *Hedick v. The Kraft Heinz Co., et al.*, No. 1:19-cv-01339 (N.D. Ill.) ("*Kraft*")).

      AP7's brief in *Kraft* has no application here. In *Kraft*, AP7, citing to a competing movant's public admission that it invested heavily through over 250 commingled investment vehicles managed by outside advisors, argued that "*[i]f* any of the Kraft investments giving rise to the [movant]'s claimed losses were made through commingled vehicles, then the . . . [movant's members] have not satisfied [*W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP*, 549 F.3d 100 (2d Cir. 2008)]'s requirements for establishing their standing to assert claims **to recover those losses**." *See* ECF No. 52-1 at 2-3.[1] At no point did AP7 argue that the competing movant lacked any financial interest in the litigation simply because a portion of its investments were made in commingled funds. Moreover, none of the competing movants in *Kraft* addressed Meitav's primary (albeit incorrect) argument against AP7 here—the applicability of the "prudential exception" to Article III standing under *Huff*. In fact, recognizing the argument's utter lack of merit, none of the five competing movants in *Kraft* saw fit to challenge AP7's standing at all.[2]

      The Honorable George B. Daniels's analysis in *In re Winstar Communications Securities Litigation*, 290 F.R.D. 437 (S.D.N.Y. 2013) is illustrative. In *Winstar*, Judge Daniels concluded

---

[1]    All emphases herein are added.

[2]    Indeed, Mietav has not even attempted to distinguish the numerous decisions from this Circuit and elsewhere rejecting its argument as to AP7. *See, e.g.,* ECF No. 44 at 1-2, 5-7 (citing case law appointing AP7).

BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

The Honorable Vernon S. Broderick
June 17, 2019
Page 2

that "[m]anagers of foreign investment funds"—like AP7—"ha[ve] standing by virtue of *Huff*'s third party exception." *Id.* at 444. However, the court went on to note that, unlike these managers who have standing, investors in pooled funds (such as mutual or commingled funds) "could not themselves bring suit." *Id.* The question in *Kraft* related to whether a portion of the competing movant's losses came from ***indirect*** purchases made by commingled funds not whether the movant qualified under the "prudential exception." *See* ECF No. 52-1 at 6-7 (citing financial literature explaining that an investor in a commingled fund does "not hold shares of individual stocks; instead, it holds units in the commingled fund, which represent a pro rata share of all the commingled fund's investments"). Thus, the briefing from *Kraft* is wholly irrelevant.

In contrast to the irrelevant brief submitted by Meitav, a recent decision rejecting a lead plaintiff movant for filing an incorrect PSLRA certification, *Tomaszewski v. Trevena, Inc.*, No. 18-4378, 2019 WL 2288267 (E.D. Pa. May 29, 2019) ("*Trevena*"), attached hereto as Exhibit A, further confirms that Meitav's motion must be denied. As the Court is aware, following the expiration of the PSLRA's lead plaintiff deadline, Meitav submitted an untimely amended certification (ECF No. 39-1) adding 45,728 shares (representing $8.8 million in value and accounting for nearly 25% of the total volume of shares Meitav purportedly traded during the Class Period). *See* ECF No. 44 at 2-3. Meitav attempted to pass off its blunder as a "clerical error." But as *Trevena* makes clear, errors of this magnitude at this early stage of the litigation are disqualifying. As explained by the court, although the movant claimed the errors were "minor or inadvertent mistakes in absolute terms, they nonetheless speak to a level of carelessness" that raised doubt as to whether the movant "possesses the necessary adequacy and sophistication to be lead plaintiff." *Trevena*, 2019 WL 2288267, at *4. *Trevena* accords with this Court's decision in *Micholle v. Ophthotech Corp.*, where the Court likewise disqualified a movant that had made similar errors, concluding that they "militate against appointment and render [the movant] inadequate to serve as lead plaintiff." Nos. 17-CV-1758 (VSB), *et al.*, 2018 WL 1307285, at *9 (S.D.N.Y. Mar. 13, 2018). These authorities further undermine Meitav's motion. *See id.*; *Trevena*, 2019 WL 2288267, at *4.

Here, AP7 asserts a larger financial interest than Meitav and is adequate and typical in all respects. *See Ophthotech*, 2018 WL 1307285, at *9; ECF No. 44 at 1-7. AP7 respectfully submits that Meitav's submission of the *Kraft* briefing does not alter the conclusion that AP7 is entitled to appointment as Lead Plaintiff.

Respectfully,

*/s/ Gerald H. Silk*

Gerald H. Silk

cc:   All counsel of record (via ECF)