UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
:
DANIEL PLAUT, individually and on behalf :
of all others similarly situated, :
:
                                   Plaintiff, :      18-CV-12084 (VSB)
:
              - against -                     :
:      **OPINION & ORDER**
:
THE GOLDMAN SACHS GROUP, INC., :
LLOYD C. BLANKFEIN, HARVEY M. :
SCHWARTZ, and R. MARTIN CHAVEZ, :
:
                                Defendants. :
:
------------------------------------------------------------X

Appearances:

Jeremy A. Lieberman
Joseph Alexander Hood, II
Pomerantz LLP
New York, New York
*Counsel for Plaintiff*

Eduard Korsinsky
Levi & Korsinsky,LLP
New York, New York
*Counsel for Movant Zuheir R. Safe*

Frederic Scott Fox, Sr.
Kaplan Fox & Kilsheimer LLP
New York, New York
*Counsel for Movant IWA Forest Industry Pension Plan*

Christopher J. Keller
Eric James Belfi
Francis Paul McConville
Labaton Sucharow, LLP
New York, NY
*Counsel for Movant Nebraska Investment Council*

Gerald H. Silk
Bernstein Litowitz Berger & Grossmann LLP
New York, New York
*Counsel for Movant Sjunde AP-Fonden*

Jeremy A. Lieberman
Pomerantz LLP
New York, New York
*Counsel for Movant Meitav Dash Provident Funds and Pension Ltd.*

Sharon L. Nelles
David M. J. Rein
Matthew A. Schwartz
Benjamin R. Walker
Stephen H. O. Clarke
Sullivan & Cromwell, LLP
New York, New York
*Counsel for Defendants*

VERNON S. BRODERICK, United States District Judge:

    Plaintiff Daniel Plaut brings this securities fraud class action lawsuit against the Goldman Sachs Group, Inc. ("Goldman Sachs") and certain of its former senior officials. The action alleges that Goldman Sachs and its officers and directors violated Sections 10(b) and 20(a) of the Securities Exchange Act ("Exchange Act"), 15 U.S.C. §§ 78j(b), 78t(a), as well as the U.S. Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated pursuant to the Exchange Act. (Compl. ¶ 1).[1]

    Before me are motions from five movants seeking: (1) appointment of lead plaintiff; and (2) approval of lead counsel. Because movant Sjunde AP-Fonden ("AP7") has a large financial interest in the litigation, at this stage of the litigation appears to fulfill the typicality and adequacy requirements of Federal Rule of Civil Procedure 23, and has chosen counsel with substantial experience in securities class action litigation, AP7's motion to be appointed lead

---

[1] "Compl." refers to the Class Action Complaint, filed December 20, 2018. (Doc. 1)

2

plaintiff and for approval of its selection of lead counsel is GRANTED.  The remaining movants' motions for appointment as lead plaintiff and for approval of lead counsel are DENIED.

### I. **Background and Procedural History**[2]

#### A. *Complaint*

On December 20, 2018, Plaintiff filed a class action complaint against the Goldman Sachs Group, Inc. ("Goldman Sachs"), as well as its former Chief Executive Officer Lloyd C. Blankfein, former Chief Financial Officer Harvey M. Schwartz, and former Chief Financial Officer R. Martin Chavez (collectively, "Individual Defendants"), alleging that Goldman Sachs and Individual Defendants (collectively, "Defendants") violated Sections 10(b) and 20(a) of the Exchange Act and SEC Rule 10b-5.  Essentially, Plaintiff alleges that, between February 28, 2014 and December 17, 2018 (the "Class Period"), Defendants made materially false and misleading statements regarding Goldman Sachs's business, operational, and compliance policies as they related to 1Malaysia Development Bhd. ("1MDB"), "a Malaysian state-owned investment fund set up in 2009."  (*Id.* ¶¶ 1–11.)  Plaintiff alleges that news reports of the alleged fraud and subsequent regulatory and criminal investigations caused the price of Goldman Sachs stock to fall, including investigations related to 1MDB.  (*Id.* ¶¶ 12–21.)  This, in turn, caused Plaut and others who purchased or otherwise acquired Goldman Sachs securities during the Class Period (the "Class") significant losses and damages.  (*Id.* ¶¶ 21, 83.)

#### B. *The Motions*

On February 19, 2019, five plaintiffs filed motions for the appointment of lead plaintiff and for approval of lead counsel.  (Docs. 15, 18, 21, 25, 29.)  Specifically, Zuheir R. Safe

---

[2] The facts in Section I are recited for background only, and are not intended to and should not be viewed as findings of fact.

("Safe") moves to appoint himself as lead plaintiff and for approval of Levi & Korinsky, LLP as lead counsel.  (Doc. 15.)   IWA Forest Industry Pension Plan ("IWA Forest") moves to appoint itself as lead plaintiff and for approval of Kaplan Fox & Kilsheimer LLP to serve as lead counsel.  (Doc. 18.)  Nebraska Investment Council ("Nebraska") moves to appoint itself as lead plaintiffs and for approval of Labaton Sucharow LLP as lead counsel.  (Doc. 21.)  AP7 moves to appoint itself as lead plaintiff and for approval of Kessler Topaz Meltzer & Check, LLP ("Kessler Topaz") and Bernstein Litowitz Berger & Grossmann LLP ("Bernstein Litowitz") as lead counsel and liaison counsel, respectively.  (Doc. 25.)  Meitav Dash Provident Funds and Pension Ltd. ("Meitav") moves to appoint itself as lead plaintiff and for approval of Pomerantz LLP as lead counsel.  (Doc. 29.)

In response to the above-mentioned motions for appointment of lead plaintiff and approval of lead counsel, Safe, IWA Forest, and Nebraska filed notices of non-opposition acknowledging that they do not possess the largest financial interest.  (*See* Docs. 34–36.)  The two remaining movants filed oppositions to each other's competing motions.  Specifically, on March 6, 2019, AP7 filed an opposition to Meitav's motion, (AP7 Opp.),[3] and on the same day, Meitav filed an opposition to AP7's motion, (Meitav Opp.).[4]  Thereafter, on March 12, 2019, AP7 and Meitav filed reply memoranda of law and declarations with exhibits in support of their motions.  (*See* AP7 Reply; Meitav Reply.)[5]  Meitav submitted letters of supplemental authority

---

[3] "AP7 Opp." refers to AP7's Memorandum of Law in Further Support of the Motion of Sjunde AP-Fonden for Appointment as Lead Plaintiff and Approval of Its Selection of Counsel and in Opposition to the Competing Motion, filed March 6, 2019.  (Doc. 40.)

[4] "Meitav Opp." refers to Memorandum of Law:  (1) In Further Support of the Motion of Meitav Dash Provident Funds and Pension Ltd. for Appointment as Lead Plaintiff and Approval of Lead Counsel, and (2) In Opposition to Competing Motions, filed March 6, 2019.  (Doc. 42.)

[5] "AP7 Reply" refers to the Reply in Further Support of the Motion of Sjune AP-Fonden for Appointment as Lead Plaintiff and Approval of Its Selection of Counsel and in Opposition to the Competing Motion, filed March 12, 2019. (Doc. 44.)  "Meitav Reply" refers to Reply Memorandum of Law: (1) In Further Support of the Motion of Meitav Dash Provident Funds and Pension Ltd. for Appointment as Lead Plaintiff and Approval of Lead Counsel,

4

on March 22, 2019, (Doc. 48), April 3, 2019, (Doc. 50), June 14, 2019, (Doc. 52), and June 24, 2019, (Doc. 54).  AP7 responded to each letter in turn.  (Docs. 49, 51, 53, 55).

Defendants have not taken a position on the merits of these motions.

## II.     Discussion

### A.     *Appointment of Lead Plaintiff*

#### 1.   Applicable Law

The Private Securities Litigation Reform Act of 1995 (the "PSLRA") establishes a procedure for the appointment of a lead plaintiff in "each private action . . . that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure."  15 U.S.C. § 78u-4(a)(1).  First, "[n]ot later than 20 days" after the first complaint is filed, a notice must be published "in a widely circulated national business-oriented publication or wire service" advising members of the purported class "of the pendency of the action, the claims asserted therein, and the purported class period" and "not later than 60 days after the date on which the notice is published, any member of the purported plaintiff class may move the court to serve as lead plaintiff . . . ."  15 U.S.C. § 78u-4(a)(3)(A)(i).

Next, the PSLRA provides that a district court must "appoint as lead plaintiff the member or members . . . that the court determines to be most capable of adequately representing the interests of class members."  15 U.S.C. § 78u-4(a)(3)(B)(i).  Pursuant to the PSLRA, courts must adopt a presumption that the most adequate plaintiff is the person or entity who (1) either filed the complaint or made a timely motion to be appointed lead plaintiff; (2) "has the largest financial interest in the relief sought by the class"; and (3) "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure."  15 U.S.C. § 78u–4(a)(3)(B)(iii)(I).

---

and (2) In Opposition to Competing Motions, filed March 12, 2019.  (Doc. 46.)

5

In determining which plaintiff has the greatest financial interest, courts consider four factors: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered. *See, e.g.*, *In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 100 (S.D.N.Y. 2005). The magnitude of the loss is the most significant factor. *See Kaplan v. Gelfond*, 240 F.R.D. 88, 93 (S.D.N.Y. 2007).

A potential lead plaintiff must also "make a preliminary showing that it satisfies the typicality and adequacy requirements of Rule 23." *In re eSpeed*, 232 F.R.D. at 102. The Rule 23 analysis in the context of appointment of lead plaintiff "need not be as complete as would a similar determination for the purpose of class certification." *Id.* The parties moving for lead plaintiff are only required to make a prima facie showing that they meet the Rule 23 prerequisites, and courts need only consider the typicality and adequacy requirements. *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 397 (S.D.N.Y. 2008); *cf. Kaplan*, 240 F.R.D. at 94. With respect to typicality, courts consider whether the claims of the proposed lead plaintiff "arise from the same conduct from which the other class members' claims and injuries arise." *In re Initial Pub. Offering Sec. Litig.*, 214 F.R.D. 117, 121 (S.D.N.Y. 2002) (internal quotation marks omitted); *see also In re Oxford Health Plans, Inc., Sec. Litig.*, 182 F.R.D. 42, 49–50 (S.D.N.Y. 1998). While the claims need not be identical, they must be substantially similar to the other members' claims. *See Canson v. WebMD Health Corp.*, Nos. 11 Civ. 5382(JFK), 11 Civ. 6031(JFK), 2011 WL 5331712, at *4 (S.D.N.Y. Nov. 7, 2011). In considering the adequacy of a proposed lead plaintiff, a court must consider whether the proposed lead plaintiff: (1) maintains claims that conflict with those of the class; (2) has sufficient interest in the outcome of the case; and (3) has selected counsel that is qualified,

experienced, and generally able to conduct the litigation in question. *Reitan v. China Mobile Games & Entm't Grp. Ltd.*, 68 F. Supp. 3d 390, 400 (S.D.N.Y. 2014).

"[O]ther members of the purported class may try to rebut the statutory presumption by showing that the presumptive lead plaintiff will not fairly and adequately protect the interests of the class or is incapable of adequately representing the class because of 'unique defenses.'" *In re Bank of Am. Corp. Sec., Derivative, & ERISA Litig.*, 258 F.R.D. 260, 268 (S.D.N.Y. 2009) (quoting 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II)); *see also In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 40 (2d Cir. 2009) (noting that adequacy is not met if the class representative is "subject to any 'unique defenses which threaten to become the focus of the litigation'" (quoting *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 59 (2d Cir. 2000))).

### 2. Application

Before me are motions for appointment of lead plaintiff by the following five movants: (1) Safe, (2) IWA Forest, (3) Nebraska, (4) AP7, and (5) Meitav. I find that AP7 is the "most adequate" plaintiff under the PSLRA, 15 U.S.C. § 78u-4(a)(3)(B)(i), and that the remaining movants have failed to rebut this presumption. Thus, the AP7 is the appropriate lead plaintiff for this consolidated action.

#### a. AP7 is the Presumptive Lead Plaintiff

##### i. *All Movants Filed Timely Motions*

As an initial matter, all movants timely filed for appointment as lead plaintiff. The complaint was filed on December 20, 2018. (Doc. 1.) The same day, Plaintiff published a notice on Globe Newswire, fulfilling the PSLRA requirements set forth in 15 U.S.C. § 77z–1(a)(3)(A)(i). (*See* Lieberman Decl. Ex. A.)[6] The notice detailed the claims in the complaint

---

[6] "Lieberman Decl." refers to the Declaration of Jeremy A. Lieberman in Support of Motion of Meitav Dash Provident Funds and Pension Ltd. for Appointment as Lead Plaintiff and Approval of Lead Counsel, dated February

7

and informed the Class that they had until February 19, 2019 to move for appointment as lead plaintiff. Safe, IWA Forest, Nebraska, AP7, and Meitav all moved for appointment as lead plaintiff on February 19, 2019, (Docs. 15, 18, 21, 25, 29), and thus timely filed within the sixty-day statutory requirement.

ii. *Comparing Financial Interests*

On February 28, 2019, Safe filed a notice of non-opposition, and on March 5, 2019, IWA Forest and Nebraska also filed notices of non-opposition, each acknowledging that it does not possess the largest financial interest. (*See* Docs. 35–37.) IWA Forest and Nebraska stated that if the court were to determine that those with larger financial interests are inadequate to represent the class, they would be willing and able to serve as lead plaintiff. (*See* Docs. 36–37.) Because, as discussed below, I find that AP7 is an adequate lead plaintiff, the motions from Safe, IWA Forest, and Nebraska are denied. *See Hansen v. Ferrellgas Partners, L.P.*, No. 16-cv-7840 (RJS), 2017 WL 281742, at *1, 6 (S.D.N.Y. Jan. 19, 2017) (denying motions of parties who filed notices of non-opposition). The remaining two movants, AP7 and Meitav, disagree about which movant has the greatest financial interest, in large part due to their use of different methodologies to calculate their respective financial losses.

In support of its original motion, Meitav asserted that, during the Class Period, it purchased 119,596 shares of Goldman Sachs common stock and Goldman Sachs bonds in the principal amount of $2,916,000, that it retained 110,379 shares of Goldman Sachs common stock and Goldman Sachs bonds in the principal amount of $860,000, and that it expended $28,576,979 on Goldman Sachs securities. (*See* Meitav Mem. 8.)[7] In support of its original

---

19, 2019. (Doc. 31.)

[7] "Meitav Mem." refers to the Memorandum of Law in Support of Motion of Meitav Dash Provident Funds and Pension Ltd. for Appointment as Lead Plaintiff and Approval of Lead Counsel, filed February 19, 2019. (Doc. 30.)

8

motion, AP7 asserted that, during the Class Period, it purchased 179,082 shares of Goldman Sachs common stock and that it retained 100,069 shares of Goldman Sachs common stock, at a net cost of $21,375,937.  (*See* AP7 Mem. 6.)[8]  In their respective original motions, both Meitav and AP7 applied a traditional last-in-first-out ("LIFO") analysis, which is commonly used by courts in this district to calculate financial loss for lead plaintiff motions.  *See e.g. Richman v. Goldman Sachs Grp., Inc.*, 274 F.R.D. 473, 476 (S.D.N.Y. 2011) (noting that "Southern District of New York courts have a very strong preference for the LIFO method in calculating loss").  Using the LIFO approach, Meitav asserted losses of $3,143,586 and AP7 asserted losses of $2,921,947.  (*See* Meitav Mem. 9; AP7 Mem. $2,921,947.)  Under the traditional LIFO approach, Meitav suffered the greatest financial loss.

In its opposition brief, Meitav acknowledged that the certification it filed with its motion papers "inadvertently omitted certain Class Period transactions in Goldman Sachs securities due to clerical error," which resulted in asserted losses of $3,160,824 when using the LIFO approach.  (*See* Meitav Opp. 2 n.4.)

AP7's opposition brief asserted that a modified LIFO approach to loss calculation is more appropriate.[9]  (*See* AP7 Opp. 5–9.)  Applying the Supreme Court's finding in *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 345 (2005), that securities actions only provide recoveries for "economic losses that misrepresentations actually cause," courts have elected not to include losses incurred based on "in-and-out" trades that occur prior to any corrective disclosure.  *See, e.g.*, *Micholle v. Ophthotech Corp.*, No. 17-CV-1758 (VSB), 2018 WL

---

[8] "AP7 Mem." refers to the Memorandum of Law in Support of the Motion of Sjune AP-Fonden for Appointment as Lead Plaintiff and Approval of Its Selection of Counsel, filed February 19, 2019.  (Doc. 26.)

[9] Meitav argues that AP7's use of the traditional LIFO approach in its opening brief forecloses it from using this modified approach in its opposition brief.  (*See* Meitav Reply 5.)  I disagree.  *See Galmi v. Teva Pharmaceuticals Industries Ltd.* 302 F. Supp. 3d 485, 500 (D. Conn. 2017) (finding that the movant "cannot be faulted for failing to raise the notion of *Dura* recoverable losses in its initial motion").

9

1307285, at *5 (S.D.N.Y. Mar. 13, 2018); *In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG) (RER), 2007 WL 680779, at *4 (E.D.N.Y. Mar. 2, 2007), ("[I]t is clear that under *Dura* and its progeny, any losses that [a movant] may have incurred before [the defendant's] misconduct was ever disclosed to the public are not recoverable.") AP7 adds a new element to this approach, by excluding not only those in-and-out transactions that occurred prior to the first corrective disclosure pled in the complaint, but also all those in-and-out transactions that occurred in the periods between the various corrective disclosures during the Class Period. (*See* AP7 Opp. 6–7.) Using this approach, AP7 asserts that its losses are $3,095,533 and that Meitav's losses are $2,758,814. (*Id.* at 6.)

Under the circumstances presented here, in which the complaint alleges multiple partial disclosures over the course of the Class Period, courts have been reluctant to apply a *Dura*-based approach to calculating losses. *See In re Gentiva Sec. Litig.*, 281 F.R.D. 108, 115 (E.D.N.Y. 2012) (noting that "most Courts who have refrained from appointing . . . lead plaintiffs [based on in-and-out transactions prior to a corrective disclosure] have done so in the complete absence of partial corrective disclosures or in light of speculative or highly questionable partial disclosures"). AP7 has not identified a single court that has endorsed the approach it proposes, under which I would exclude in-and-out transactions that occurred subsequent to the first alleged corrective disclosure. Indeed, "the appropriateness of employing *Dura* analysis at the lead plaintiff stage is subject to considerable dispute." *See Cook v. Allerg*[*a*]*n PLC*, No. 18 Civ. 12089 (CM), 2019 WL 1510894, at *3 (S.D.N.Y. Mar. 21, 2019). In light of the various factual issues related to the causation of any losses occurring after the first corrective disclosure, I will not apply the approach proposed by AP7. However, under *Dura*, I am inclined to exclude in-and-out transactions prior to the first alleged corrective disclosure, i.e., those "losses that [each

10

movant] may have incurred before [Defendants'] misconduct was ever disclosed to the public." *Comverse*, 2007 WL 680779, at *4; *see also Topping v. Deloitte Touche Tohmatsu CPA*, 95 F. Supp. 3d 607, 617–18 (S.D.N.Y. 2015). Neither movant has calculated its losses using this approach; however, a specific calculation is unnecessary because, for the reasons explained below, I find that of the two remaining movants, only AP7 is an adequate lead plaintiff.

iii. *Otherwise Satisfying Rule 23*

The certification errors in Meitav's submissions "militate against appointment and render [it] inadequate to serve as lead plaintiff under Rule 23's adequacy requirement." *Micholle*, 2018 WL 1307285, at *9. As noted above, the certification submitted by Meitav with its original motion papers "inadvertently omitted certain Class Period transactions in Goldman Sachs securities due to a clerical error." (*See* Meitav Mem. 2 n.4.) Although Meitav submits that this clerical error was a "minor defect[]," (*see id.*), this error "nonetheless speak[s] to a level of carelessness," and causes me "to doubt whether [Meitav] possesses the necessary adequacy and sophistication to be lead plaintiff." *Tomaszewski v. Trevena, Inc.*, 383 F. Supp. 3d 409, 415 (E.D. Pa. 2019); *see also Bhojwani v. Pistiolis*, No. 06 Civ. 13761(CM)(KNF), 2007 WL 9228588, at *3 (S.D.N.Y. July 31, 2007). Meitav makes no attempt to explain the circumstances surrounding the error, or why they do not militate against a finding that Meitav is inadequate.

Second, Plaintiff, who is represented by the same counsel as Meitav, filed an amended complaint on March 11, 2019, twenty days *after* the deadline for motions to serve as lead plaintiff, and only one day before the deadline to submit reply memoranda. (*See* Am. Compl.)[10] The amended complaint alleged two additional corrective disclosures, one of which occurred

---

[10] "Am. Compl." refers to the Class Action Amended Complaint filed by Plaintiff Daniel Plaut, dated March 11, 2019. (Doc. 43.)

11

almost six months before the first corrective disclosure alleged in the original complaint. (*Compare id.* ¶ 50 *with* Compl. ¶ 49.)  I am "hesitant to encourage lead plaintiff movants to file complaints with additional disclosure allegations in the eleventh hour, thereby precluding similarly-situated potential movants from identifying themselves to the Court."  *Maliarov v. Eros Int'l PLC*, No. 15-CV-8956 (AJN), 2016 WL 1367246, at *4 (S.D.N.Y. Apr. 5, 2016).  The amended complaint appears to be an attempt by Meitav's counsel to include in its loss calculation certain in-and-out transactions that occurred before the first corrective disclosure alleged in the original complaint.  However:

> [I]f persons seeking appointment as lead plaintiff were allowed to manipulate the size of their financial loss [by submitting a corrected or amended complaint], the consequent greater loss asserted would invite additional briefing by the other persons seeking appointment as lead plaintiff, which, in turn, would necessitate responses by the person or group of persons seeking to enlarge their losses.  This result would effectively render the strict timeliness set forth in the PSLRA meaningless, and would nullify Congress's attempt to expedite the lead plaintiff appointment process.

*Topping*, 95 F. Supp. 3d at 619 (internal quotation marks omitted).  Indeed, a "principal purpose of the PSLRA was to prevent just the kind of gamesmanship in which [Meitav] and its counsel have engaged here."  *Gutman v. Sillerman*, No. 15 Civ. 7192 (CM), 2015 WL 13791788, at *3 (S.D.N.Y. Dec. 8, 2015).  Based upon the certification error and the filing of the amended complaint twenty days after the deadline for motions to serve as lead plaintiff, I find it would be inappropriate to select Meitav as lead plaintiff.

Having determined that Meitav cannot serve as lead plaintiff, AP7 indisputably has the largest financial interest of the remaining movants.  (*See* Docs. 35–37.)  AP7 also satisfies the typicality and adequacy requirements of Rule 23.  Members of the class are those "who purchased or otherwise acquired Goldman Sachs securities during the Class Period . . . and were damaged upon the revelation of the alleged corrective disclosures."  (Compl. ¶ 83.)  As

purchasers of Goldman Sachs securities between March 6, 2014 and November 27, 2018, (*see* Silk Decl. Ex. A),[11] AP7 has claims "aris[ing] from the same conduct from which the other class members' claims and injuries arise." *Initial Public Offering*, 214 F.R.D. at 121.

Further, AP7 meets Rule 23's adequacy requirement. AP7's proposed lead and liaison counsel, Kessler Topaz and Bernstein Litowitz, are experienced and qualified, have represented plaintiffs in multiple other securities class action litigations, and have the ability to conduct the litigation effectively. (*See* Silk Decl. Exs. D, E.) In addition, AP7 alleges significant damages due to Goldman Sachs's actions, and thus has "sufficient interest in the outcome of the case." *Initial Public Offering*, 214 F.R.D. at 121. Lastly, AP7 is an institutional investor, weighing in its favor. *See Reitan*, 68 F. Supp. 3d at 396. Therefore, I find that AP7 is the presumptive lead plaintiff.

### b. No Other Movant has Rebutted the Presumption

In order to rebut the statutory presumption in favor of AP7, another movant must provide proof that it would not be able to "fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). Meitav asserts that because AP7 does not appear to be the beneficial owner of Goldman Sachs securities, AP7 has failed to establish standing and is therefore subject to unique defenses. (Meitav Opp. 9–22; Meitav Reply 9–10.) Although one court in this district has been persuaded by this argument, *see Pipefitters Local No. 636 Defined Ben. Plan v. Bank of Am. Corp.*, 275 F.R.D. 187, 191 (S.D.N.Y. 2011), other courts have found that concerns about the standing of AP7 and similar entities to bring such claims "rely on mere

---

[11] "Silk Decl." refers to the Declaration of Gerald H. Silk in Support of the Motion of Sjunde AP-Fonden for Appointment as Lead Plaintiff and Approval of Its Selection of Counsel, filed February 19, 2019. (Doc. 27.)

speculation, not actual proof provided by the opposing movant," *OFI Risk Arbitrages v. Cooper Tire & Rubber Co.*, 63 F. Supp. 3d 394, 403 (D. Del. 2014). Recently, Judge Jesse Furman addressed similar standing-based arguments and found that standing was "a nonissue substantially for the reasons set forth in *United Union of Roofers, Waterproofers and Allied Workers Local Union No. 8 v. Ocwen Financial Cororation*," No. 14-81064-CIV-WPD, 2014 WL 7236985, at *3 (S.D. Fla. Nov. 7, 2014). *See Hachem v. Gen. Elec. Inc.*, No. 17-cv-8457 (JMF), ECF No. 140, at 5:4-10 (S.D.N.Y. May 23, 2018). I join Judge Furman in adopting the reasoning in *Ocwen* and find that Meitav's standing-based arguments "are not grounded in evidence." *Ocwen*, 2014 WL 7236985, at *3.[12] Thus, Meitav has failed to rebut AP7's presumptive status.[13]

### B. *Appointment of Lead counsel*

The PSLRA provides that the "most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). There is a "strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection." *Sallustro v. CannaVest Corp.*, 93 F. Supp. 3d 265, 278 (S.D.N.Y. 2015) (internal quotation marks omitted).

Having reviewed AP7's Memorandum of Law, as well as Silk's Declaration and the

---

[12] I note that although AP7 is regularly appointed as lead plaintiff in securities class action lawsuits, *see, e.g.*, *Hachem*, ECF No. 139, at 5:4-10 (S.D.N.Y. May 30, 2018), Meitav has not identified a single case in which a defendant has successfully challenged AP7's standing.

[13] Meitav also speculates that AP7's proposal to be represented by Kessler Topaz as lead counsel and Bernstein Litowitz as liaison counsel somehow suggests that AP7 will be unable to oversee its counsel and raises the specter of a "possible backroom deal." (Meitav Opp. 22–24.) In support of this speculative argument, Meitav does not identify a single case in which a court has denied a motion to serve as lead plaintiff on similar grounds, nor does it acknowledge that court's routinely appoint lead counsel and liaison counsel in securities class action cases or attempt to distinguish those cases. *See, e.g.*, *Foley v. Transocean Ltd.*, 272 F.R.D. 126, 134 (S.D.N.Y. 2011) (appointing Kessler Topaz as lead counsel and Bernstein Litowitz as liaison counsel); *Faris v. Longtop Fin. Techs. Ltd.*, No. 11 Civ. 3658(SAS), 2011 WL 4597553, at *9 (S.D.N.Y. Oct. 4, 2011) (appointing both lead and liaison counsel).

14

firms' resumes attached as Exhibits D and E to the Declaration, I find that Kessler Topaz, AP7's proposed lead counsel, and Bernstein Litowitz, AP7's proposed liaison counsel, will adequately and effectively represent the interests of the class. The attorneys at those firms have substantial experience with securities class action litigation. (*See* AP7 Mem. 9–11; Silk Decl. Exs. D, E.)[14] I approve AP7's selection and appoint Kessler Topaz as lead counsel and Bernstein Litowitz as liaison counsel.

## III. Conclusion

Because I find that AP7 is the presumptive lead plaintiff and no other movants have rebutted that presumption, AP7's motion for appointment as lead plaintiff and for approval of lead counsel and liaison counsel is GRANTED. AP7 has a substantial financial interest and meets the typicality and adequacy requirements of Rule 23. The remaining motions by Safe, IWA Forest, Nebraska, and Meitav for appointment as lead plaintiff are DENIED. The Clerk of Court is respectfully requested to terminate the pending motions at Documents 15, 18, 21, 25, and 29. AP7 is directed to file a second amended complaint no later than sixty (60) days after the date of issuance of this Opinion & Order. Defendants are directed to answer or otherwise respond to the second amended complaint no later than sixty (60) days after AP7 serves the

---

[14] "AP7 Mem." refers to the Memorandum of Law in Support of the Motion of Sjunde AP-Fonden for Appointment as Lead Plaintiff and Approval of Its Selection of Counsel, filed February 19, 2019. (Doc. 26.)

second amended complaint.  Any other deadlines previously agreed to among counsel and/or ordered by me are null and void.

SO ORDERED.

Dated: September 19, 2019
     New York, New York

*Vernon Broderick*
Vernon S. Broderick
United States District Judge