# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

SJUNDE AP-FONDEN, individually and on behalf of all others similarly situated,

Plaintiff,

    v.

THE GOLDMAN SACHS GROUP, INC., et al.,

Defendants.

Civil Case No.  18-cv-12084 (VSB)

# MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S MOTION FOR LEAVE TO AMEND THE COMPLAINT PURSUANT TO FED. R. CIV. P. 15(a) AND THE COURT'S CASE MANAGEMENT PLAN AND SCHEDULING ORDER

## <u>TABLE</u> <u>OF</u> <u>CONTENTS</u>

**Page No.**

I.     INTRODUCTION ........................................................................................................ 1

II.    SUMMARY OF THE AMENDED ALLEGATIONS ...................................................... 3

III.   PROCEDURAL HISTORY........................................................................................... 5

IV.   ARGUMENT ................................................................................................................ 6

     A.     The Proposed Amendment is Not Futile.................................................. 6

     B.     The Proposed Amendment is Timely and Not Made in Bad
            Faith    .............................................................................................. 9

     C.     Defendants Will Not Suffer Undue Prejudice if Leave to Amend is
            Granted................................................................................................. 10

V.    CONCLUSION............................................................................................................ 10

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Carpenters Pension Trust Fund of St. Louis v. Barclays PLC*,
    310 F.R.D. 69 (S.D.N.Y. 2015) ....................................................................9

*Carpenters Pension Trust Fund of St. Louis v. Barclays PLC*,
    750 F.3d 227 (2d Cir. 2014)...................................................................7, 8

*In re Cigna Corporation Securities Litigation.*,
    459 F. Supp. 2d 338 (E.D. Pa. 2006) .......................................................8

*Duling v. Gristede's Operating Corp.*,
    265 F.R.D. 91 (S.D.N.Y. 2010) ...............................................................9

*Emergent Capital Investment Management, LLC v. Stonepath Group, Inc.*,
    343 F.3d 189 (2d Cir. 2003)....................................................................8

*FindWhat Investment Group v. FindWhat.com*,
    658 F.3d 1282 (11th Cir. 2011) ...............................................................4

*Fogarazzo v. Lehman Brothers, Inc.*,
    263 F.R.D. 90 (S.D.N.Y. 2009) ...............................................................9

*Foman v. Davis*,
    371 U.S. 178 (1962)..............................................................................2, 6

*Freidus v. Barclays Bank PLC*,
    734 F.3d 132 (2d Cir. 2013)....................................................................6

*Grant v. Citibank (S.D.), N.A.*,
    2010 WL 5187754 (S.D.N.Y. Dec. 6, 2010) ..........................................6

*Grigsby v. BofI Holding, Inc.*,
    979 F. 3d 1198 (9th Cir. 2020) ................................................................4

*Loftex USA LLC v. Trident Ltd.*,
    2012 WL 5877427 (S.D.N.Y. Nov. 20, 2012)..........................................9

*Panther Partners Inc. v. Ikanos Communications, Inc.*,
    681 F.3d 114 (2d Cir. 2012)....................................................................6

*In re Pfizer Inc. Securities Litigation*,
    2012 WL 983548 (S.D.N.Y. Mar. 22, 2012) ........................................10

*Sacerdote v. New York University*,
    9 F.4th 95 (2d Cir. 2021), *cert. denied*, 142 S. Ct. 1112 (2022)..............6

*Vasto v. Credico (USA) LLC*,
   2016 WL 3926466 (S.D.N.Y. July 18, 2016) ....................................................................9, 10

*In re Vivendi Universal, S.A., Securities Litigation*,
   634 F. Supp. 2d 352 (S.D.N.Y. 2009), *aff'd*, 838 F.3d 223 (2d Cir. 2016) ..........................8, 9

*In re Winstar Communications*,
   2006 WL 473885 (S.D.N.Y. Feb. 27, 2006) ...........................................................................7

**Other Authorities**

Federal Rule of Civil Procedure 8(a)(2) ......................................................................................7

Federal Rule of Civil Procedure 12(b)(6) ...............................................................................6, 8

Federal Rule of Civil Procedure 15(a)(2) .........................................................................1, 2, 3, 6

## I.     INTRODUCTION

Pursuant to Federal Rule of Civil Procedure ("Rule") 15(a) and the Court's September 27, 2021 Case Management Plan and Scheduling Order setting a deadline to amend the pleadings by January 13, 2023 (Doc. 131 (the "Scheduling Order") at ¶ 4), Lead Plaintiff Sjunde AP-Fonden ("Plaintiff" or "AP7") seeks leave to amend the Second Amended Class Action Complaint ("SAC") (Doc. 63) and to file the proposed Third Amended Class Action Complaint ("TAC") (Ex. A).[1]

The TAC is a narrow, targeted amendment of the SAC, as the new allegations in the TAC solely concern loss causation and damages related to the previously sustained November 9, 2018 corrective disclosure.  *See* TAC ¶¶ 374-379.  Specifically, Plaintiff alleges in the TAC that, as a result of this corrective disclosure, the stock price of Defendant The Goldman Sachs Group, Inc. ("Goldman") declined over the course of two consecutive trading days (Friday, November 9, 2018 and Monday, November 12, 2018), rather than one (as previously alleged).  This focused amendment of the loss causation allegations results from the analysis of Plaintiff's economist and damages expert, Joseph R. Mason, Ph.D., during discovery, and does not substantively expand the claims or theories in this case.[2]

As reflected in the redlined version of the TAC (Ex. B), Plaintiff also has removed the loss causation allegations regarding the December 17, 2018 corrective disclosure as a result of Dr. Mason's finding that the recovery of Goldman's stock price on December 18, 2018 negated any

---

[1] Citations to "Ex. ___" are to the exhibits attached to the accompanying declaration of Andrew L. Zivitz.  Unless otherwise noted, all emphasis is added and internal citations omitted.

[2] Plaintiff served Dr. Mason's report on Goldman, Lloyd Blankfein, and Gary Cohn (collectively, "Defendants") at the same time it served the instant motion ("Motion") and the proposed TAC.

damages incurred from the prior trading day's stock price decline.[3]

This Motion is governed by the liberal standard of Rule 15(a).  Therefore, the Court should "*freely give*" AP7 leave to amend unless Defendants can establish: (i) that the amendment would be futile; (ii) undue delay, bad faith, or a failure to cure deficiencies in the pleadings through amendments previously allowed; or (iii) that the amendment would be unduly prejudicial to Defendants.  Fed. R. Civ. P. 15(a)(2); *Foman v. Davis*, 371 U.S. 178, 182 (1962).  None of these factors are present.

*First*, the proposed amendment is not futile.   The amendment solely concerns the November 9, 2018 corrective disclosure, which this Court previously sustained in its MTD Order. *See* Doc. 102 at 36-37.  Any argument that the proposed amendment is futile would thus be limited to disputing whether the November 9 corrective disclosure caused Goldman's stock price to continue to decline on the next trading day, November 12 (in addition to November 9).  Such an argument cannot be credited at this stage because: (i) any challenge to the validity of AP7's claim regarding Goldman's stock price movements is a question of fact, dependent upon expert discovery, that cannot be resolved at the pleading stage; and (ii) in any event, courts in the Second Circuit have repeatedly recognized that an expert may properly analyze stock price movements over a multi-day period to measure the impact of a disclosure.

*Second*, AP7 does not bring this amendment after undue delay, in bad faith, or after failing to cure prior deficiencies.  To the contrary, AP7 brings this Motion before the deadline set by the Scheduling Order, which the parties jointly submitted to the Court based on agreement.  Courts deem such motions per se timely.

---

[3] Plaintiff has also removed the previously alleged false or misleading statements and corrective disclosures that the Court did not sustain in its June 28, 2021 Order on Defendants' motion to dismiss the SAC (Doc. 102 or the "MTD Order").

*Third*, the amendment is not unduly prejudicial to Defendants.  The amendment exclusively concerns loss causation and damages—issues largely reserved for expert opinion following discovery.  And AP7 seeks leave to amend the complaint at the outset of expert discovery.  Indeed, under the Court's Scheduling Order, the deadline for AP7 to serve its expert reports is not until March 3, 2023, and Defendants have until July 17, 2023 to complete expert discovery (Doc. 131 at ¶ 8; Doc. 130, App'x A), yet AP7 served Dr. Mason's report on Defendants seven weeks ahead of schedule.  Thus, rather than prejudicing Defendants, the present Motion—served contemporaneously with Dr. Mason's report—provides Defendants and their expert(s) an additional seven weeks to take expert discovery and to respond to Dr. Mason's analysis.

For these reasons, the Court should "freely" grant leave to amend the SAC.  Fed. R. Civ. P. 15(a)(2).

## II.       SUMMARY OF THE AMENDED ALLEGATIONS

In denying Defendants' motion to dismiss the SAC, this Court found that AP7 adequately pled loss causation with respect to the November 9, 2018 *Wall Street Journal* ("*WSJ*") article entitled "Goldman Sachs's Ex-CEO Lloyd Blankfein Met Malaysian at Center of 1MDB Scandal" (the "November 9 Corrective Disclosure").  *See* Doc. 102 at 36-37.  This article reported that Blankfein had met with Jho Low and Malaysian Prime Minister Najib Razak in 2013 to discuss continued business between Goldman and 1MDB following the three 1MDB bond deals—i.e., after Goldman's compliance department had repeatedly raised concerns about Low.  TAC ¶ 375. As a direct result of the November 9 Corrective Disclosure, the price of Goldman common stock declined by $9.00 per share, or approximately 3.89%, from a closing price of $231.65 per share on November 8, 2018, to a closing price of $222.65 per share on November 9, 2018.  *Id*. ¶ 376.

Goldman's stock price continued to decline in a statistically significant manner on the next trading day—Monday, November 12, 2018—declining by $16.60 per share, or approximately

7.46%, from a closing price of $222.65 per share on November 9 to a closing price of $206.05 per share on November 12, and posting a negative abnormal return of $11.70 per share. *Id*. As explained below, this November 12 stock price decline was also (at least in substantial part) the direct result of the information disclosed in the November 9, 2018 *WSJ* article about Blankfein's 2013 meeting with Low and Najib. *Id*. ¶¶ 376-379.

Before the market opened on November 12, 2018, *Bloomberg* reported that the Malaysian government was seeking repayment of Goldman's $600 million in underwriting fees received from 1MDB. *Id*. ¶ 378. However, Malaysia's intent to recoup from Goldman the $600 million in fees from the 1MDB bond deals was not, and could not have been, a substantial cause of the November 12, 2018 decline in Goldman's stock price, given that the same information had been previously disclosed in June 2018. *Id*.[4] Rather, the decline in Goldman's stock price throughout November 12 resulted from the market's growing recognition of Goldman management's complicity in the 1MDB fraud and Goldman's compliance failures in the wake of the November 9, 2018 *WSJ* article. *Id*. For example, on November 13, 2018, Morningstar reported that concern over Goldman's complicity in the 1MDB fraud is "*[m]ore worrisome*" than the $600 million fee disgorgement. *Id*. Oppenheimer made a similar observation in its November 14, 2018 research report: "Reputationally it is a disaster for Goldman, and the new government of Indonesia [*sic*] wants its $600M in fees back. The ramifications, however, ***go beyond that*** because Goldman could be

---

[4] Information already known by the market will not usually cause a change in stock price. As Goldman's expert, Dr. Kothari, testified during the class certification phase of this action, "generally repeating the same information that was known previously does not generate stock price reaction . . . ." Ex. C (Kothari Dep. Tr.) at 11:15-12:11. Courts also recognize that "the disclosure of confirmatory information—or ***information already known by the market***—will not cause a change in stock price." *Grigsby v. BofI Holding, Inc.*, 979 F. 3d 1198, 1205 (9th Cir. 2020). "This is so because the market has already digested that information and incorporated it into the price." *FindWhat Inv. Grp. v. FindWhat.com*, 658 F.3d 1282, 1310 (11th Cir. 2011).

charged by regulators with 'a failure to supervise' these employees." *Id*.

A substantial portion of the decline in Goldman's common stock price on November 12, 2018 is thus attributable to the information in the November 9, 2018 *WSJ* article, as the stock price continued to decline in reaction to that information. *Id*. ¶ 379. Goldman's common stock price decline on November 12 resulted in an abnormal stock price return of $11.70 per share. *Id*. No more than a fraction of the $11.70 per share abnormal return is attributable to the information regarding the Malaysian government's intent to seek the $600 million disgorgement reported by *Bloomberg*. *Id*. In considering expectations about the direct impact of the $600 million disgorgement, Dr. Mason has determined that the repeated disclosure of this news is responsible for, at most, $1.61 of the abnormal return (or $600 million divided by 372 million Goldman shares outstanding). *Id*. Disaggregating the impact of $1.61 per share from the abnormal stock price return of $11.70 results in an impact of $10.09 per share on November 12, 2018 that is attributable to the November 9 disclosure of Blankfein's 2013 meeting with Low and Najib. *Id*.

## III.   PROCEDURAL HISTORY

On October 28, 2019, AP7 filed the SAC individually and on behalf of the putative class. Doc. 63. On June 28, 2021, the Court denied in large part Defendants' motion to dismiss the SAC, including Defendants' arguments challenging the November 9 Corrective Disclosure. Doc. 102 at 36-37. On November 12, 2021, AP7 filed its motion seeking to certify a class of "[a]ll persons and entities that purchased or otherwise acquired [Goldman] common stock during the period from October 29, 2014 through December 14, 2018, inclusive (the "Class Period") and were damaged thereby." Doc. 143. AP7's motion is fully briefed. Docs. 147, 159.

Pursuant to the Court's Scheduling Order, which was negotiated and proposed by the parties, the deadline to amend the pleadings is January 13, 2023. Doc. 131 ¶ 4. The parties have completed fact discovery with the exception of three depositions, including Tim Leissner's. Doc.

208.  This case is now in expert discovery.  AP7 must serve opening expert reports by March 3, 2023; Defendants must serve their expert reports by May 3, 2023; and Plaintiff must serve reply expert reports by June 15, 2023.  Doc. 130, App'x A.  All expert discovery is to be completed by July 17, 2023.  Doc. 131 ¶ 8.  At present, the Court has not set a schedule for the filing of dispositive motions.  *Id.* ¶ 10.  The proposed amendment has no impact on any of these deadlines.

## IV.    ARGUMENT

Rule 15(a), which provides that "[t]he court should freely give leave [to amend the pleadings] when justice so requires," governs Plaintiff's Motion.  Fed. R. Civ. P. 15(a)(2); *Freidus v. Barclays Bank PLC*, 734 F.3d 132, 140 (2d Cir. 2013).  "This is a 'liberal' and 'permissive'" standard."  *Sacerdote v. New York Univ.*, 9 F.4th 95, 115 (2d Cir. 2021), *cert. denied*, 142 S. Ct. 1112 (2022) (citing *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015)).  Motions to amend should therefore be granted absent evidence of:  (i) futility; (ii) undue delay, bad faith or dilatory motive on the part of the movant; or (iii) undue prejudice to the non-moving party.  *Foman*, 371 U.S. at 182.  The "non-movant bears the burden of showing" each element.  *Grant v. Citibank (S.D.), N.A.*, 2010 WL 5187754, at *6 (S.D.N.Y. Dec. 6, 2010). Because Defendants cannot meet this burden, the Court should grant Plaintiff's Motion.

### A.    The Proposed Amendment is Not Futile

Futility is a "determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure."  *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012). In reviewing the TAC, the Court must: (i) consider "the proposed amendment[s] . . . along with the remainder of the complaint"; (ii) "accept as true all non-conclusory factual allegations therein"; and (iii) "draw all reasonable inferences in plaintiff's favor to determine whether the allegations plausibly give rise to an entitlement to relief."  *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678–80

(2009)).  The Court "need not determine the merits of the claims, but must simply determine that the proposed claims are colorable and not frivolous." *In re Winstar Commc'ns*, 2006 WL 473885, at *2 (S.D.N.Y. Feb. 27, 2006).

The newly pled allegations are subject to the notice pleading requirements of Rule 8.  *See* Doc. 102 at 34-35 ("[T]he pleading rules for loss causation were 'not meant to impose a great burden upon a plaintiff,'" and thus "plaintiffs need only plead 'a short and plain statement,' pursuant to Fed. R. Civ. P. 8(a)(2), that provides defendants with 'some indication of the loss and the causal connection that the plaintiff has in mind.'") (quoting *Freudenberg v. E*Trade Fin. Corp.*, 712 F. Supp. 2d 171, 202 (S.D.N.Y. 2010); *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346-47 (2005)).

The proposed new allegations, which solely concern loss causation and damages relating to the previously sustained November 9 Corrective Disclosure, are not futile.  *See* Doc. 102 at 36-37 (holding that the November 9 Corrective Disclosure is "more than sufficient as a partial disclosure to satisfy loss causation at the pleading stage").  Defendants cannot succeed, as a matter of law, in arguing that the November 9 Corrective Disclosure did not cause Goldman's stock price to decline over a two-day period on November 9 and November 12, 2018.

*First*, the Court has already found that Plaintiff sufficiently alleged loss causation with respect to the November 9 Corrective Disclosure.  Doc. 102 at 36-37.  The proposed amendment deals solely with Goldman's stock price's continuing reaction to the disclosure through the next trading day, November 12.  Any challenge Defendants may pose to this narrowly amended allegation about the *duration* of Goldman's stock price reaction would raise highly fact-intensive questions of loss causation and damages that cannot be resolved on this Motion.  *See Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*, 750 F.3d 227, 235 (2d Cir. 2014) ("defendants'

[loss causation] arguments here involve questions of fact and should not be resolved upon a motion to dismiss").

To be sure, the question of how long Goldman's stock price continued to react to the November 9 Corrective Disclosure—i.e., did the price reaction persist to the end of the next trading day or end at some earlier point—presents "a dispute of material fact surrounding the amount of inflation attributable to the alleged fraud and the effect of 'corrective events' on the price" of Goldman's stock, but "the task of determining the precise measure of economic loss and damages is best assigned to the factfinder at trial." *In re Cigna Corp. Sec. Litig.*, 459 F. Supp. 2d 338, 356-57 (E.D. Pa. 2006) (cleaned up). *See Carpenters Pension Tr. Fund of St. Louis*, 750 F.3d at 234 & n.8 ("[W]hether the effects of Barclays's willfully false LIBOR representations dissipated before June 2012 is a question of fact that can be answered only upon a more fully developed record"; finding that "Plaintiffs' theory of continued price inflation is supported by allegations in their Proposed Third Amended Complaint, which includes an analysis conducted by an 'economics expert in loss causation.'"). And, to the extent Defendants want to argue that the continued stock price decline on November 12 was due to something other than the November 9 Corrective Disclosure, that too is a "matter of proof at trial . . . ." *Emergent Capital Inv. Mgmt., LLC v. Stonepath Grp., Inc.*, 343 F.3d 189, 197 (2d Cir. 2003) ("[I]f the loss was caused by an intervening event, . . . the chain of causation will not have been established. But such is a matter of proof at trial and not to be decided on a Rule 12(b)(6) motion to dismiss."); *see also In re Vivendi Universal, S.A., Sec. Litig.*, 634 F. Supp. 2d 352, 371 (S.D.N.Y. 2009), *aff'd*, 838 F.3d 223, 261-63 (2d Cir. 2016) (rejecting argument at summary judgment that plaintiffs improperly assigned "100% of the [stock] price decline . . . to fraud-related revelations"; holding that "this is an argument better made in a challenge to [plaintiffs' expert's] credibility . . . rather than a summary judgment motion").

*Second*, Defendants cannot contest the viability of loss causation premised upon a two-day price decline as a matter of law.  To the contrary, courts in the Second Circuit routinely recognize that it is proper for an expert to analyze stock price movements over a two- or even three- day window to measure the impact of a disclosure, particularly where, as here, the stock price movement is statistically significant over consecutive days.  *See, e.g.*, *Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*, 310 F.R.D. 69, 96 (S.D.N.Y. 2015) ("A two-to three-day window is common in event studies.  Because it is standard for experts to utilize an event window including both the day of the event and the day following an event, this event window was proper."); *Fogarazzo v. Lehman Bros.*, 263 F.R.D. 90, 104 (S.D.N.Y. 2009) (accepting event study with three-day event window and rejecting argument that multi-day windows are recognized only "where the timing of discrete events was [not] ascertainable"); *Vivendi*, 634 F. Supp. 2d at 372 (accepting a three-day window for analysis at summary judgment).

For these reasons, the proposed TAC is not futile.

### B.   The Proposed Amendment is Timely and Not Made in Bad Faith

AP7 did not unduly delay or act in bad faith in seeking leave to amend.  AP7 moves for leave to amend, for the first time, before the January 13, 2023 deadline established by the Court's Scheduling Order, which was ordered "[p]ursuant to the parties' joint proposed case schedule." Doc. 131 ¶ 4.  When leave to amend is sought within the deadline, "[i]t is . . . *per se timely*."  *Vasto v. Credico (USA) LLC*, 2016 WL 3926466, at *2 (S.D.N.Y. July 18, 2016); *accord Loftex USA LLC v. Trident Ltd.*, 2012 WL 5877427, at *4 (S.D.N.Y. Nov. 20, 2012) (proposed amendment did not reflect bad faith or undue delay where plaintiff "abided by the schedule proposed by the parties and set by the Court"); *Duling v. Gristede's Operating Corp.*, 265 F.R.D. 91, 97 (S.D.N.Y. 2010) (no undue delay when motion to amend was made within deadline stipulated in scheduling order).  This holds true even if, as here, a plaintiff seeks leave to amend after the close of fact

discovery.  *See In re Pfizer Inc. Sec. Litig.*, 2012 WL 983548, at *1-2 (S.D.N.Y. Mar. 22, 2012) (motion to amend filed within "thirty (30) days after the completion of fact discovery" was "timely, having been made within the time limit previously established by the Court").

> **C.    Defendants Will Not Suffer Undue Prejudice if Leave to Amend is Granted**

Defendants will not suffer any prejudice, let alone undue prejudice, if the Court grants the Motion.  "In determining what constitutes prejudice, a court considers whether the amendment would '(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; [or] (ii) significantly delay the resolution of the dispute.'"  *Vasto*, 2016 WL 3926466, at *2 (quoting *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993)).  Neither factor results in a finding of prejudice here.

The TAC will not require Defendants to expend any additional resources to conduct discovery or prepare for trial, nor will it delay the resolution of this dispute.  The newly pled allegations solely concern loss causation and damages and are fully supportable on the current record without the need for additional fact discovery.  *See* § II *supra*.  Should Defendants and their experts choose to contest Dr. Mason's analysis, they will have ample time to do so.  AP7 has served Dr. Mason's report on Defendants contemporaneously with this Motion even though opening expert reports are not due until March 3, 2023.  *See* Doc. 130, App'x A.  Far from suffering prejudice due to the amendment, Defendants now have almost four months (until May 3, 2023) to respond to Dr. Mason's report.  *Id.*  The proposed amendment has no impact on any case deadline and, therefore, will not delay any resolution of this case.

## V.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant Plaintiff's Motion for leave to file the proposed TAC consistent with the Scheduling Order.

Dated:  January 13, 2023                              Respectfully submitted,

**KESSLER TOPAZ**
**MELTZER & CHECK, LLP**

*s/ Andrew L. Zivitz*
Andrew L. Zivitz
Matthew L. Mustokoff
Johnston de F. Whitman, Jr.
Jamie M. McCall
Margaret E. Mazzeo
Nathan A. Hasiuk
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
azivitz@ktmc.com
mmustokoff@ktmc.com
jwhitman@ktmc.com
jmccall@ktmc.com
mmazzeo@ktmc.com
nhasiuk@ktmc.com

*Lead Counsel for Sjunde AP-Fonden and the Class*

**BERNSTEIN LITOWITZ**
**BERGER & GROSSMANN LLP**

Salvatore J. Graziano
Rebecca E. Boon
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
sgraziano@blbglaw.com
rebecca.boon@blbglaw.com

*Liaison Counsel for the Class*