**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| SJUNDE AP-FONDEN, individually and on behalf of all others similarly situated,<br><br>                              Plaintiff,<br><br>        v.<br><br>THE GOLDMAN SACHS GROUP, INC., et al.,<br><br>                              Defendants. | Case No. 18-cv-12084 (VSB) (KHP) |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT AND <u>AUTHORIZATION TO DISSEMINATE NOTICE OF SETTLEMENT</u>**

# TABLE OF CONTENTS

**Page**

I.     PRELIMINARY STATEMENT .................................................................................1

II.    FACTUAL BACKGROUND....................................................................................3

       A.     Overview of the Action...........................................................................3

       B.     Settlement Negotiations and Terms of the Proposed Settlement............9

III.   THE SETTLEMENT MERITS PRELIMINARY APPROVAL.....................................10

       A.     Standards Governing Approval of Class Action Settlements................10

       B.     The Court "Will Likely Be Able" to Approve the Proposed Settlement
              Under Rule 23(e)(2)...............................................................................12

              1.     Procedural Aspects of the Settlement Satisfy Rule 23(e)(2) .....12

              2.     The Settlement's Terms Are Adequate......................................14

                     a.     The Settlement Provides Substantial Relief, Especially in
                            Light of the Costs, Risks, and Delay of Further Litigation............14

                     b.     The Settlement Treats All Class Members Fairly........................19

                     c.     The Settlement Does Not Excessively Compensate Counsel........20

                     d.     Plaintiff Has Identified All Agreements Made in
                            Connection with the Settlement........................................22

IV.    NOTICE TO THE CLASS SHOULD BE APPROVED................................................22

V.     THE COURT SHOULD NOT REQUIRE A SECOND OPT-OUT PERIOD..................24

VI.    PROPOSED SCHEDULE OF SETTLEMENT-RELATED EVENTS ..........................26

VII.   CONCLUSION...................................................................................................26

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alaska Elec. Pension Fund v. Bank of America Corp.*,
2018 WL 6250657 (S.D.N.Y. Nov. 29, 2018)..............................................................................21

*In re AppHarvest Sec. Litig.*,
2024 WL 967258 (S.D.N.Y. Mar. 6, 2024) ........................................................................... 23-24

*Arbuthnot v. Pierson*,
607 F. App'x 73 (2d Cir. 2015) ...................................................................................................22

*Ark. Tchr. Ret. Sys. v. Goldman Sachs Grp., Inc.*,
77 F.4th 74 (2d. Cir. 2023) .............................................................................................................6

*Balestra v. ATBCOIN LLC*,
2022 WL 950953 (S.D.N.Y. Mar. 29, 2022) ...............................................................................11

*Basic Inc. v. Levinson*,
485 U.S. 224 (1988)........................................................................................................................6

*Christine Asia Co., Ltd. v. Jack Yun Ma*,
2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019)..............................................................................21

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974)..........................................................................................................11

*Denney v. Deutsche Bank AG*,
443 F.3d 253 (2d Cir. 2006)..........................................................................................................25

*In re Facebook, Inc., IPO Sec. & Deriv. Litig.*,
343 F. Supp. 3d 394 (S.D.N.Y. 2018), *aff'd sub nom. In re Facebook, Inc.*,
822 F. App'x 40 (2d Cir. 2020) ....................................................................................................10

*Goldman Sachs Grp., Inc. v. Ark. Tchr. Ret. Sys.*,
594 U.S. 113 (2021)........................................................................................................................6

*In re Graña y Montero S.A.A. Sec. Litig.*,
2021 WL 4173684, at *7 (E.D.N.Y. Aug. 13, 2021), *R. & R. adopted*, 2021
WL 4173170 (E.D.N.Y. Sept. 14, 2021) ..............................................................................10, 13

*Guevoura Fund Ltd. v. Sillerman*,
2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019) .............................................................................13

*In re Initial Pub. Offering Sec. Litig.*,
671 F. Supp. 2d 467 (S.D.N.Y. 2009)...........................................................................................21

*Kleen Prods. LLC v. Int'l Paper Co.*,
  2017 WL 5247928 (N.D. Ill. Oct. 17, 2017)..................................................................12

*In re Loop Indus., Inc. Sec. Litig.*,
  2023 WL 127294 (S.D.N.Y. Jan. 5, 2023) ....................................................................24

*Low v. Trump Univ., LLC*,
  881 F.3d 1111 (9th Cir. 2018) ......................................................................................25

*In re Merrill Lynch & Co., Inc. Rsch. Reps. Sec. Litig.*,
  2007 WL 313474 (S.D.N.Y. Feb. 1, 2007)....................................................................19

*In re N. Dynasty Mins. Ltd. Sec. Litig.*,
  2023 WL 5511513 (E.D.N.Y. Aug. 24, 2023)................................................................24

*Newman v. Stein*,
  464 F.2d 689 (2d Cir. 1972)..........................................................................................14

*Okla. Firefighters Pension & Ret. Sys. v. Lexmark Int'l, Inc.*,
  2021 WL 76328 (S.D.N.Y. Jan. 7, 2021) ......................................................................19

*In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*,
  330 F.R.D. 11 (E.D.N.Y. 2019)......................................................................................14

*Pearlstein v. BlackBerry Ltd.*,
  2022 WL 4554858, at *6 (S.D.N.Y. Sept. 29, 2022)............................................... 18-19

*In re Polaroid ERISA Litig.*,
  240 F.R.D. 65 (S.D.N.Y. 2006) .....................................................................................13

*In re Pfizer Inc. Sec. Litig.*,
  2016 WL 11801285 (S.D.N.Y. Dec. 21, 2016) .............................................................21

*Sanders v. CJS Sols. Grp., LLC*,
  2018 WL 1116017 (S.D.N.Y. Feb. 28, 2018)................................................................13

*In re Signet Jewelers Ltd. Sec. Litig.*,
  2020 WL 4196468 (S.D.N.Y. July 21, 2020) ...........................................................13, 21

*In re Synchrony Fin. Sec. Litig.*,
  2023 WL 4992933 (D. Conn. Aug. 4, 2023) .................................................................12

*In re Tenaris S.A. Sec. Litig.*,
  2024 WL 1719632 (E.D.N.Y. Apr. 22, 2024) ...............................................................12

*Velez v. Novartis Pharm. Corp.*,
  2010 WL 4877852 (S.D.N.Y. Nov. 30, 2010)........................................................... 20-21

*In re Vivendi, S.A. Sec. Litig.*,
    838 F.3d 223 (2d Cir. 2016)............................................................................................15

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005)............................................................................................25

**Statutes**

15 U.S.C. § 78u-4(a)(7) ....................................................................................................23

**Other Authorities**

Fed. R. Civ. P. 23(e) ............................................................................................10, 11, 14, 19

Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment......................................11

Fed. R. Civ. P. 23(e)(2)(A)&(B) advisory committee's note to 2018 amendment........................12

4 William B. Rubenstein, *Newberg & Rubenstein on Class Actions* § 13:13 (6th
    ed. 2025) ....................................................................................................................11

Lead Plaintiff and Court-appointed Class Representative Sjunde AP-Fonden ("AP7" or "Plaintiff"), on behalf of itself and the Court-certified Class, respectfully submits this Memorandum of Law in support of its unopposed Motion, pursuant to Federal Rule of Civil Procedure ("Rule") 23, for entry of the Parties' agreed-upon [Proposed] Order Preliminarily Approving Settlement and Providing for Notice of Settlement ("Preliminary Approval Order").[1]

## I.    PRELIMINARY STATEMENT

This securities fraud class action arises out of The Goldman Sachs Group, Inc.'s role in the 1Malaysia Development Berhad ("1MDB") bond offerings and Goldman's public statements about those offerings. After seven years of hard-fought litigation, the Parties have reached an agreement to resolve the Class's claims for $500 million (the "Settlement"). AP7 and Class Counsel respectfully seek the Court's preliminary approval of the Settlement pursuant to Rule 23(e)(1) so that notice of the Settlement can be provided to the Class and the final Settlement Hearing can be scheduled.

The Settlement is an outstanding result for the Class. If approved by the Court, the Settlement will rank among the top 20 largest securities class action settlements in the Second Circuit since the passage of the Private Securities Litigation Reform Act of 1995 ("PSLRA"). *See* Mustokoff Decl. Ex. 2 (Top 100 U.S. Class Action Settlements of All-Time (2025)).

Plaintiff achieved this Settlement following a fierce contest over class certification and with Defendants' summary judgment motions pending. Plaintiff had a well-developed

---

[1]    All capitalized terms not defined herein have the meanings ascribed to them in the Stipulation and Agreement of Settlement dated May 20, 2026 ("Stipulation" or "Stip."), attached to the accompanying Declaration of Matthew L. Mustokoff as Exhibit 1. Citations to "Mustokoff Decl." are to the Declaration of Matthew L. Mustokoff. Citations to "Mason Decl." are to the Declaration of Joseph R. Mason, Ph.D. Citations to "Amin-Giwner Decl." are to the Declaration of Stephanie Amin-Giwner. Internal citations are omitted and emphasis is added unless otherwise indicated.

understanding of the strengths and weaknesses of the Class's claims at the time of settlement, having prosecuted the case through full discovery. The Parties reached the settlement following arm's-length negotiations facilitated by The Honorable Layn R. Phillips (U.S.D.J. ret.).

The Settlement merits the Court's preliminary approval, particularly in light of the substantial risks and expense of continued litigation. At the time of settlement, Plaintiff faced three separate summary judgment motions from Defendants Goldman, Lloyd Blankfein, and Gary Cohn. Most notably, Goldman contended that the Class could not establish loss causation because the alleged corrective disclosure—reports that Goldman's CEO Blankfein met with Jho Low, who had been reported to be a corruption risk connected to 1MDB—was inaccurate. As Goldman claimed, Low, although invited to attend a 2013 client event hosted by Blankfein, ultimately did not attend—therefore, there could be no loss causation. *See* Doc. 378 at 1, 5-12 ("Plaintiffs rely on a corrective disclosure that is *false*—which means that Plaintiffs' whole case fails . . . .") (emphasis in original). Notwithstanding Plaintiff's responses to this argument, the possibility that the Court would grant summary judgment on loss causation grounds was a meaningful litigation risk that Plaintiff and Class Counsel weighed when evaluating Defendants' offers of settlement.

Goldman also maintained at summary judgment that Plaintiff could not prove damages based on either the November 9 or 12, 2018 stock price declines because Plaintiff's damages expert, Dr. Mason, failed to account for allegedly confounding information also reported on these dates. *Id*. at 14-20. More specifically, Defendants argued that in calculating damages, Dr. Mason failed to account for four non-fraud-related news items that purportedly contributed to the stock price decline on November 9. Defendants further argued that a substantial, non-fraud-related confounding event fully explained the decline on the next trading day, November 12—the pre-market announcement that, according to Goldman, the Malaysian government intended to

prosecute the bank for its involvement in the 1MDB fraud and would seek damages of up to $4.5 billion. *Id*. Had Goldman fully prevailed on these arguments at summary judgment or trial, the Class's recoverable damages would have been reduced to *zero*. And if Goldman was partially successful in challenging damages based on the November 12 stock price decline, the Class's damages would be cut by a meaningful amount.

In agreeing to settle, AP7 and Class Counsel made a fully informed evaluation of both the risks of opposing summary judgment and taking the case to trial and the fairness of resolving the Action at this time. While AP7 and Class Counsel believe that the Class's claims are meritorious, they also recognize the significant risk that a summary judgment motion, trial, or post-trial appeal could preclude *any* recovery for the Class, let alone a recovery greater than the Settlement Amount.

At the Settlement Hearing, the Court will have before it more extensive submissions in support of the Settlement, and will be asked to determine whether, in accordance with Rule 23(e)(2), the Settlement is fair, reasonable, and adequate. At this juncture, Plaintiff respectfully requests that the Court enter the Preliminary Approval Order and, as set forth in the proposed schedule in Section VI *infra*, schedule the Settlement Hearing for a date 125 calendar days after entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter, to allow time for disseminating notice to Class Members, compliance with the Class Action Fairness Act of 2005, 28 U.S.C. § 1715 *et seq*., and the receipt of Class Member Claims.

## II.    FACTUAL BACKGROUND

### A.    Overview of the Action

This Action commenced with the filing of the initial complaint by Daniel Plaut against Goldman and certain of its officers on December 20, 2018. Doc. 1. Plaut's complaint asserted claims pursuant to Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a), and United States Securities and Exchange Commission

("SEC") Rule 10b-5, 17 C.F.R. § 240. Plaut filed an amended complaint on March 11, 2019. Doc. 43.

Following notice to the public stating the deadline for putative class members to move for lead plaintiff appointment (Doc. 27-3), several parties filed motions. Docs. 15, 18, 21, 25, 29. On September 19, 2019, the Court appointed AP7 as Lead Plaintiff pursuant to the PSLRA and appointed Kessler Topaz Meltzer & Check, LLP as lead counsel and Bernstein Litowitz Berger & Grossmann LLP as liaison counsel for the putative class. Doc. 56.

Following an extensive investigation, on October 28, 2019, AP7 filed the Second Amended Complaint against Goldman and certain of its officers, alleging violations of Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5. Doc. 63. Specifically, the Second Amended Complaint alleged that Defendants violated the federal securities laws by making false and misleading statements pertaining to the 1MDB bond transactions underwritten by Goldman. The Second Amended Complaint further alleged that following public reports relating to Goldman and 1MDB, Goldman's stock price fell, causing losses to Goldman's investors.

Defendants moved to dismiss the Second Amended Complaint on January 9, 2020. Docs. 79-83. Plaintiff opposed Defendants' motion on March 13, 2020 (Doc. 90), and Defendants filed a reply brief on May 4, 2020. Doc. 94.

On June 28, 2021, the Court granted in part and denied in part Defendants' motion to dismiss the Second Amended Complaint. Doc. 102. Although the Court sustained the Section 10(b) claims against Defendants Goldman, Lloyd Blankfein, and Gary Cohn (*id*. at 28-34), it dismissed the Section 10(b) claim against Harvey M. Schwartz for failure to plead scienter. *Id*. at 27-28. In addition, the Court held that Plaintiff had failed to adequately allege loss causation with respect to four of the six alleged corrective disclosures, holding that the information conveyed in

4

the disclosures had been previously disclosed to the market or represented the materialization of a previously disclosed risk. *Id*. at 34-41.

On August 31, 2021, Defendants answered the Second Amended Complaint, denying all claims and asserting several affirmative defenses. Docs. 118-20.

Between August 2021 and March 2024, the Parties engaged in extensive discovery—on both merits and class certification issues. Among other things, Plaintiff: (i) served document requests, interrogatories, and requests for admission on Defendants; (ii) served document subpoenas on multiple third parties in the United States; (iii) moved the Court for the issuance of letters rogatory to take the depositions of three ex-Goldman employees residing in the United Kingdom, and subsequently obtained agreements to conduct the depositions of five additional witnesses in the United Kingdom and one witness located in Singapore; (iv) obtained and reviewed over 244,000 documents produced by Defendants and third parties, totaling over 1.9 million pages, in addition to over 2,800 recorded telephone calls totaling over 535 hours; (v) searched for, reviewed and produced documents in response to Defendants' discovery requests, as well as provided written discovery responses to document requests and interrogatories served by Defendants; (vi) took or defended a total of 43 fact and expert witness depositions and defended the deposition of AP7's representative; and (vii) exchanged opening and rebuttal expert reports with Defendants—collectively among all Parties, there were seven merits experts and three experts at class certification.

On November 12, 2021, Plaintiff filed a motion for class certification. Docs. 140-43. The motion was accompanied by a report from Plaintiff's expert, Dr. Mason, on market efficiency and a common damages methodology. Doc. 142-1. Defendants opposed Plaintiff's motion on January 27, 2022 (Docs. 146-48), and Plaintiff filed its reply brief on March 24, 2022. Docs. 159-60.

On January 13, 2023, Plaintiff filed a motion for leave to amend the Second Amended Complaint. Docs. 209-12. Defendants opposed the motion on February 10, 2023 (Docs. 222-23), and Plaintiff filed its reply brief on February 24, 2023. Doc. 225. Pursuant to an order by U.S. Magistrate Judge Katharine H. Parker granting Plaintiff's motion to amend (Doc. 270), on August 4, 2023, Plaintiff filed the operative Third Amended Complaint. Doc. 272. The Third Amended Complaint amended Plaintiff's allegations regarding loss causation. *Id*., ¶¶ 373-82. Specifically, the Third Amended Complaint alleged that the November 8-9, 2018 reports of Defendant Blankfein's 2013 meeting with Low following the three 1MDB bond offerings caused Goldman's stock price to decline beginning on November 9, 2018 and continuing through November 12, 2028. *Id*., ¶¶ 374-77. The Third Amended Complaint further alleged that no more than $1.61 per share of the $11.70 per share abnormal return in Goldman's stock price on November 12, 2018 was attributable to information regarding the Malaysian government's intent to seek the disgorgement of Goldman's underwriting fees reported by *Bloomberg* on that date. *Id*., ¶ 379.

Defendants answered the Third Amended Complaint on August 18, 2023, denying all claims and asserting several affirmative defenses. Docs. 275-77.

On August 10, 2023, while Plaintiff's motion for class certification was pending, the U.S. Court of Appeals for the Second Circuit issued an opinion in *Arkansas Teacher Retirement System v. Goldman Sachs Group, Inc.*, 77 F.4th 74 (2d. Cir. 2023) ("*ATRS*"), which provided important guidance regarding the requirements for class certification in securities class actions and, in particular, the means for rebutting the presumption of classwide reliance adopted by the U.S. Supreme Court in *Basic Inc. v. Levinson*, 485 U.S. 224 (1988). *ATRS* was the first decision by the Second Circuit interpreting the Supreme Court's decision in *Goldman Sachs Group, Inc. v. Arkansas Teacher Retirement System*, 594 U.S. 113 (2021).

6

On August 18, 2023, "in light of the motion to amend that was granted, and in light of the recent Second Circuit decision [*ATRS*] regarding the applicable class certification standard," Magistrate Judge Parker terminated the pending motion for class certification without prejudice and ordered renewed briefing. Doc. 278.

On September 29, 2023, Plaintiff filed a renewed motion for class certification. Docs. 291-96. The renewed motion was accompanied by a report from Plaintiff's expert, Dr. Mason, on market efficiency and a common damages methodology. Doc. 295-1. Defendants opposed Plaintiff's renewed motion on October 30, 2023 (Docs. 307-08), and Plaintiff filed its reply brief on December 15, 2023. Docs. 313-16.

On February 22, 2024, Magistrate Judge Parker held a full-day evidentiary hearing on Plaintiff's renewed motion for class certification. Doc. 326. Both Plaintiff's expert, Dr. Mason, and Defendants' expert, S.P. Kothari, Ph.D., testified for several hours. Prior to the testimony and again at the conclusion of the testimony, Magistrate Judge Parker heard oral argument on Plaintiff's motion. *Id*.

On April 5, 2024, Magistrate Judge Parker issued the Report and Recommendation on Plaintiff's motion ("R&R"), which recommended granting in part and denying in part Plaintiff's motion. Doc. 329. Specifically, the R&R recommended certifying a class consisting of "all persons and entities that purchased or otherwise acquired Goldman's common stock between December 22, 2016, and November 8, 2018, inclusive, and were damaged thereby" (subject to certain exclusions). *Id*. at 58. In that regard, the R&R recommended that the Court certify a shorter class period than initially alleged by Plaintiff (the original proposed Class Period began on October 29, 2014) because the content of the alleged misstatements that pre-dated December 22, 2016 did not sufficiently match the content of the remaining corrective disclosure. *Id*. at 32, 37-38.

The R&R was one of the first judicial decisions in the Second Circuit to apply *ATRS* and certify or recommend certification of a shareholder class under the *ATRS* framework.

Defendants objected to the R&R on May 3, 2024 (Doc. 335), and Plaintiff filed a response to Defendants' objections on May 31, 2024. Doc. 338.

On September 4, 2025, the Court overruled Defendants' objections to the R&R and adopted the R&R in its entirety. Doc. 355.

On September 18, 2025, Defendants filed a petition for permission to appeal the Court's class certification order pursuant to Rule 23(f). On September 29, 2025, Plaintiff opposed Defendants' petition, and on October 6, 2025, Defendants filed a motion for leave to file a reply in support of their petition. The Second Circuit denied Defendants' petition on December 23, 2025, and the mandate issued on January 14, 2026. Doc. 372.

On November 18, 2025, Plaintiff filed an unopposed motion to approve the form and manner of notice of the pendency of the Action as a class action to the Class ("Class Notice"). Docs. 365-68. Magistrate Judge Parker granted Plaintiff's motion on January 5, 2026. Doc. 371. Among other things, the Court found that the proposed Class Notice met the requirements of Rule 23 and due process and constituted the best notice practicable under the circumstances. *Id*. Class Notice was mailed to potential Class Members beginning on January 27, 2026, and a summary notice of the pendency of the Action as a class action was published in *The Wall Street Journal* and transmitted over *PR Newswire* on February 2, 2026. Doc. 389.

The Class Notice provided Class Members with the opportunity to request exclusion from the Class, explained that right, and set forth the procedures for doing so. Docs. 389-1; 389-2 at 3-4. The Class Notice stated that it would be within the Court's discretion whether to permit a second opportunity to request exclusion if there was a settlement. Doc. 389-2 at 3. The Class Notice also

informed Class Members that if they chose to remain a Class Member, they would "be bound by all past, present, and future orders and judgments in the Action, whether favorable or unfavorable." *Id.*

The Class Notice set March 28, 2026 as the deadline for submitting requests for exclusion. A total of 22 requests for exclusion from the Class were received. Doc. 389 ¶ 14 & Exs. E-1–2; Doc. 397, ¶ 4 & Ex. A. *See also* Stip., Appendix 1.

On March 2, 2026, Defendants moved for summary judgment. Docs. 377-88. Defendants' motions for summary judgment were pending at the time the Settlement was reached.

**B.      Settlement Negotiations and Terms of the Proposed Settlement**

On April 20, 2026, the Parties engaged in a mediation before Judge Layn R. Phillips (ret.), one of the pre-eminent class action mediators in the country. With Judge Phillips's assistance, the Parties reached an agreement-in-principle to resolve the Action and ultimately executed the Stipulation on May 20, 2026. *See* Ex. 1 to Mustokoff Decl.[2] The Stipulation provides that Goldman will pay or cause to be paid the Settlement Amount into the Escrow Account maintained on behalf of the Class. Stip., ¶ 9. The Settlement is not claims-made. *Id.*, ¶ 14. Accordingly, if it is approved, the Class will receive the full benefit of the Settlement Amount, plus interest, after deducting Court-approved attorneys' fees and expenses ("Net Settlement Fund"), without regard to the number of Claims submitted or the total amount of losses the Claims represent. After the Settlement becomes Final and the Effective Date occurs, the Net Settlement Fund will be distributed among eligible Class Members who submit valid Claims in accordance with a Court-

---

[2]      On the same day, the Parties also entered into a confidential Supplemental Agreement which applies *only if* the Court requires a second opt-out period. If there is a second opt-out period, the Supplemental Agreement gives Defendants the right to terminate the Settlement if valid opt-out requests exceed an agreed-upon amount. *See* § III(B)(2)(d) herein. If, as the Parties request, there is no second opt-out period, the Supplemental Agreement is moot.

approved plan of allocation. *Id.*, ¶¶ 19-28. Class Members will release the "Released Plaintiff's Claims" (*id.*, ¶ 1(vv)) in exchange for the Settlement Amount and the right to receive a payment from the Net Settlement Fund.

## III.    THE SETTLEMENT MERITS PRELIMINARY APPROVAL

### A.    Standards Governing Approval of Class Action Settlements

Settlement is a strongly favored method for resolving class action litigation. *See In re Facebook, Inc., IPO Sec. & Deriv. Litig.*, 343 F. Supp. 3d 394, 408 (S.D.N.Y. 2018) ("Courts in this Circuit recognize a strong judicial policy in favor of settlements, particularly in the class action context."), *aff'd sub nom. In re Facebook, Inc.*, 822 F. App'x 40 (2d Cir. 2020). "[C]lass action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation." *In re Graña y Montero S.A.A. Sec. Litig.*, 2021 WL 4173684, at *7 (E.D.N.Y. Aug. 13, 2021), *R&R adopted*, 2021 WL 4173170 (E.D.N.Y. Sept. 14, 2021) (brackets in original).

Judicial approval of a class action settlement is a two-step process. *First*, the court performs a preliminary review of the terms of the proposed settlement to determine whether to send notice of the settlement to the class. Fed. R. Civ. P. 23(e)(1). *Second*, after notice has been provided and a hearing has been held, the court determines whether to grant final approval of the settlement. Fed. R. Civ. P. 23(e)(2).

With respect to the first step of the approval process, a court should grant preliminary approval upon a finding that the court "*will likely be able*" to (i) finally approve the settlement under Rule 23(e)(2) and (ii) certify the class for purposes of the settlement.[3] Fed. R. Civ. P.

---

[3]    Here, the Court already certified the Class in the course of litigation. Doc. 355. There is no difference between the Class previously certified and the Class the Settlement will bind.

23(e)(1)(B). In considering whether final approval is likely, Rule 23(e)(2) provides that courts should consider whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.[4]

This standard for preliminary approval under Rule 23(e) was revised through amendments that effectively codified existing case law and retains the well-settled principle that preliminary approval should be granted where, as here, "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible [judicial] approval." 4 William B. Rubenstein, *Newberg & Rubenstein on Class Actions* § 13:13 (6th ed. 2025); *see also Balestra v. ATBCOIN LLC*, 2022 WL 950953, at *2 (S.D.N.Y. Mar. 29, 2022) (same).

Because each of the Rule 23(e)(2) factors is satisfied here, final approval of the Settlement is "likely," and preliminary approval is merited.

---

[4]    Final approval will involve an analysis of the Rule 23(e)(2) factors and the Second Circuit's approval factors: "(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974). *See also* Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment (noting that Rule 23(e)(2) factors are not intended to "displace any factor" previously adopted by the Court of Appeals).

B.      **The Court "Will Likely Be Able" to Approve the Proposed Settlement Under Rule 23(e)(2)**

1.      **Procedural Aspects of the Settlement Satisfy Rule 23(e)(2)**

Rule 23(e)(2)'s first two factors "look[] to the conduct of the litigation and of the negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23(e)(2)(A)&(B) advisory committee's note to 2018 amendment. In evaluating these factors, courts may consider "the nature and amount of discovery in this or other cases, or the actual outcomes of other cases, [which] may indicate whether counsel negotiating on behalf of the class had an adequate information base." *Id.*; *see also In re Tenaris S.A. Sec. Litig.*, 2024 WL 1719632, at *4 (E.D.N.Y. Apr. 22, 2024) (procedural fairness focuses on "whether the settlement resulted from arm's-length negotiations, and whether class counsel possessed the experience and ability, and [ ] engaged in the discovery, necessary to effective representation of the class's interests"). Courts have found "[a] presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *In re Synchrony Fin. Sec. Litig.*, 2023 WL 4992933, at *5 (D. Conn. Aug. 4, 2023).

The Settlement embodies all of the hallmarks of a procedurally fair resolution under Rule 23(e)(2).

*First*, the Parties vigorously litigated this Action for seven years. At the time of settlement, the Parties had completed full fact and expert discovery and class certification proceedings (including a full-day evidentiary hearing and a Rule 23(f) petition), and three summary judgment motions were pending. *See, e.g.*, *Kleen Prods. LLC v. Int'l Paper Co.*, 2017 WL 5247928, at *3 (N.D. Ill. Oct. 17, 2017) (noting "case was in an advanced stage" and "the record exceptionally well-developed" where action had been pending seven years, discovery was complete, the class had been certified, and summary judgment motions were fully briefed).

12

Through the summary judgment process and the Parties' mediation, Class Counsel further vetted the factual record, analyzed Defendants' arguments, and thoroughly considered their potential impact on recoverable damages. Given the advanced stage of the case, Class Counsel was well informed of the strengths and weaknesses of the Parties' claims and defenses at the time of settlement. *See Graña y Montero*, 2021 WL 4173684, at *11 ("Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement").

Additionally, by appointing AP7 to serve as the Class's representative in connection with class certification, the Court already found it to have claims typical of those of other Class Members. Moreover, like the rest of the Class, AP7 has a strong interest in obtaining the largest possible recovery from Defendants. *See In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest between the class representatives and other class members.").

*Second*, the Parties' settlement negotiations were at arm's length and facilitated by an experienced mediator. These negotiations included an all-day mediation before Judge Phillips and the exchange of comprehensive mediation briefing. Judge Phillips's close involvement in the settlement process further demonstrates that the Settlement is fair and that the Parties achieved it free of collusion. *See Sanders v. CJS Sols. Grp., LLC*, 2018 WL 1116017, at *2 (S.D.N.Y. Feb. 28, 2018) ("[T]he settlement was negotiated for at arm's length with the assistance of an independent mediator, which reinforces the non-collusive nature of the settlement."); *see also In re Signet Jewelers Ltd. Sec. Litig.*, 2020 WL 4196468, at *3 (S.D.N.Y. July 21, 2020) (granting final approval of a settlement following mediation before Judge Phillips); *Guevoura Fund Ltd. v. Sillerman*, 2019 WL 6889901, at *6 (S.D.N.Y. Dec. 18, 2019) (same).

### 2.    The Settlement's Terms Are Adequate

Rules 23(e)(2)(C) and (D) direct the Court to evaluate whether "the relief provided for the class is adequate" and "the proposal treats class members equitably relative to each other." Here, the Settlement represents a very favorable result for the Class in light of the risks of litigating the Action through summary judgment and trial. Furthermore, Class Counsel, with the assistance of Plaintiff's damages expert, has proposed a plan for allocating the Settlement proceeds that ensures all Class Members will be treated equitably relative to their respective losses.

### a.    The Settlement Provides Substantial Relief, Especially in Light of the Costs, Risks, and Delay of Further Litigation

A key factor to be considered in assessing the approval of a class action settlement is the plaintiff's likelihood of success on the merits, balanced against the relief offered in the settlement. Here the Settlement provides for a near-term cash recovery of $500 million to be allocated among Class Members following the deduction of Court-approved fees and expenses. In comparison, had the Action continued, Plaintiff would face numerous risks that could have precluded it from securing any recovery on behalf of the Class. As the Second Circuit has explained, there is "a range of reasonableness with respect to a settlement" that "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972); *see also In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*, 330 F.R.D. 11, 48 (E.D.N.Y. 2019) (in considering reasonableness, "a court must compare the terms of the compromise with the likely rewards of litigation").

While Plaintiff remains confident in its ability to prove its claims, taking any case to trial is a risky proposition. Had Plaintiff taken this Action to trial, it would have had to present its case through the testimony of largely adverse witnesses and extensive expert testimony.

14

Plaintiff also recognized that Defendants had significant defenses to its claims. Had the Settlement not been reached, the Court would have decided Defendants' summary judgment motions, which raised difficult challenges to loss causation and damages. As discussed above (at 2-3), Goldman argued in its summary judgment motion that Plaintiff could not establish loss causation given the purported inaccuracy of the November 8-9, 2018 corrective disclosure. As Goldman asserted: "The record shows that Low did not attend the 2013 event [with Blankfein]" and, therefore, there is "no evidence supporting the truth of the 'corrective' disclosure on which [Plaintiff's] whole case depends." Doc. 378 at 1.

Plaintiff believed that they had sound responses to this argument. For example, Plaintiff would have argued that even if Low—who was clearly invited by Goldman to attend the Blankfein meeting (as evidenced by a seating chart, briefing memo for the meeting and other documents)— did not attend at the last minute, the market correctly perceived the disclosure as revealing Goldman's complicity in the 1MDB fraud and thus "constructively disclos[ed] the fraud." *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 261-62 (2d Cir. 2016). Moreover, at class certification, Magistrate Judge Parker stated that "[w]hether or not Low attended the meeting has no bearing" on "whether the corrective disclosure alerted the market to the falsity of the earlier misstatements." Doc. 329 at 11 n.5. Plaintiff's arguments notwithstanding the risk that the Court would grant summary judgment on loss causation grounds was a highly consequential risk that Plaintiff and Class Counsel evaluated at the time of settlement.

Goldman also argued at summary judgment that, to the extent Plaintiff could prove any damages stemming from the decline in Goldman's stock price on November 9, 2018, the Court should preclude damages based on the larger stock price decline on the next trading day, November 12, 2018. Doc. 378 at 14-18. As Defendants claimed, the November 12 price decline was not

15

caused by the Low-Blankfein news as Plaintiff alleged, but rather a substantial, non-fraud-related "confounding" factor—a report by *Bloomberg* before the market opened on November 12 that, according to Goldman, stated that the Malaysian government intended to prosecute Goldman and sought to recoup Goldman's $600 million in underwriting fees from the 1MDB bond offerings plus consequential damages of up to $4.5 billion (the "Full Refund News"). *Id*. In so arguing, Goldman underscored the Court's comment in the Class Certification Order that the Full Refund News was indeed a "significant confounding variable" and that the substantial "length of time that had elapsed between the corrective disclosure . . . and the November 12 trading day" suggested that not all of the November 12 price decline was due to the corrective disclosure (even if Defendants had failed to satisfy their burden at class certification to show a complete lack of price impact). *Id*. at 15. Goldman further noted that "analysts and press reports on November 12 repeatedly emphasized" the "*new*" fact that Malaysia would seek to recover as much as $4.5 billion, i.e., well in excess of the $600 million in fees paid to Goldman. *Id*. at 17-18 (emphasis in original). Plaintiff's loss causation theory depended on the Court or a jury accepting its expert's testimony disaggregating the impact of the Full Refund News. Had Defendants prevailed on this argument at summary judgment or trial, the Class's recoverable damages would have been reduced by a significant amount. Mason Decl. ¶ 13, attached as Ex. 3 to the Mustokoff Decl.

Goldman also asserted that Dr. Mason failed to reliably disaggregate the impact of "four pieces of Goldman-specific negative news" on November 9, 2018 from the impact of the corrective disclosure. Doc. 378 at 19-22. Among other things, Goldman argued that Dr. Mason could not explain why "all four items of confounding news on November 9 occurred closer in time than the alleged corrective disclosure did to the only stock-price decline that day that was statistically significant at a 95% confidence level: the decline from 2:55 p.m. to market close." *Id*. at 22.

16

Goldman maintained that in light of Dr. Mason's failure to disaggregate the impact of any confounding events on November 9, the Court "should enter summary judgment for Defendants on claimed damages arising from the November 9 stock-price decline." *Id*.

The anticipated "battle of the experts" on these issues of loss causation and damages created significant uncertainty and risks to recovery, further supporting the Settlement. Even if Plaintiff had prevailed at summary judgment and trial, appeals were an additional risk and would have included issues of first impression in the Second Circuit relating to purportedly inaccurate corrective disclosures and disaggregation of non-fraud-related information. The appellate process could have extended for years and might have led to a smaller recovery, or no recovery at all.

Goldman also argued that Plaintiff could not establish the falsity of Goldman's December 22, 2016 statement that it had found "no evidence" of Low's involvement in the 1MDB bond transactions. *Id.* at 23-27. According to Goldman, Plaintiff "reformulated" this statement as a denial of *Blankfein's* knowledge of Low's involvement to overcome the fact that there was extensive reporting of certain Goldman employees' knowledge of Low's involvement prior to the corrective disclosure. *Id.* at 23. Goldman further argued that discovery had proven that Blankfein was unaware of Low's involvement in the 1MDB bond deals at the time of Goldman's statement. *Id*. While Plaintiff was prepared to marshal extensive evidence to argue the falsity of Goldman's statement, whether construed as a denial of institutional complicity in the 1MDB fraud (as Plaintiff contends) or as a denial of Blankfein's knowledge, this argument presented additional risk. In particular, there was a risk that even if the Court denied summary judgment, it could significantly limit the scope of relevant evidence at trial if it construed Goldman's statement as a denial of only Blankfein's knowledge.

17

Finally, Defendant Blankfein argued that summary judgment on Plaintiff's Section 10(b) claim against him was warranted due to Plaintiff's purported failure to establish falsity and scienter with respect to his November 1, 2018 statement that he was not aware of red flags in connection with 1MDB. *See* Doc. 382. Blankfein avowed that he "was not personally involved in the negotiation or approval of the 1MDB bond transactions," nor was he ever "informed that [Jho] Low had been rejected as a private wealth client by Goldman" as a corruption risk. *Id*. at 1, 3. Although Plaintiff maintains that there is sufficient evidence demonstrating both the falsity of Blankfein's "no red flags" statement and his scienter, the resolution of these issues would likely turn at trial on the jury's evaluation of Blankfein's credibility—posing an additional trial risk.[5]

The Settlement also represents a substantial percentage of the Class's potential recoverable damages (as estimated by Plaintiff's damages expert) had the Action proceeded to trial. Plaintiff's expert estimated class-wide damages to range from approximately $847 million to $3.16 billion, depending on the damages model employed and the duration of the damages period determined by the jury (i.e., a single-day price decline (November 9, 2018) or a two-day price decline (November 9 and 12, 2018). Mason Decl. ¶¶ 6-13. Using this estimated range, the Settlement represents approximately 16% to 59% of the Class's potential recoverable damages—an outstanding recovery by any measure, and one that reflects the informed assessment of Plaintiff and its counsel of the strength of the Class's claims and the risks of litigating this complex case through trial and appeals.

While each securities class action reflects its own unique risks, the recovery obtained here compares favorably to recoveries achieved in other securities cases in this District. *See, e.g.*,

---

[5]   Following the Class Certification Order, Defendant Cohn remained in this Action solely as a Section 20(a) Defendant. Cohn argued that summary judgment should be granted for him because he left Goldman in 2016, he did not personally make any of the alleged misstatements, and he did not exercise any control over the statements. Doc. 385. Cohn further argued that there was no evidence he engaged in culpable participation as to the December 22, 2016 statement. *Id.*

*Pearlstein v. BlackBerry Ltd.*, 2022 WL 4554858, at \*6 (S.D.N.Y. Sept. 29, 2022) (approving recovery of 13.75% of estimated maximum damages of $1.2 billion which was "well within the range of reasonableness and, in fact, considerably above the high end of historical averages" and "substantially exceed[ed] the median recovery of 2.3% of . . . damages for securities class actions with damages over $1 billion between 2012-2020" and the "median recovery of 4.2% of damages in 2021"); *Okla. Firefighters Pension & Ret. Sys. v. Lexmark Int'l, Inc.*, 2021 WL 76328, at \*3 (S.D.N.Y. Jan. 7, 2021) (approving settlement of 10% of estimated damages, noting that the settlement was "within the range previously approved by judges in this District," referencing recoveries ranging from 3% to 11% of estimated damages); *In re Merrill Lynch & Co., Inc. Rsch. Reps. Sec. Litig.*, 2007 WL 313474, at \*10 (S.D.N.Y. Feb. 1, 2007) (approving recovery of approximately 6.25%, which was "at the higher end of the range of reasonableness").

Moreover, from an absolute recovery standpoint, the Settlement, if approved, will rank among the top 20 largest securities class action settlements in the Second Circuit since the passage of the PSLRA, and will mark the fourth largest PSLRA recovery in the Circuit within the last ten years. *See* Mustokoff Decl. Ex. 2.

Thus, the Settlement provides a significant recovery for Class Members.

### b.    The Settlement Treats All Class Members Fairly

The Court must also ultimately assess whether the Settlement equitably distributes relief to the Class. Fed. R. Civ. P. 23(e)(2)(C)(ii) & (e)(2)(D). The proposed Plan of Allocation ("Plan"), set forth in the long-form Notice and developed in consultation with Plaintiff's damages expert, provides a fair and effective means of distributing the Net Settlement Fund and treats Class Members equitably.

Specifically, the Plan provides for distribution of the Net Settlement Fund to Class Members who submit timely and valid Claims demonstrating a loss on their transactions in

19

Goldman common stock during the Class Period. The Plan is based on the estimated amount of artificial inflation in Goldman's stock price during the Class Period that was allegedly caused by Defendants' misconduct. In order to have a loss under the Plan, a Class Member must have held Goldman common stock purchased or acquired during the Class Period through at least November 8, 2018—the date when the disclosure of alleged corrective information removed the alleged artificial inflation from the price of the stock. The Plan treats all Class Members equitably and eligible Class Members will receive a *pro rata* distribution from the Net Settlement Fund based on the amount of their recognized losses.

The Settlement will be effectuated with the assistance of an experienced claims administrator. If approved by the Court, Epiq Class Action & Claims Solutions, Inc. ("Epiq")—the administrator previously approved by the Court to conduct Class Notice—will employ a standard and well-tested protocol for processing claims in securities class actions. Namely, potential Class Members will submit Claims, either by mail or online and, based on the information submitted, Epiq will determine each Claimant's eligibility to participate in the Settlement by calculating his, her, or its "Recognized Claim" under the Plan. *See* Stip., ¶ 22. Claimants will be notified of (and given the chance to remedy) any defects in their Claims, and will also have the opportunity to contest any rejection of their Claims. *Id.*, ¶ 26(d). Any Claim disputes that cannot be resolved will be presented to the Court. *Id.*, ¶ 26(e).

The equitable treatment of all Class Members further weighs in favor of preliminary approval of the Settlement.

        **c.**        **The Settlement Does Not Excessively Compensate Counsel**

The notices provide that Class Counsel will apply for an award of attorneys' fees not to exceed 23% of the Settlement Fund. A fee of 23% is reasonable in this seven-year-old case and it falls within the range of attorneys' fees typically awarded by courts. *See Velez v. Novartis Pharm.*

*Corp.*, 2010 WL 4877852, at \*21 (S.D.N.Y. Nov. 30, 2010) ("The federal courts have established that a standard fee in complex class action cases like this one, where plaintiffs' counsel have achieved a good recovery for the class, ranges from 20 to 50 percent of the gross settlement benefit.").

There is ample precedent in this District for granting fees in excess of 23% of the settlement in securities class actions. *See, e.g.*, *In re Alibaba Group Holding Ltd. Sec. Litig.*, No. 20-cv-09568-GBD-JW, Doc. 149 (S.D.N.Y. Mar. 27, 2025) (awarding 25% of $433,500,000 settlement); *Signet Jewelers*, 2020 WL 4196468, at \*15-16 (awarding 25% of $240 million settlement); *Christine Asia Co., Ltd. v. Jack Yun Ma*, 2019 WL 5257534, at \*17 (S.D.N.Y. Oct. 16, 2019) (awarding 25% of $250 million settlement); *Alaska Elec. Pension Fund v. Bank of America Corp.*, 2018 WL 6250657, at \*1 (S.D.N.Y. Nov. 29, 2018) (awarding 26% of $504.5 million settlement); *In re Pfizer Inc. Sec. Litig.*, 2016 WL 11801285, at \*1 (S.D.N.Y. Dec. 21, 2016) (awarding 28% of $486 million settlement); *In re Bank of New York Mellon Corp. Forex Transactions Litig.*, No. 12-MD-2335 (LAK) (JLC), Doc. 637 at 3 (S.D.N.Y. Sept. 24, 2015) (awarding 25% of $335 million settlement); *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 516 & n.354 (S.D.N.Y. 2009) (awarding 33.33% of $510 million settlement); *see also Fulton Cnty. Emp. Ret. Sys. v. Blankfein*, 19-cv-1562 (S.D.N.Y. Jan. 20, 2023), Doc. 106 at 8-9 (Broderick, J.) (awarding 25% of $79.5 million settlement).

Class Counsel will also seek payment of Litigation Expenses incurred in connection with the prosecution of the Action, in an amount not to exceed $6.75 million.

Class Members will have an opportunity to weigh in on Class Counsel's fee and expense requests before the Settlement Hearing, and after counsel has made submissions in support of their

request. In these submissions counsel will, among other things, present their lodestar (time expended multiplied by hourly rates) as well as the case law addressing fee awards in this Circuit.

### d. Plaintiff Has Identified All Agreements Made in Connection with the Settlement

In addition to the Term Sheet and Stipulation, the Parties have entered into a confidential Supplemental Agreement which applies *only if* the Court provides a second opportunity for Class Members to request exclusion from the Class in connection with the Settlement ("Supplemental Agreement"). Stip., ¶ 37. As set forth in the Supplemental Agreement, if there is a second opportunity to request exclusion, Goldman will have the option to terminate the Settlement in the event that requests for exclusion in connection with the Settlement exceed certain agreed-upon conditions. As is standard practice in securities class actions, the Supplemental Agreement is not being made public and, pursuant to its terms, the Supplemental Agreement may only be submitted to the Court *in camera*. The Supplemental Agreement, Stipulation, and Term Sheet are the only agreements concerning the Settlement entered into by the Parties.

## IV. NOTICE TO THE CLASS SHOULD BE APPROVED

"There are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements; the settlement notice must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Arbuthnot v. Pierson*, 607 F. App'x 73, 73-74 (2d Cir. 2015). Moreover, "[t]he adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness." *Id.* at 73.

As outlined in the Preliminary Approval Order, if the Settlement is preliminarily approved, the Claims Administrator will mail and/or email the Postcard Notice (Ex. A-1 to Stip.) to all potential Class Members who were previously mailed/emailed Class Notice and any other

potential Class Members who can be identified through reasonable efforts. The Postcard Notice provides important information regarding the Settlement, along with the rights of Class Members in connection therewith, and directs recipients to www.GoldmanSachsSecuritiesAction.com and the Notice for more information regarding the Settlement. In addition, the Claims Administrator will post downloadable copies of the Notice and Claim Form (Exs. A-2 & A-4 to Stip.), as well as other important documents, on the Website and will cause the Summary Notice (Ex. A-3 to Stip.) to be published in *The Wall Street Journal* and transmitted over *PR Newswire*.

The proposed notices will collectively apprise recipients of: (i) the essential terms of the Settlement; (ii) the considerations that caused Plaintiff and Class Counsel to conclude that the Settlement is fair, reasonable, and adequate; (iii) the proposed Plan of Allocation; (iv) the binding effect of a class judgment under Rule 23(c)(3)(B); (v) the date, time and place of the Settlement Hearing; and (vi) the procedures and deadlines for submitting a Claim and objecting to the Settlement. The Notice also satisfies the PSLRA's additional requirements by stating: (i) the Settlement amount in the aggregate and on an average per share basis; (ii) that the Parties do not agree on the amount of damages per share that would be recoverable at trial; (iii) that Class Counsel intend to apply for attorneys' fees and expenses (including maximum amount of attorneys' fees and expenses to be sought and the amount of such fees and expenses on an average per share basis); (iv) Class Counsel's contact information; and (v) the reasons for the Settlement. 15 U.S.C. § 78u-4(a)(7).

The proposed notice plan is also the same method used in numerous other securities class actions as well as the method utilized for the Class Notice campaign in this case. Courts in this Circuit routinely find that comparable notice procedures represent the best notice practicable under the circumstances and satisfy the requirements of Rule 23 and due process. *See, e.g.*, *In re*

*AppHarvest Sec. Litig.*, 2024 WL 967258, at *3-4 (S.D.N.Y. Mar. 6, 2024); *In re Loop Indus., Inc. Sec. Litig.*, 2023 WL 127294, at *2 (S.D.N.Y. Jan. 5, 2023); *In re N. Dynasty Mins. Ltd. Sec. Litig.*, 2023 WL 5511513, at *14-15 (E.D.N.Y. Aug. 24, 2023).

Plaintiff also seeks the Court's authorization to retain Epiq as the Claims Administrator to supervise and administer the notice procedure in connection with the Settlement as well as to process Claims. Epiq has successfully administered numerous complex securities class action settlements in this District and elsewhere and is equally well-suited to serve as the Claims Administrator here. *See* Amin-Giwner Decl. ¶ 2, attached as Ex. 4 to Mustokoff Decl.; *see also* www.EpiqGlobal.com.

## V.      THE COURT SHOULD NOT REQUIRE A SECOND OPT-OUT PERIOD

In January 2026, Epiq began an extensive notice campaign to potential Class Members to inform them of the pendency of the Action as a class action as well as their right to request exclusion (or opt out) from the Class and the procedures for doing so. *See* Doc. 389. Epiq reported mailing over 624,000 notices to potential Class Members and nominees during this campaign. *See id.*, ¶ 8, Exs. A & B. A related summary notice was also published in *The Wall Street Journal* and transmitted over *PR Newswire. See id.*, ¶ 9, Ex. D.

The notices disseminated during the Class Notice campaign advised recipients that, pursuant to Rule 23(e)(4), it would be within the Court's discretion whether to allow a second opportunity to request exclusion from the Class if there was a settlement or judgment in the Action after a trial and appeal. *See id.* at Ex. A, B & D. Moreover, the notices made clear that Class Members would "be bound by all past, present, and future orders and judgments in the Action, whether favorable or unfavorable"—if they failed to exclude themselves from the Class. *Id.* at Ex. B. In response to this notice campaign, 22 potential Class Members (as listed on Appendix 1 to

the Stip.) requested exclusion from the Class, demonstrating that Class Members who wished to request exclusion from the Class had a fair opportunity to do so.

The Second Circuit repeatedly has rejected the argument that due process requires that members of a Rule 23(b)(3) class be given a second opportunity to opt out of a class when such class members already received extensive notice and ample opportunity to do so—as they did here. *See, e.g.*, *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 114-15 (2d Cir. 2005) (due process and Rule 23 satisfied because the class "had been given notice of the action, the opportunity to opt out [following class certification], notice of the proposed settlement, and the opportunity to object" and objector "was required to opt out at the class notice stage if it did not wish to be bound by the Settlement"); *Denney v. Deutsche Bank AG*, 443 F.3d 253, 271 (2d Cir. 2006); *see also Low v. Trump Univ., LLC*, 881 F.3d 1111, 1121 (9th Cir. 2018) ("[There is] no authority of any kind suggesting that due process requires that members of a Rule 23(b)(3) class be given a second chance to opt out. We think it does not. Byrd's rights are protected by the mechanism provided in the rule: approval by the district court after notice to the class and a fairness hearing at which dissenters can voice their objections, and the availability of review on appeal.").

There is no reason to depart from standard practice and require a second opportunity to opt out of the Class. The response to the widespread Class Notice campaign demonstrates its effectiveness, and the new developments that have occurred since Class Members made their decision of whether to opt out—namely, vigorous litigation that culminated in a substantial recovery—provide a clear benefit to the Class and negate any potential prejudice from disallowing a second opt-out. Accordingly, the Court should exercise its discretion to preclude a second opportunity to request exclusion.

25

## VI.    PROPOSED SCHEDULE OF SETTLEMENT-RELATED EVENTS

In connection with preliminary approval, the Court must also set dates for certain future Settlement-related events. Plaintiff respectfully proposes the schedule set forth below, as agreed to by the Parties and set forth in the Preliminary Approval Order:

| EVENT | PROPOSED TIME FOR COMPLIANCE |
|---|---|
| Deadline for mailing/emailing Postcard Notice to Class Members (which date shall be the "Notice Date") and posting Notice and Claim Form on the Website | No later than 20 calendar days after the date of entry of the Preliminary Approval Order (Preliminary Approval Order ¶ 4(a)) |
| Deadline for publishing the Summary Notice | No later than 10 business days after Notice Date (Preliminary Approval Order ¶ 4(c)) |
| Deadline for filing papers supporting final approval of the Settlement, Plan of Allocation, and Class Counsel's motion for attorneys' fees and Litigation Expenses | 35 calendar days prior to Settlement Hearing (Preliminary Approval Order ¶ 23) |
| Deadline for submitting an objection | No later than 21 calendar days prior to Settlement Hearing (Preliminary Approval Order ¶ 13) |
| Deadline for filing reply papers | 7 calendar days prior to the Settlement Hearing (Preliminary Approval Order ¶ 23) |
| Settlement Hearing | 125 calendar days after entry of Preliminary Approval Order, or at the Court's earliest convenience thereafter (Preliminary Approval Order ¶ 2) |
| Deadline for submitting Claim Forms | 90 calendar days after Notice Date (Preliminary Approval Order ¶ 8) |

If the Court agrees with the proposed schedule, Plaintiff requests that the Court schedule the Settlement Hearing for a date 125 calendar days after entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter. The remaining dates will be determined by the date the Preliminary Approval Order is entered and the date the Settlement Hearing is scheduled.

## VII.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court enter the proposed Preliminary Approval Order and schedule a date and time for the Settlement Hearing to consider

26

final approval of the Settlement and related matters.

Dated:  May 20, 2026

Respectfully submitted,

**KESSLER TOPAZ
MELTZER & CHECK, LLP**

*S/ Matthew L. Mustokoff*
Matthew L. Mustokoff
Andrew L. Zivitz
Jamie M. McCall
David A. Bocian
Nathan A. Hasiuk
Nathaniel C. Simon
Vanessa Milan
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
mmustokoff@ktmc.com
azivitz@ktmc.com
jmccall@ktmc.com
dbocian@ktmc.com
nhasiuk@ktmc.com
nsimon@ktmc.com
vmilan@ktmc.com

*Counsel for Lead Plaintiff Sjunde AP-Fonden and the Class*

**BERNSTEIN LITOWITZ
BERGER & GROSSMANN LLP**
Salvatore J. Graziano
Rebecca E. Boon
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
sgraziano@blbglaw.com
rebecca.boon@blbglaw.com

*Liaison Counsel for the Class*

27

**CERTIFICATE OF COMPLIANCE**

The undersigned attorney hereby certifies that this brief complies with the type-volume limitation of the Southern District of New York Local Rule 7.1(c).  This brief contains 8,465 words and uses a Times New Roman 12 point font.


*S/ Matthew L. Mustokoff*
Matthew L. Mustokoff

28